IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DWIGHT WILLIAMS, ET AL., | : | CIVIL ACTION |
| | : | |
| PLAINTIFFS, | : | NO. 08-1979 |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, ET AL., | : | |
| | : | |
| DEFENDANTS | : | |

_____

| | | |
|---|---|---|
| CITY OF PHILADELPHIA, ET AL., | : | |
| | : | |
| THIRD-PARTY PLAINTIFFS, | : | |
| | : | |
| v. | : | |
| | : | |
| JEFFREY A. BEARD, ET AL. | : | |
| | : | |
| THIRD-PARTY DEFENDANTS | : | |

**SURRICK, J.**                                                     **JULY 27 , 2010**

**MEMORANDUM**

This is a putative class action brought by inmates in the Philadelphia Prison System

("PPS") seeking equitable relief and alleging unconstitutional conditions of confinement under

the Eighth and Fourteenth Amendments.  Plaintiffs commenced the action on April 28, 2008,

complaining of overcrowding and triple-celling in the county-operated PPS.  Plaintiffs named the

City and its Commissioner of Corrections as defendants.  On June 27, 2008, the City of

Philadelphia and its Commissioner of Corrections (collectively, "Third-Party Plaintiffs") filed a

third-party complaint against Jeffrey A. Beard, Secretary of the Pennsylvania Department of

Corrections ("Secretary"), and against the Honorable C. Darnell Jones, II, and Louis Presenza,

President Judges of the Philadelphia County Court of Common Pleas and Municipal Court,

respectively ("President Judges").[1] (Doc. No. 17.)  At the same time, Third-Party Plaintiffs filed

a Motion for Preliminary Injunction (Doc. No. 16) and a Motion to Dismiss for Failure to Join, or

alternatively, a Motion to Join the Secretary and the President Judges (Doc. No. 15).  Plaintiffs

did not name the Secretary or the President Judges as defendants.  In fact, Plaintiffs oppose

Third-Party Plaintiffs' attempt to join the Secretary and the President Judges to the action

(collectively, "Third-Party Defendants").

Presently before the Court are the Motion to Dismiss Defendants Third-Party Complaint

Filed on Behalf of Third  Party Defendants, the Honorable C. Darnell Jones, II and the Honorable

Louis Presenza (Doc. No. 29) and Third Party Defendant Beard's Motion to Dismiss the Third

Party Complaint of the City of Philadelphia and Louis Giorla (Doc. No. 31).  For the following

reasons, the Third-Party Defendants' motions will be granted.

I.      BACKGROUND

Plaintiffs have sued the City of Philadelphia and its Commissioner of Corrections seeking

equitable relief from overcrowding in the City's prisons.  This is not the first time inmates in

Philadelphia's prisons have brought suit against the City alleging constitutional violations.  State

and federal courts have been dealing with this problem for almost forty years.  See, e.g., Jackson

v. Hendrick, 764 A.2d 1139, 1141 (Pa. Commw. Ct. 2001) (discussing "tangled history" of

Philadelphia prison litigation dating back to 1971); Harris v. City of Philadelphia, No. 82-1847,

---

[1] The President Judge of the Philadelphia County Court of Common Pleas is now the Honorable Pamela P. Dembe and the President Judge of the Municipal Court is now the Honorable Marsha H. Neifield.  The Secretary of the Pennsylvania Department of Corrections is still Jeffery A. Beard, Ph.D.  The Court recently approved the parties' stipulation to substitute Judge Dembe for Judge Jones and Judge Neifield for Judge Presenza.  (Doc. Nos. 68, 69.)

2000 WL 1239948, at *1 (E.D. Pa. Aug. 30, 2000) (Shapiro, J.) (discussing Philadelphia prison

litigation history).  In Bowers v. City of Philadelphia, No. 06-3229, 2007 WL 219651, at *34

(E.D. Pa. Jan. 25, 2007), this Court found that conditions in existence in the summer of 2006 in

the intake unit of the PPS, the Police Administration Building's detention unit, and the Police

District holding cells violated the Fourteenth Amendment.  We cited a variety of offending

conditions ranging from unsanitary and unavailable toilet facilities to the failure to provide beds

resulting in inmates sleeping on concrete floors.  The conditions were primarily caused by severe

overcrowding.  See id. at *23.  In Bowers, we did not decide whether triple-celling violated the

due process rights of pretrial detainees.  Id. at *26.  In the present case, Plaintiffs allege that

triple-celling is rampant in the City's prison and that the practice violates their constitutional

rights under the Eighth and Fourteenth Amendments.

To understand Third-Party Plaintiffs' theory against the Third-Party Defendants, it is

necessary to understand the relationship between the City's prison system and the

Commonwealth of Pennsylvania's prison system.  The City manages a prison system and

supervises its operations pursuant to the City's Home Rule Charter.[2]  See 351 Pa. Code § 5.5-

700(c) (2010).  The City exercises this supervisory authority through the Philadelphia

Department of Public Welfare ("City Welfare Department") and PPS.  See id.; see also Exec.

Order 05-88 (Apr. 6, 1988) (W. Wilson Goode, Mayor) (establishing the PPS).  The City Welfare

Department is charged with, among other things, setting inmate capacity at the City's

_____

[2] Under Pennsylvania law, cities such as Philadelphia have the authority to establish
charters for their governments that empower them to exercise the authority of local self-
government.  See 53 Pa. Cons. Stat. Ann. § 13131 (1998) (providing that when a city, like
Philadelphia, adopts a home rule charter, that city shall "have complete powers of legislation and
administration in relation to its municipal functions").

correctional institutions.  See 351 Pa. Code § 5.5-700(c) (providing that the City Welfare

Department "shall determine the capacity of City institutions and determine and designate the

type of persons and the proportion of each type to be received therein"); see also Harris v.

Pernsley, 820 F.2d 592, 598 (3d Cir. 1987) ("The Philadelphia Home Rule Charter vests the

Philadelphia Department of Public Welfare with the responsibility of supervising the

Philadelphia prison, including the power to set the capacity of the institutions." (internal

citations omitted)).  The City Welfare Department is also charged with recommending to the

PPS's Board of Trustees "standards and methods helpful in the government and administration of

[the PPS] and for the betterment of the condition of [its] inhabitants."  See 351 Pa. Code § 5.5-

700(c) (2010).  The PPS Board of Trustees in turn manages and controls the City's prisons.  See

id. § 5.5-701.  Ultimately the Mayor, as the City's chief executive officer, and the City Council

have the authority to determine the inmate capacity of the PPS through their control of the City's

budget.  See id. § 4.4-100 (designating the Mayor as the City's chief executive officer); id. §

2.20-300 (requiring the Mayor and the City Council to adopt the City's annual operating budget).

The Commonwealth of Pennsylvania operates its own prison system.  Cf. 71 Pa. Stat.

§ 310-1 (2010) (establishing the Department of Corrections as an administrative department).

The Governor of Pennsylvania appoints a Secretary of Corrections to manage the

Commonwealth's prison system.  See id. §§ 66, 67.1(d).  The Secretary is responsible for the

administration, management, and supervision of the Commonwealth's twenty-six state

correctional institutions.  See id. § 310-1.  Among other things, the Secretary is given

discretionary authority "to transfer inmates located in county prisons to the State correctional

system for such reasons and upon such terms and conditions as the secretary may determine."  61

Pa. Cons. Stat. Ann. § 1151 (2009) (replacing 61 Pa. Stat. § 72 (repealed), effective October 13, 2009); see also 2009 Pa. Legis. Serv. Act 2009-33 (S.B. 112).

An inmate sentenced under Pennsylvania law is confined either in a county prison or in one of the state correctional institutions operated by the Commonwealth. Where an inmate is confined depends on the length of the inmate's sentence and the discretion of the sentencing judge. See 42 Pa. Cons. Stat. Ann. § 9762 (2007). Pursuant to the statute, inmates with sentences of five years or more must be confined in a state correctional institution, and sentencing judges may not confine them in a county prison. Id. Inmates with sentences of at least two years, but less than five years, may be confined in either a state correctional institution or a county prison at the discretion of the sentencing judge. Id. Inmates with sentences of less than two years must be confined in the county prison—here, the PPS—unless the Governor issues a proclamation that state facilities are available. Id.

The Pennsylvania legislature recently amended the statute to remove the sentencing judges' discretion with regard to confinement of inmates with sentences of at least two years, but less than five years, in the state correctional institution. See 2008 Pa. Legis. Serv. 2008-81 (H.B. No. 4), amending 42 Pa. Cons. Stat. Ann. § 9762, enacted September 25, 2008. Specifically, the amendment, which took effect sixty days after its enactment, provides that beginning three years after its enactment inmates with "maximum terms of two years or more but less than five years *shall* be committed to the Department of Corrections for confinement," unless a number of requirements are met. Id. § 7 (emphasis added). Until this subsection is effective in November 2011, sentencing judges in the Philadelphia court system retain their discretion over where to confine inmates with sentences of at least two years, but less than five years. See 42 Pa. Cons.

Stat. Ann. § 9762. This discretion rests exclusively with the sentencing judge.[3] See id. The

amendment does not affect the Secretary's discretion "to transfer inmates located in county

prisons to the State correctional system for such reasons and upon such terms and conditions as

the secretary may determine." See 61 Pa. Cons. Stat. Ann. § 1151 (2009). Neither the current

statute nor the amended statute vests sentencing discretion in the President Judges of the

Philadelphia court system. The President Judges serve as "the executive and administrative head

of the court." 42 Pa. Cons. Stat. Ann. § 325(e) (2007). The role of the President Judges is to

"supervise the judicial business of the court, promulgate all administrative rules and regulations,

make all judicial assignments, and assign and reassign among the personnel of the court available

chambers and other physical facilities." Id.

The gravamen of Third-Party Plaintiffs' third-party complaint is the allegation that the

Secretary's failure to accept discretionary transfer of inmates confined to the PPS at less-crowded

state correctional institutions, and the President Judges' failure to ensure that sentencing judges

confined persons with sentences of at least two years, but less than five years, in state

correctional institutions, has contributed to the alleged overcrowding and triple-celling at the

PPS.[4] Third-Party Plaintiffs contend that these allegations give rise to a contribution claim under

42 U.S.C. § 1983, which grounds their third-party complaint on federal common law. Third-

---

[3] Section 9762(f) of the Amended Statute also provides for the aggregation of sentences, and section 9762(h) provides that the sentencing judge can change "the place of confinement between State and county facilities to the extent that the judge would have such discretion at the time of imposition of sentence . . . ." These provisions were effective in November 2008, sixty days after the enactment of the Amendment. 42 Pa. Cons. Stat. Ann. § 9762.

[4] Plaintiffs point out that some of the subject inmates may have been sentenced pursuant to negotiated pleas wherein the place of confinement was part of the plea agreement.

Party Plaintiffs also contend that joinder of the Secretary and the President Judges is necessary to accord Plaintiffs full relief. Third-Party Defendants respond that Third-Party Plaintiffs fail to state a claim against the Secretary and the President Judges on which to ground joinder or the third-party complaint. Third-Party Defendants also respond that even if Third-Party Plaintiffs could state a claim for contribution, the Eleventh Amendment provides immunity to the Third-Party Defendants as state actors.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In Iqbal, the Supreme Court set forth a two-part analysis that district courts must conduct when reviewing a complaint challenged under Rule 12(b)(6). See Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (describing Iqbal's two-step inquiry). The district court must first separate "the factual and legal elements of a claim," accepting all of the complaint's well-pleaded facts as true but rejecting legal conclusions. Id. at 210 (citing Iqbal, 129 S. Ct. at 1949); see also Iqbal, 129 S. Ct. at 1949-50 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to state a claim]."). Under this analysis, well-pleaded factual allegations are to be given a presumption of veracity. Iqbal, 129 S. Ct. at 1950. The district court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Fowler, 578 F.3d at 211 (quoting Iqbal, 129 S. Ct.

7

at 1950).  A complaint that merely alleges entitlement to relief, without alleging facts that show

entitlement, must be dismissed.  Id.  By contrast, a complaint that demonstrates entitlement to

relief through well-pleaded facts will survive a motion to dismiss.  See id.  Given the nature of

the two-part analysis, "'[d]etermining whether a complaint states a plausible claim for relief will

. . . be a context-specific task that requires the reviewing court to draw on its judicial experience

and common sense.'"  See McTernan v. City of York, 577 F.3d 521, 530 (3d Cir. 2009) (quoting

Iqbal, 129 S. Ct. at 1950).  Dismissal under Rule 12(b)(6) is proper when a doctrine of immunity,

such as the Eleventh Amendment, bars the suit.  See Reames v. Oklahoma, 411 F.3d 1164, 1168

(10th Cir. 2005) (affirming district court's grant of motion to dismiss action against state officials

where immunity under the Eleventh Amendment barred the claim); Anderson v. Williamson, 100

F.3d 956 (Table), 1996 WL 640464, at *1 (6th Cir. Nov. 5, 1996) (holding same).

III.     ANALYSIS

         A.     Eleventh Amendment

         The doctrine of sovereign immunity is a major limitation on the judicial power of federal

courts.  Sovereign immunity in the federal courts is based on the Eleventh Amendment, which

provides that "[t]he Judicial Power of the United States shall not be construed to extend to any

suit in law or equity, commenced or prosecuted against one of the United States by Citizens of

another State, or by Citizens or Subjects of any foreign state."  U.S. Const. amend. XI.  "That

amendment has been interpreted to make states generally immune from suit by private parties in

federal court."  MCI Telecom. Corp. v. Bell Atlantic - Pa., 271 F.3d 491, 502 (3d Cir. 2001)

(citations omitted).  The amendment also makes states generally immune from "suit brought by a

citizen of a state against his own state," O'Hara v. Ind. Univ. of Pa., 171 F. Supp. 2d 490, 495

(W.D. Pa. 2001) (citing Hans v. Louisiana, 134 U.S. 1, 13-16 (1890)), including suits brought against state agencies and departments, MCI Telecom., 271 F.3d at 502 (citing Z.H. v. Oliva, 226 F.3d 198, 201 (3d Cir. 2000) (en banc)).  In addition, the amendment has been interpreted to make states generally immune from suits brought by political subdivisions.  See, e.g., County of Monroe v. State of Florida, 678 F.2d 1124, 1130-31 (2d Cir. 1982) (holding that a county in New York was a "citizen" of New York for Eleventh Amendment purposes in suit against Florida because political subdivisions are "citizens" of their respective states); Byram River v. Village of Port Chester, 394 F. Supp. 618, 624-25 (S.D.N.Y. 1975) (holding that a Connecticut municipality was a "citizen of another state" for Eleventh Amendment purposes in suit against New York).

The Eleventh Amendment generally does not bar suits against counties, municipalities, and political subdivisions of a state.  Febres v. Camden Bd. of Educ., 445 F.3d 227, 229 (3d Cir. 2006) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977)).  However, the amendment bars such suits when there is so much state involvement in the actions that the relief, in essence, runs against the state.  For example, in Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 123-24 (1979), the Supreme Court held that the Eleventh Amendment barred relief against the county as well as against state officers, since "funding for the county mental retardation programs comes almost entirely from the State[,] the costs of the Masters have been borne by the State[, and legislation] contemplates that the state and county officials will cooperate in operating the mental retardation programs."  Id. at 124.  The state's funding of the county program and cooperation were therefore sufficient to create an Eleventh Amendment bar to suits against the county.  See id.

The Eleventh Amendment permits federal courts to entertain suits against states under

certain exceptions.  First, suit is permitted where a state has waived its immunity.  Atascadero

State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985).  Second, suit is permitted where Congress

validly abrogates sovereign immunity through its enforcement powers pursuant to the Fourteenth

Amendment.  Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 57-73 (1996).  Third, suit is

permitted where the plaintiff sues state officials in their official capacities seeking only

prospective injunctive relief.  See Ex Parte Young, 209 U.S. 123, 159-60 (1908) (holding that the

Eleventh Amendment did not prohibit a federal court from enjoining a state attorney general

from enforcing an unconstitutional state law); Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S.

261, 269 (1997) (reaffirming that prospective relief may be sought against a state official in

federal court).

　　　"The theory behind Ex Parte Young is that a suit to halt the enforcement of a state law in

conflict with the federal constitution is an action against the individual officer charged with that

enforcement and ceases to be an action against the state to which sovereign immunity

extends . . . ."  MCI Telecom., 271 F.3d at 502 (citing Ex Parte Young, 209 U.S. at 159-60).

Thus, "the officer is stripped of his official or representative character and becomes subject to the

consequences of his individual conduct."  Id.; see also Pennhurst, 465 U.S. at 103 (stating that,

under the theory of Ex Parte Young, an action for prospective relief against the state officer was

not an action against the state because the allegation of a violation of federal law would strip the

officer of his official authority).  "The Ex Parte Young doctrine applies both to violations of the

United States Constitution and to violations of federal statutes."  MCI Telecom., 271 F.3d at 502

(citing Balgowan v. New Jersey, 115 F.3d 214, 218 (3d Cir. 1997)).

　　　The purpose of Eleventh Amendment immunity is to protect state treasuries and maintain

the dignity due sovereign entities.  See Hess v. Port Auth. Trans-Hudson, Corp., 513 U.S. 30, 47,

52 (1994) (identifying the protection of state treasuries and the states' dignity as sovereigns as the

Eleventh Amendment's "twin reasons for being"); Kitchen v. Upshaw, 286 F.3d 179, 184 (4th

Cir. 2002) (noting same).  The type of relief sought, whether prospective injunctive relief or

retroactive monetary relief, does not affect whether the Eleventh Amendment bars the suit.  See

Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 58 (1996) ("[W]e have often made it clear that the

relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by

the Eleventh Amendment.").  The Eleventh Amendment serves to avoid "the indignity of

subjecting a State to the coercive process of judicial tribunals at the instance of private parties,"

not simply to "preven[t] federal-court judgments that must be paid out of a State's treasury."  Id.

(internal citations omitted).  As Justice Marshall noted, "[b]ecause of the problems of federalism

inherent in making one sovereign appear against its will in the courts of the other, a restriction

upon the exercise of the federal judicial power has long been considered to be appropriate in a

case such as this."  Employees v. Mo. Pub. Health & Welfare Dep't, 411 U.S. 279, 294 (1973)

(Marshall, J., concurring in result).

**B.**      **Application of Eleventh Amendment**

In this case, Third-Party Plaintiffs seek injunctive relief against Third-Party Defendants.

However, as agents of the Commonwealth, Third-Party Defendants enjoy sovereign immunity

under the Eleventh Amendment.  See Lavia v. Pa. Dep't of Corr., 224 F.3d 190, 195 (3d Cir.

2000) (noting that "the Commonwealth of Pennsylvania's Department of Corrections is a part of

the executive department of the Commonwealth [and] shares in the Commonwealth's Eleventh

Amendment immunity [from damages]" (citations omitted)); Handy v. Goode, No. 91-7767,

1992 WL 189446, at *1 (E.D. Pa. July 28, 1992) (noting that "[t]he Philadelphia Court of

Common Pleas is a state agency and is therefore immune from damage liability pursuant to the

Eleventh Amendment").  The Eleventh Amendment bars suits against state agencies brought by

political subdivisions like the City, since political subdivisions are "citizens" of their respective

states, O'Hara, 171 F. Supp. 2d at 495, and states are generally immune from "suits brought by

citizens against their own states," Monroe, 678 F.2d at 1130-31; see also Munoz v. City of

Philadelphia, 537 F. Supp. 2d 749, 750 (E.D. Pa. 2008); Petsinger v. Pa. Dep't of Transp., 211 F.

Supp. 2d 610, 612 (E.D. Pa. 2002)  ("[T]he Supreme Court 'has consistently held that an

unconsenting State is immune from suits brought in federal courts by her own citizens as well as

by citizens of another State.'")  (quoting Edelman v. Jordan, 415 U.S. 651, 662-63 (1974)).

Third-Party Plaintiff's claims do not fit into any recognized exception to the Eleventh

Amendment's bar of suits against states.  Third-Party Plaintiffs do not contend, nor could they,

that the Commonwealth has waived its immunity.  The Commonwealth has clearly reserved its

power to invoke sovereign immunity.  42 Pa. Cons. Stat. Ann. § 8521(b) (2007).  Likewise,

Third-Party Plaintiffs do not and could not contend that by enacting § 1983, Congress validly

abrogated the Commonwealth's sovereign immunity.  See Quern v. Jordan, 440 U.S. 332, 345

(1979) ("[Section] 1983 does not explicitly and by clear language indicate on its face an intent to

sweep away the immunity of the States; nor does it have a history which focuses directly on the

question of state liability and which shows that Congress considered and firmly decided to

abrogate the Eleventh Amendment immunity of the States."); see also O'Hara, 171 F. Supp. 2d at

495 ("The Commonwealth of Pennsylvania has not waived its immunity in § 1983 civil rights

cases and Congress did not abrogate state immunity in general in enacting civil rights legislation,

12

including § 1983.")

Instead, Third-Party Plaintiffs contend that they are suing Third-Party Defendants as state

officials in their official capacities seeking only prospective injunctive relief. They argue that

this allows them to proceed under the exception to Eleventh Amendment immunity announced in

Ex Parte Young. As mentioned above, the basis for this exception is that an action challenging

the constitutionality of a state official's conduct is not one against the state since an official who

acts repugnant to the Constitution is "stripped of his official or representative character and is

subjected in his person to the consequences of his official conduct." Ex Parte Young, 209 U.S. at

160. For this reason, the Eleventh Amendment does not bar a claim for prospective injunctive

relief against a state official to enforce the Constitution.

Third-Party Plaintiffs base their claim not on state law, which the Supreme Court

prohibited in Pennhurst, 465 U.S. at 109-10, but rather on a purported federal common law right

to contribution under § 1983. Whether § 1983 supports the contribution claim that Third-Party

Plaintiffs assert against Third-Party Defendants is open to question.[5] However, the Supreme

---

[5] District courts in the Third Circuit have "recognize[d] a right to contribution in § 1983 cases as a matter of federal common law." Klaitz v. New Jersey, No. 04-0529, 2006 WL 1843115, at *6 (D.N.J. June 30, 2006) (citing Miller v. Apt. & Homes of N.J., Inc., 646 F.2d 101 (3d Cir. 1981)); Miller, 646 F.2d at 106-10 (recognizing right of contribution in a civil rights action brought pursuant to § 1982); see also Alexander v. Hargrove, No. 93-5510, 1994 WL 444728, at *3-4 (E.D. Pa. Aug. 6, 1994) (Yohn, J.) (relying upon Miller and finding a federal right to contribution for a claim brought under § 1983); Fishman v. DeMeo, 604 F. Supp. 873, 875-77 (E.D. Pa. 1985) (Pollak, J.) (finding that even though Miller's pronouncement that a federal right to contribution exists for a § 1982 claim was dicta, the district court was still compelled to follow Miller and find a federal right to contribution for claims under § 1983)). However, courts outside the Third Circuit have refused to recognize a right to contribution in § 1983 cases. See, e.g., Allen v. City of Los Angeles, 92 F.3d 842, 846 n.1 (9th Cir. 1996) ("There is no federal right to indemnification provided in 42 U.S.C. § 1983."); Harris v. Angelina County, 31 F.3d 331, 338 n.9 (5th Cir. 1994) (finding no claim for contribution in § 1983 cases, especially when the claim for contribution is sought from the state's own political subdivision,

Court has concluded "that in enacting § 1983, Congress did not intend to override well-established immunities or defenses under the common law." Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989). Thus, regardless of whether § 1983 provides a right of contribution, the statute contains no "unequivocal expression of congressional intent" extending that right to contribution claims against the state by a political subdivision like the City of Philadelphia.

In applying the Ex Parte Young exception, the Supreme Court cautioned that "the need to promote the supremacy of federal law must be accommodated to the constitutional immunity of the States." Ex Parte Young, 465 U.S. at 105. The Court found it "difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." Id. In Harris v. Angelina County, 31 F.3d 331, 339-40 (5th Cir. 1994), the Fifth Circuit employed this reasoning to conclude that a county could not bring a § 1983 contribution claim against the State of Texas in a prison overcrowding case. Like the instant case, Harris was a § 1983 prison overcrowding case where the county, a political subdivision, sought equitable and monetary contribution from its state. In reaching its conclusion, the Fifth Circuit observed that "we can think of few greater intrusions on state sovereignty than requiring a state to respond, in federal court, to a claim of contribution brought by one of its own [cities]." Id. at 340. We agree. Requiring Third-Party Defendants to respond, in federal court, to a claim of contribution brought by Third-Party Plaintiffs intrudes on the

---

i.e., county seeking contribution from state); Hayden v. Hevesi, No. 05-0294E, 2007 WL 496369, at *4 (W.D.N.Y. Feb. 12, 2007) (holding that "there is also no statutory basis found in § 1983 for a right of contribution and the Court will not construe one"); Mason v. City of New York, 949 F. Supp. 1068, 1079 (S.D.N.Y. 1996) (noting that although "courts have struggled with [the right to contribution under § 1983] and have reached different conclusions, the Court determines that there is no right to contribution under § 1983" (internal citations omitted)).

14

Commonwealth's sovereignty.  See id. at 339-40; see also Stanley v. Darlington Cnty. Sch. Dist.,

84 F.3d 707, 716 (4th Cir. 1996) ("While the Fourteenth Amendment empowers federal courts to

address a state's [constitutional] violations, it does not provide any basis for a contribution claim

by a political subdivision against the state that created it."); Kelley v. Metro. Cty. Bd. of Educ.,

836 F.2d 986, 988 (6th Cir. 1987) ("Federal courts may not be called upon, in the first instance,

to adjudicate what is essentially an internal dispute between two local government entities, one of

which is asserting unconstitutional conduct on the part of the other."  (internal citation omitted)).

In addition, we will not extend the Ex Parte Young exception to remove Eleventh

Amendment immunity from a state actor whose conduct merely contributes, in some way, to

unconstitutional conduct by a political subdivision.  To lose the cloak of immunity, a state

official must do more than contribute to an unconstitutional violation that a political subdivision

of the state has brought about.  The state official must act repugnant to the Constitution; only

then is the official "stripped of his official or representative character . . . ."  See Ex Parte Young,

209 U.S. at 159-60.  We are satisfied that a state actor who fails to undertake a discretionary act,

thereby contributing, in some way, to a political subdivision's constitutional violation, cannot be

stripped of immunity and subject to suit.[6]  Moreover, with regard to the President Judges in this

---

[6] Eleventh Amendment immunity is proper for the additional reason that the
circumstances of this case present issues of state law and the Commonwealth's internal affairs.
The Commonwealth vested the City of Philadelphia with a home rule charter to provide for its
self-governance, which the Commonwealth may modify or withdraw.  See City of Trenton v.
New Jersey, 262 U.S. 182, 186 (1923) ("The State . . . at its pleasure may modify or withdraw all
[of a municipality's] powers. . . . All this may be done, conditionally or unconditionally, with or
without the consent of the citizens, or even against their protest.  In all these respects the State is
supreme . . . ."  (quoting Hunter v. City of Pittsburgh, 207 U.S. 161, 178-79 (1907))).  It is within
this context that Third-Party Plaintiffs seek an equitable right of contribution against the
Commonwealth for alleged unconstitutional conditions in the City's prison system.  In Stanley,
the Fourth Circuit held that "no federal court had jurisdiction to involve itself further in the

15

case, it is the sentencing judges who confine inmates in the PPS, not the President Judges. We

fail to see how the President Judges' conduct here could be repugnant to the Constitution and

stripped of its official character when the President Judges were not the judges with the authority

to confine the inmates who are allegedly being subjected to the unconstitutional conditions at the

PPS.

To overcome the Eleventh Amendment barrier, Third-Party Plaintiffs rely on a prison

overcrowding case from the Sixth Circuit. In Tate v. Frey, 735 F.2d 986 (6th Cir. 1984) (per

curiam), county prison officials sought to implead state corrections officials as third-party

defendants to enjoin them from refusing to accept inmates in the county prison for transfer to the

state prison. Kentucky law mandated that the state—not the county—confine felons. Id. at 989

(citing Ky. Rev. Stat. Ann. § 532.100(1)). The law provided, in pertinent part, that courts "'*shall*

commit the defendant to the custody of the bureau of corrections'" when the defendant is

sentenced to more than one year of imprisonment. Id. (quoting Ky. Rev. Stat. Ann. § 532.100(1)

(emphasis added by the Sixth Circuit)). In an unrelated case, the state had entered into a consent

decree to alleviate overcrowding in its prisons. See id. at 988 & n.1. In order to comply with the

consent decree, the state, notwithstanding its obligation to timely accept convicted felons,

"refused to accept custody of convicted felons awaiting transfer from local jails until it had bed

---

internal affairs of state government and apportion the costs of providing the ordered relief among
the state's departments and political subdivisions," where interested persons had sued the school
district and obtained complete relief from racially discriminatory segregation. Stanley, 84 F.3d at
716-17. Like the plaintiffs in Stanley, who obtained complete relief from the school district,
Plaintiffs here can obtain complete relief from the City, which operates the PPS and controls the
purse used to fund inmate capacity. It is not the province of this Court to involve itself in the
Commonwealth's affairs by apportioning the burden of resolving the unconstitutional conditions
in PPS between the City and the Commonwealth, if, in fact, unconstitutional conditions are
found to exist. See id.

space available at state penal facilities." Id. at 988 n.1.  The district court determined that the

state's "controlled intake procedure contributed to the overcrowding" of the county's jail and that

"complete relief would be elusive, if not impossible, to achieve absent joinder of the state as a

third-party to [the] action." Id. at 989.  On appeal, the Sixth Circuit observed that "[i]n

operation, the controlled intake policy merely transferred the overcrowding of state penal

facilities to the county prison systems." Id. at 988 n.1.  The Sixth Circuit affirmed the district

court's grant of impleader of state officials because "the responsibility to provide for the

confinement of convicted felons rest[ed] upon the state," which provided "a substantive basis for

[the county's] claim against the state in the third-party complaint." Id. at 989.

The district court in Tate "premised the grant of the preliminary injunction upon

constitutional grounds and not state law."  See Tate, 735 F.2d at 990.  In the instant case, Third-

Party Plaintiffs also premise their proposed relief upon constitutional grounds and not

Pennsylvania law.  We note, however, that the Sixth Circuit required "a substantive basis" for the

third-party plaintiffs' impleader claim.  The Pennsylvania statute at issue here places discretion in

the hands of the Secretary and sentencing judges.[7]  The statute does not require the Secretary to

accept the inmates, like the Kentucky statute required the state to do in Tate.  Nor does the

Pennsylvania statute require sentencing judges to confine inmates in state correctional

institutions.  See 61 Pa. Cons. Stat. Ann. § 1151 (permitting the Secretary to accept certain state-

eligible county inmates "upon such terms and conditions as the secretary may determine"); 42 Pa.

Cons. Stat. Ann. § 9762 (providing that inmates sentenced for "two years or more but less than

---

[7] We note that the legislature's recent amendment, which goes into effect in 2011,
removes this discretion.

five years *may* be committed to the Bureau of Corrections for confinement or *may* be committed

to a county prison") (emphasis added).  In other words, the Commonwealth has no *obligation* to

receive the prisoners at issue here.  There is thus no substantive basis for Third-Party Plaintiffs'

claim against Third-Party Defendants in the same way that there was a substantive basis for the

county officials' claim against the state officials in Tate.[8]

Our application of Tate is consistent with the Supreme Court's decision in Pennhurst,

where the Court explained that it is "clear that suit may not be predicated on violations of state

statutes that command purely discretionary duties."  465 U.S. at 109-10.  While Third-Party

Plaintiffs predicate their suit on a right to contribution under § 1983, such a right—if it exists—is

inextricably linked to Pennsylvania statutes.  Those statutes command the "purely discretionary

duties" of confining inmates in state or county prisons.  Clearly Third-Party Plaintiffs' suit is

predicated, at least in part, on "violations of state statutes that command purely discretionary

duties."  See id.  Third-Party Plaintiffs would have us order state officials to carry out their

discretionary duties under the state statutes in a particular way.  The Supreme Court has

cautioned against "instruct[ing] state officials on how to conform their conduct to state law."  We

---

[8] The Second Circuit considered facts similar to Tate in Benjamin v. Malcolm, 803 F.2d
46 (2d Cir. 1986).  Although the Benjamin court affirmed the district court's joinder of state
officials by county officials in a prison overcrowding context, joinder of the state officials "was
essential for an effective remedy."  Moreover, like the Kentucky state law in Tate, the New York
state law in Benjamin required the state to take the city inmates.  See id. at 54.  Here, joinder is
not essential for an effective remedy.  The City funds and operates the PPS pursuant to its home
rule authority.  The City has the power to take a variety of actions to relieve overcrowding.  Our
obligation to fashion the least intrusive remedy that will still be effective does not allow us to
fashion relief contrary to the Eleventh Amendment, where, as here, a political subdivision sues a
state for contribution under § 1983 and the political subdivision is able to accord the plaintiffs
full relief.  See Resident Advisory Bd. v. Rizzo, 564 F.2d 126, 149 (3d Cir. 1977) ("[F]ederal
equitable relief must be carefully tailored to be no more intrusive than is necessary.").

decline to do so here.  Ex Parte Young, 465 U.S. at 105.

Because the Eleventh Amendment bars suit against Third-Party Defendants under the circumstances present in this case, we will dismiss the action against them for lack of subject matter jurisdiction.[9]

### C. Third-Party Plaintiffs' Motion for Preliminary Injunction and Motion to Join or Dismiss

Third-Party Plaintiffs have also filed a Motion to Dismiss for Failure to Join or Alternatively Motion to Join (Doc. No. 15) and a Motion for Preliminary Injunction (Doc. No. 16).  Having concluded that the Eleventh Amendment bars a contribution claim under § 1983 by Third-Party Plaintiffs against Third-Party Defendants in federal court, we will dismiss as moot the Third-Party Plaintiffs' Motion for Preliminary Injunction and Motion to Join the Secretary and President Judges.

## IV. CONCLUSION

We are satisfied that the Eleventh Amendment bars the contribution claim the City of Philadelphia seeks to assert under § 1983 against the Secretary and President Judges, agents of

---

[9] We decline to exercise our residual jurisdictional authority under the All Writs Act, 28 U.S.C. § 1651(a), which authorizes federal courts in exceptional circumstances to issue such orders to persons "who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder justice." United States v. N.Y. Tel. Co., 434 U.S. 159, 174 (1977) (citations omitted).  We find that the circumstances here are not exceptional.  Moreover, "the All Writs Act . . . cannot be used to circumvent or supersede the constitutional limitations of the Eleventh Amendment."  In re Baldwin United Corp., 770 F.2d 328, 340 (2d Cir. 1985) (citing Missouri v. Fiske, 290 U.S. 18, 28 (1933) (the purpose of protecting federal jurisdiction does not remove a case from the reach of the Eleventh Amendment); Commercial Sec. Bank v. Walker Bank & Trust Co., 456 F.2d 1352, 1355 (10th Cir. 1972) (the All Writs Act provides ancillary jurisdiction only when a court's jurisdiction is otherwise proper)).

the Commonwealth of Pennsylvania.  Accordingly, we will grant Third-Party Defendants'

Motion to Dismiss the Third Party Complaint and deny Third-Party Plaintiffs' Motion to Dismiss

for Failure to Join or alternatively Motion to Join, and Motion for Preliminary Injunction.

An appropriate Order follows.


BY THE COURT:

_____
R. Barclay Surrick, Judge