IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


DWIGHT WILLIAMS, ET AL.      :
                                :           CIVIL ACTION
     v.                         :
                                :           NO. 08-1979
CITY OF PHILADELPHIA, ET AL.    :


**SURRICK, J.**                                    **OCTOBER   8  , 2010**

<u>**MEMORANDUM**</u>

Presently before the Court is Plaintiffs' Motion For Class Certification (ECF. No. 2). For the following reasons, the Motion will be granted.

## I.      BACKGROUND

This is a putative class action for injunctive and declaratory relief in which Plaintiffs, who were inmates in the Philadelphia Prison System (the "PPS") when this action was filed, contest the conditions of confinement in the PPS. Plaintiffs allege that Defendants' failure to address overcrowding and to provide inmates with adequate services and supplies has deprived them of their Eighth Amendment right to be free from cruel and unusual punishment and their Fourteenth Amendment right to be free from deprivations of liberty without due process of law. (Compl. ¶ 38, ECF No. 1.)

### A.      History of Litigation over Prison Conditions in the PPS

Litigation over conditions in the PPS has a long history going back nearly 40 years, as this Court recounted more fully in *Bowers v. City of Philadelphia*, No. 06-3229, 2007 WL 219651, at *2-5 (E.D. Pa. Jan. 25, 2007) (*Bowers II*). Litigation commenced in 1971, when inmates filed *Jackson v. Hendrick* in Pennsylvania state court, alleging unconstitutional

conditions of confinement.  *See Jackson v. Hendrick*, 764 A.2d 1139, 1141 (Pa. Commw. Ct.

2000) (discussing procedural history of the *Jackson* case).  The trial court in *Jackson* found that

conditions in the PPS violated the plaintiffs' constitutional and statutory rights, including their

Eighth Amendment right to be free from cruel and unusual punishment.  *Id.*  The parties entered

into a series of consent decrees thereafter.  *Id.* at 1141 & n.2.  The PPS failed to conform to the

terms of the consent decrees, however, and was repeatedly found in contempt resulting in the

imposition of millions of dollars in fines.  *Id.* at 1141 & n.3.  The *Jackson* litigation finally

terminated in 2002 with the approval of a final settlement agreement between the parties.

*Jackson v. Hendrick*, No. 2437, slip op. at 3 (Phila. Ct. Com. Pl. July 1, 2002); *see also Bowers

II*, 2007 WL 219651, at *3 (citations omitted).

Federal litigation over conditions in the PPS commenced in 1982 with the filing of *Harris

v. City of Philadelphia*, No. 82-1847 (E.D. Pa. 1982).  This class action, which was brought on

behalf of  "all past, present, and future Philadelphia Prison System inmates," alleged that

overcrowding in the PPS resulted in violations of the class's First, Eighth, Ninth, and Fourteenth

Amendment rights.  *Harris v. City of Phila.*, No. 82-1847, 2000 WL 1239948, at *1 (E.D. Pa.

Aug. 30, 2000).  In 1986, the parties entered into a consent decree in which the City agreed to

build a 440-bed detention center in downtown Philadelphia by December 31, 1990.  The City

also agreed that the number of inmates housed in PPS facilities would be limited to 3,750.  If that

number were exceeded, the consent decree provided that the PPS would release inmates who had

the lowest bail or who had less than 60 days remaining on their sentence.  If the 3,750-inmate

limit was exceeded over a certain period of time, the consent decree forbade the PPS from

admitting additional inmates, with exceptions made for persons charged with or convicted of

murder, forcible rape, or a crime involving the use of a gun or knife in the commission of an aggravated assault or robbery. *Id.* There were approximately 4,300 inmates in the PPS when the parties entered into the consent decree. *Id.*

The consent decree was subject to intense criticism from the local community, the media, and law enforcement. *See, e.g.*, John Woestendiek, *City Jails Turn Away Suspects; U.S. Order Goes Into Effect*, Phila. Inquirer, June 9, 1988, at A01 (describing how local residents cursed at departing inmates and shouted "lock 'em up" and "don't let them out"). The District Attorney was particularly critical of the settlement, calling it "irresponsible" and stating that the City had "sold the safety of Philadelphia citizens down the drain." Toni Locy, *More Time to Thin Jails*, Phila. Daily News, March 17, 1987, at 10; Woestendiek, *supra*, at A01. When the prison population continued to exceed 3,750 despite the release of some of the inmates, the court enforced a more limited version of the moratorium than what was enumerated in the consent decree. It applied the moratorium only to pretrial detainees; as a result, no state sentences were reduced, and no inmates were released on parole to reduce the prison population. *Harris*, 2000 WL 1239948, at *1. The court also directed the City to implement a house arrest program for selected inmates. *Id.* at *2. Nevertheless, the PPS continued to experience what the *Harris* court termed "crisis conditions," and additional modifications were made to the consent decree. *Id.* The parties entered into a new consent decree in 1991, which was stayed in 1995 after the City agreed to implement its Alternatives to Incarceration Plan. *Id.* at *2-3. The court subsequently approved the City's Ten Year Plan in 1996. *See id.* at *4 (describing the Ten Year Plan as one of a series of plans for managing the inmate population that the court had approved over the course

of the litigation).  In 2000, the court approved a final settlement in *Harris*, and federal

supervision of the PPS came to an end.[1]  *Id.* at *11.

The final settlement in *Harris* did not remedy the severe overcrowding problem in the

PPS, however.  By the summer of 2006, the PPS again experienced a severe overcrowding crisis.

The population in the PPS had increased from approximately 7,000 at the conclusion of *Harris* to

over 9,000 by the summer of 2006.  *Bowers II*, 2007 WL 219651, at *10 (opinion granting

motion for injunctive and declaratory relief).  In response, pretrial detainees filed *Bowers v. City*

*of Philadelphia*, No. 06-3229 (E.D. Pa. 2006), against the City, alleging unconstitutional

conditions of confinement in local police districts, the Police Administration Building ("PAB"),

and the intake units of the PPS.  In *Bowers,* this Court certified a class consisting of:

> All persons who have been or will in the future be held post-preliminary arraignment
> in the custody of the Philadelphia Police Department, including its districts or the
> Police Administration Building, or anywhere in the Philadelphia Prison System,
> pending intake/admissions processing, at the Philadelphia Prison System, who have
> been or will in the future be subjected to the conditions of confinement as set forth
> in Plaintiffs' Complaint.

*Bowers v. City of Phila.*, No. 06-3229, 2006 WL 2818501, at *2 (E.D. Pa. Sept. 28, 2006)

(*Bowers I*).  In granting the plaintiffs' motion for injunctive and declaratory relief, we described

at length the deplorable conditions found in the intake units of the PPS, as well as in the PAB

and local police districts.  The evidence revealed that pretrial detainees were being held in

holding cells that were severely overcrowded.  Some of these cells were so crowded that there

was not enough room for all the detainees to sit down at the same time, even when using all the

---

[1] The court made it clear that it was approving the final settlement reluctantly, and only in response to Congress's enactment of the Prison Litigation Reform Act of 1995 ("PLRA"), 18 U.S.C. § 3626.  *See Harris*, 2000 WL 1239948, at *10 (describing difficulty of enforcing consent decrees in light of the PLRA).

benches and every inch of the floor. *Bowers II*, 2007 WL 219651, at *10. The holding cells lacked beds, and pretrial detainees spent as many as six days sleeping on the floor, often overlapping each other due to the lack of space. *Id.* Inmates in holding cells also had no access to basic hygiene supplies and would sometimes go up to six days without access to showers, warm water, soap, or a toothbrush. *Id.* at 10. 30 men would share a single toilet, which would frequently be filled with human waste and rotten food. *Id.* at 11. Inmates were also routinely denied medical attention for minor and major health issues. *Id.*

To alleviate overcrowding, the PPS instituted several measures, including contracting with a prison in Monmouth County, New Jersey, to provide 100 prison beds; placing additional bunk beds in a day room at the Curran Fromhold Correctional Facility ("CFCF"); and placing plastic blue cots (known colloquially as "blue boats") in cells in order to fit three inmates in cells that were only designed to fit two, a practice known as triple-celling. *Bowers II*, 2007 WL 219651, at *8 (opinion granting motion for injunctive and declaratory relief). We observed that these measures amounted to "plac[ing] a band-aid on a wound that requires major surgery." *Id.* at *27. While we did not pass on the constitutionality of triple-celling in *Bowers*, we remarked that "even if triple-celling is permissible as a short-term emergency solution, it is not tenable as a permanent cure." *Id.* at *26.

## B. Recent Developments in Philadelphia Prison Conditions Litigation

Plaintiffs filed the instant action on April 28, 2008, alleging that due to historic overcrowding in the PPS, inmates were being subjected to "dangerous, unsanitary, severely overcrowded, degrading, and cruel conditions of confinement." (Compl. ¶ 1.) Plaintiffs allege that by April 21, 2008, the prison population in the PPS had reached a historic high of over 9,300

inmates.  (*Id.*)  To address the overcrowding problem, Plaintiffs allege that the PPS instituted a

"widespread practice of triple celling and placement of inmates in overcrowded dormitories."

(*Id.* ¶ 3; *see also* Mot. Class Cert'n 3, Apr. 28, 2008, ECF No. 2.)  Moreover, to control the

growing prison population, the PPS has expanded its practice of restricting prisoner movements

and locking down inmates when there are not enough corrections officers to provide adequate

security for the inmates.  (Mot. Class Cert'n 4.)

The prison system in Pennsylvania consists of both state and county prisons.  The City of

Philadelphia manages the county prison system through the PPS pursuant to the City's Home

Rule Charter.  *See* 351 Pa. Code § 5.5-700(c).  The State funds and operates its own prison

system.  *Cf.* 71 Pa. Cons. Stat. § 310-1 (establishing the Department of Corrections as an

administrative department).  Whether an inmate is housed in a state or county facility is

determined in part by the length of the inmate's prison sentence.  Currently, persons sentenced to

a maximum term of five years or more are committed to the state prison system.  42 Pa. Cons.

Stat. § 9762(a)(1).  Persons sentenced to a term of more than two years but less  than five years

may at the discretion of the sentencing judge be committed to either a state prison or to a county

prison.  *Id.* § 9762(a)(2).  Persons sentenced to a term of less than two years are committed to a

county prison.  *Id.* § 9762(a)(3).

In 2008, the Pennsylvania legislature amended § 9762 to eliminate the sentencing judge's

discretion over whether a person who is sentenced to a maximum term of between two and five

years is committed to a state or county prison.  *See* 2008 Pa. Legis. Serv. 2008-81 (H.B. No. 4),

*amending* 42 Pa. Cons. Stat. § 9762, *enacted* Sept. 25, 2008.  As amended, § 9762(b)(2) states

that persons who are sentenced to a maximum term of not less than  two years nor more than five

years "shall be committed to the Department of Corrections for confinement" unless the chief administrator of the county prison and the attorney for the Commonwealth certify that the county prison has space available for additional inmates. However, this subsection of § 9762 does not take effect until the fall of 2011. *See* 42 Pa. Cons. Stat. § 9762(b). Until then, the sentencing judge retains discretion to commit persons whose sentence is between two and five years to either a state or a county prison.

To complement these legislative changes, the PPS has taken other measures to reduce the prison population. The state agreed to transfer from the PPS to state prison approximately 250 prisoners who had been sentenced prior to the effective date of § 9762. (Hr'g Tr. 6, May 3, 2010.) Moreover, changes in sentencing practices have reduced the number of persons who are committed to the PPS, and changes in the method of transporting state prisoners have further reduced prisoner intake in the PPS. (*Id.*) As a result of these measures, the population in the PPS has fallen to 7,921 as of May 2010, from a high of 9,900 inmates 16 months earlier. (*Id.* at 4, 6.) There has not been triple-celling at Riverside Correctional Facility ("RCF"), the women's prison facility, for over a year. (*Id.* at 9.) However, approximately 1,350 inmates in the PPS are still being held in triple-cells. (*Id.* at 10.)

On June 27, 2008, the City filed a Motion for Preliminary Injunction and a Motion to Dismiss Pursuant to Rule 12(b)(7) or, in the Alternative, Motion to Join Under Rule 19 of the Federal Rules of Civil Procedure. These Motions sought to join the Secretary of the Pennsylvania Department of Corrections, the President Judge of the Philadelphia Court of Common Pleas, and the President Judge of the Philadelphia Municipal Court in this litigation. The City filed a Third-Party Complaint against the Secretary and the President Judges

concurrently with those Motions.  We denied the City's Motions by Memorandum and Order on July 27, 2010.  *See Williams v. City of Phila.*, No. 08-1979, 2010 WL 2977485 (E.D. Pa. July 27, 2010).

## II.    LEGAL STANDARD

The requirements for maintaining a class action are set forth in Rule 23 of the Federal Rules of Civil Procedure.  To be certified, a class must satisfy the four prerequisites in Rule 23(a) and must fit within at least one of the three categories of class actions in Rule 23(b).  Fed. R. Civ. P. 23; *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997).  "Unless each requirement of Rule 23 is actually met, a class cannot be certified."  *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 596 (3d Cir. 2009).  "As a result, '[a]n overlap between a class certification requirement and the merits of a claim is no reason to decline to resolve relevant disputes when necessary to determine whether a class certification requirement is met.'"  *Id.* (quoting *Beck v. Maximus*, 457 F.3d 291, 316 (3d Cir. 2006)).  We must therefore conduct a "rigorous analysis" to determine whether the prerequisites of Rule 23 have been satisfied, going beyond the pleadings if necessary.  *Id.*

Rule 23(a) requires that the movant demonstrate the following for certification:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  A "decision to certify a class calls for findings by the court, not merely a 'threshold showing' by a party, that each requirement of Rule 23 is met."  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307 (3d Cir. 2008).

Rule 23(b)(2) permits certification when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  Fed. R. Civ. P. 23(b)(2).[2]  Plaintiffs bear the burden of proof to show that the requirements in Rules 23(a) and (b) are met.  *Davis v. Romney*, 490 F.2d 1360, 1366 (3d Cir. 1974).  When faced with "potentially cumbersome or frivolous" classes, Rule 23 gives district courts broad discretion in determining whether to certify a class and how to manage a certified class.  *Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979).

## III.  DISCUSSION

Plaintiffs seek to certify the following class:

> All persons who are or will in the future be confined in the Philadelphia Prison System, and who are or will in the future be subjected to the conditions of confinement, including triple celling, or placement in dormitories, without minimally adequate security, services or programs as set forth in plaintiffs' Complaint.

(Mot. Class Cert'n 1.)  The District Attorney contests certification on the grounds that Plaintiffs' claims are not typical, and that Plaintiffs will not adequately represent the class.  (*See* Dist. Atty.'s Resp. 5, Sept. 22, 2008, ECF No. 45.)  The City of Philadelphia and Prison Commissioner Louis Giorla (the "City") argue that Plaintiffs' proposed class definition is not sufficiently definite.  (City's Resp. 13-15, Sept. 22, 2008, ECF No. 44.)  In addition, the City

---

[2] Plaintiffs rely on Rule 23(b)(2).  Rule 23(b)(1) and 23(b)(3) are not discussed.  (Mot. Class Cert'n. 11-12.)

argues that the proposed class does not satisfy the commonality, typicality, and adequacy requirements. (*Id.* at 16-19.)

As a preliminary matter, we are satisfied that the class definition Plaintiffs propose is sufficiently definite. Several courts, including this Court in *Bowers*, have certified similar classes in litigation regarding prison conditions. *See Bowers I*, 2006 WL 2818501, at *8 (certifying a class consisting of "[a]ll persons who have been or will in the future be held post-preliminary arraignment in the custody of the Philadelphia Police Department, including its districts or the Police Administration Building, or anywhere in the Philadelphia Prison System, pending intake/admissions processing, at the Philadelphia Prison System, who have been or will in the future be subjected to the conditions of confinement as set forth in Plaintiffs' Complaint"); *Harris v. Pernsley*, 654 F. Supp. 1042, 1045 (E.D. Pa. 1987) (approving settlement that required certification of a class consisting of "all individuals who are, or who have been, inmates of the Philadelphia prison system since April 30, 1980 and all future inmates of the Philadelphia prison system during the time the court retains jurisdiction over the case"); *see also Colon v. Passaic County*, No. 08-4439, 2009 WL 1560156, at *2 (D.N.J. May 27, 2009) (certifying class consisting of "all persons who are now or will become incarcerated at [Passaic County Jail] during the pendency of this lawsuit"); *Vandehey v. Vallario*, No. 06-1405, 2008 WL 697428, at *21 (D. Colo. Mar. 13, 2008) (certifying class consisting of "[a]ll persons who, now or at any time in the future, are or will be prisoners in the custody of the Garfield County Sheriff's Department"); *S.H. v. Taft*, No. 04-1206, 2007 WL 1989753, at *5 (S.D. Ohio July 9, 2007) (certifying class consisting of "[a]ll persons who are or who will be committed to the legal custody of the Department of Youth Services (DYS) and housed in one of its facilities . . .").

10

The City cites *Brashear v. Perry County*, No. 06-0143, 2007 WL 1434876, at *3 (E.D. Ky. May 14, 2007), in which a Kentucky district court denied certification of a class of prisoners who sought to challenge unconstitutional overcrowding in their prison facility. The court in *Brashear* reasoned that "[w]hile the proposed class identifies individuals that were detained in overcrowded cells, it does not identify persons that have suffered from an unconstitutional condition." *Id.* The court therefore found that "the proposed class definition fail[ed] to identify those individuals that are entitled to relief and would be bound by a final judgment in the case inasmuch as factual inquiries [would be] required to determine whether an individual [wa]s a class member." *Id.* *Brashear* is distinguishable from the instant case. Unlike the proposed class definition in *Brashear*, the proposed class definition here does not merely encompass all inmates in the PPS who are subject to overcrowding. Rather, the proposed class definition includes only those inmates who are subject to overcrowding *and* are subjected to "triple celling or placement in dormitories without minimally adequate security, services or programs as set forth in plaintiffs' Complaint." (*See* Pl.'s Reply 1, Oct. 14, 2008, ECF No. 52.) Unlike *Brashear*, Plaintiff's proposed class definition limits itself by its terms to the inmates who are most likely to have suffered unconstitutional conditions of confinement as a result of overcrowding. The City's argument that the proposed class is too broad is without merit.

## A. Rule 23(a) Requirements

### 1. Numerosity

To satisfy the numerosity requirement of Rule 23(a)(1), the proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). No minimum number of plaintiffs is required, but courts in this circuit have generally found that a class of 40

or more plaintiffs satisfies the numerosity requirement. *See Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) ("[I]f the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." (citations omitted)).

Defendants do not contest numerosity. The putative class could number in the hundreds or thousands. The numerosity requirement is satisfied.

### 2. *Commonality*

Rule 23(a)(2) requires that there be common questions of law or fact among the class members. "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) (citations omitted). Because the requirement may be met by a single common question of law or fact, it is easily satisfied. *Id.* (citations omitted).

The City argues that the members of the proposed class are housed in different facilities, and are therefore subjected to different conditions. (City's Resp. 16.) As an example, the City points out that inmates at CFCF would not be subject to a dormitory assignment, while an inmate at the House of Corrections would not be required to sleep in a blue boat. (*Id.*) The City also argues that the inmates are serving different jail terms. Some inmates are incarcerated for 23 months or less while others are serving longer sentences that could make them eligible for transfer to a state correctional facility. (*Id.*) The City concludes that the proposed class lacks the requisite commonality and therefore cannot not be certified. We disagree.

Plaintiffs have pleaded a system-wide denial of constitutional rights as a result of overcrowding in the PPS. Plaintiffs allege that overcrowding, combined with the PPS's policy of employing lockdowns and restricting prisoner movements, has lead to a deprivation of the

12

putative class's constitutional rights regardless of where they are housed in the PPS. (*See* Compl. ¶ 29.) Moreover, discovery has shown that inmates are frequently moved from one cell or facility to another within the PPS. (*See, e.g.*, Dist. Atty.'s Resp. Ex. D-3 at 75-77, Sept. 23, 2008, ECF No. 46 (testifying that he had been housed in triple cells, dormitories, and two-person cells in several different PPS facilities over the course of seven months).) Therefore, even inmates who are not currently living in a triple cell or overcrowded dormitory are at risk of being placed in one at any time.

Demonstrating that the class members are subject to the same harm is sufficient to satisfy the commonality requirement. *Baby Neal*, 43 F.3d at 56. Class members need not show that they have all actually suffered the injury alleged in the complaint. *Id.* The City's contention that overcrowding affects each class member differently (or not at all) is therefore insufficient to defeat class certification. *See id.* ("[F]actual differences among the claims of the putative class members do not defeat certification."); *compare Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (rejecting defendants' argument that class action challenging prison system's treatment of disabled inmates could not satisfy commonality requirement because the inmates suffered from different disabilities). Plaintiffs have satisfied the commonality requirement of Rule 23(a)(2).

### 3. Typicality and Adequacy of Representation

The typicality and adequacy requirements of Rule 23(a) "tend[] to merge because both look to potential conflicts and to whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Beck*, 457 F.3d at 296 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626

n.20 (1997) (internal quotation marks omitted)).  We will consider the typicality and adequacy requirements together.

Rule 23(a)(3) requires that the claims or defenses of the representative parties be "typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The typicality requirement "is intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees by requiring that the common claims are comparably central to the claims of the named plaintiffs as to the claims of the absentees."  *Baby Neal*, 43 F.3d at 57 (citing *Weiss v. York Hosp.*, 745 F.2d 786, 810 (3d Cir. 1984)).

Rule 23(a)(4) requires that the class representative "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The adequacy inquiry has two components. First, we must determine whether counsel for the class is qualified to prosecute the action.  *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d at 601-02 (citations omitted).  The District Attorney concedes that Plaintiffs' Counsel is qualified to represent the class.  We agree.[3] Second, we must determine whether there are conflicts of interest between the named plaintiffs and the class they seek to represent that would prevent the named plaintiffs from adequately protecting the interests of the class.  *Id.* at 602 (citations omitted).  Thus, whether the named plaintiffs are subject to unique defenses that would consume a disproportionate amount of time and attention is relevant to both the typicality and adequacy inquiries.  *See Beck*, 457 F.3d at 301 ("A proposed class representative is neither typical nor adequate if the representative is subject to a unique defense that is likely to become a major focus of the litigation.").

---

[3] The City argues that Plaintiffs' Counsel is not adequate to represent the class, but they do so under the rubric of Rule 23(g).  We address this argument in Section III.D., *infra*.

14

The District Attorney argues that Plaintiffs are subject to two unique defenses that preclude certification. Initially, they argue that Plaintiffs have failed to exhaust their administrative remedies as required by the PLRA. (*See* Dist. Atty.'s Resp. 8-36.) Next, they argue that some of the named plaintiffs' claims are moot because the plaintiffs are no longer in custody in the PPS. (*Id.* at 16.) The City agrees that Plaintiffs' claims are moot, albeit for different reasons. (*See* City's Resp. 5-10 (arguing that granting the City's request for injunctive relief would moot Plaintiffs' claims).) The City further argues that the named plaintiffs are neither typical nor adequate because there are several conflicts of interest between the named plaintiffs and the class. First, the City contends that although 457 PPS inmates are eligible to be transferred to state prison facilities outside Philadelphia, counsel for the putative class objected to these transfers. (*Id.* at 17.) The City argues that PPS inmates may wish to see these inmates transferred to alleviate overcrowding in the PPS, while the inmates who are eligible to be transferred may wish to remain in the PPS to be close to friends and family. (*Id.*) In addition, the City points out that a cause of action for prison overcrowding arises under the Due Process Clause of the Fourteenth Amendment for pretrial detainees, while inmates who have been convicted must challenge the conditions of their confinement under the Eighth Amendment. *See Bowers II*, 2007 WL 219651, at *20 (noting that the Fourteenth Amendment applies to pretrial detainees, while the Eighth Amendment applies to convicted inmates (citing *Bell v. Wolfish*, 441 U.S. 520 (1979))). The City argues that because pretrial detainees and convicted inmates are asserting different causes of action, certification of the class is inappropriate. (City's Resp. 18.) In its Supplemental Response to Plaintiffs' Motion for Class Certification, the City also argues that Plaintiffs lack standing to bring this action. (City's Supp'l Resp. 2-3, May 10, 2010, ECF

No. 63.)  Finally, the City cites the Third Circuit's decision in *Hubbard v. Taylor*, 538 F.3d 229 (3d Cir. 2008), for the proposition that the constitutionality of a prison inmate's conditions of confinement must be determined on an individual basis, which makes certification inappropriate here.  (City's Supp'l Resp. 3-4 (citing *Hubbard*, 538 F.3d at 233-36).)

(a) The City's Arguments

The City argues that the named plaintiffs are neither typical nor adequate because there are conflicts of interest between them and other members of the putative class.  One conflict arises out of Plaintiffs' alleged opposition to the transfer of 457 inmates from the PPS to state correctional facilities, even though some of the named plaintiffs do not object to the transfers.  Plaintiffs respond that they have not opposed legal transfers of inmates and have stated this on the record on no less than eight occasions.  (*See, e.g.*, Dist. Atty.'s Resp. Ex. D-3 at 73 ("Plaintiffs have made no objections to transfers.  We have objected to your Rule 19 motion.  We never objected to transfers in the past.").)  Since Plaintiffs do not object to these transfers, there does not appear to be any conflict of interest between the named plaintiffs and the class.

The City similarly argues that there is a conflict between inmates who are sentenced to fewer than 24 months in prison, and are therefore ineligible for transfer to state correctional facilities under 42 Pa. Cons. Stat. § 9762, and inmates serving sentences that exceed 24 months, making them eligible for transfer to state prison.  (City's Resp. 17-18.)  The City supposes that the instant lawsuit could result in eligible inmates being transferred from the PPS to state prison against their wishes.  The City's argument is based upon speculation.  Such speculation cannot be used to defeat class certification.

The City notes that the Fourteenth Amendment applies to pretrial detainees who challenge the conditions of their confinement, while the Eighth Amendment applies to convicted inmates. Since the legal standards differ for pretrial detainees and sentenced inmates, the City argues that class certification is inappropriate. The City cites no authority for this proposition, and we are aware of none. In fact, courts in this circuit have certified classes consisting of both pretrial detainees and convicted inmates. *See, e.g.*, *Harris*, 2000 WL 1239948, at *1 (noting its certification of a class consisting of "all past, present, and future Philadelphia Prison System inmates," with no distinctions drawn between pretrial detainees and sentenced inmates); *Colon*, 2009 WL 1560156, at *1-2 (D.N.J. May 27, 2009) (certifying class consisting of "all persons who are now or will become incarcerated at [Passaic County Jail] during the pendency of this lawsuit;" plaintiffs' complaint specifically alleged "violation of the Fourteenth Amendment prohibition on unlawful punishment of pre-trial detainees . . . [and] violation of the Eighth Amendment prohibition on cruel and unusual punishment of sentenced inmates"). Plaintiffs note that this Court can certify pretrial detainees and sentenced inmates as separate subclasses at a later date under Rule 23(c)(4) if necessary. (Pl.'s Reply 16 n.13, October 14, 2008, ECF No. 52 (citing *Dittimus-Bey v. Taylor*, 244 F.R.D. 284, 287 & n.1 (D.N.J. 2007)).) Plaintiffs are correct.

Finally, the City contends that the Third Circuit's decision in *Hubbard v. Taylor*, 538 F.3d 229 (3d Cir. 2008), precludes certification. The City asserts that "[i]n cases alleging triple-celling, the Third Circuit adopted a totality of the circumstances approach to **each individual inmate's case**." (City's Supp'l Resp. 3-4 (citing *Hubbard*, 538 F.3d at 234).) According to the City, *Hubbard*'s command to assess the effect of prison conditions on each individual inmate makes it impossible for this case to be certified. The City misreads *Hubbard*. The City is correct

17

that the Third Circuit reaffirmed the "totality of the circumstances" approach to determining whether prison conditions violate an inmate's constitutional rights. *See Hubbard*, 538 F.3d at 233 (stating that in determining whether triple-celling of inmates is rationally related to the state's interest in managing an overcrowded prison, "we do not assay separately each of the institutional practices, but [instead] look to the totality of the conditions" (quoting *Hubbard v. Taylor*, 399 F.3d 150, 160 (3d Cir. 2005) (*Hubbard I*) (internal quotation marks omitted)). However, the City's assertion that the Third Circuit applied the totality of the circumstances approach to *each individual inmate* has no support in the text of the case and is belied by the fact that the Third Circuit applied this approach to a group of 40 plaintiffs in *Hubbard* rather than to each plaintiff individually. *See id.* at 235 (holding that based on totality of circumstances, plaintiffs were not subject to unconstitutional conditions of confinement; no separate analysis undertaken for each individual plaintiff's case). Were we to accept the City's interpretation of *Hubbard*, it would have the practical effect of preventing certification of *any* class of prisoners who seek to contest the conditions of their confinement. We do not read *Hubbard* to require such an absurd result.

The City further argues that "the Third Circuit has rejected Plaintiff's claims that triple-celling is unconstitutional." (City's Supp'l. Resp. 3 (citing *Hubbard*, 538 F.3d at 233-36).) The Third Circuit in *Hubbard* found that, based on the totality of the circumstances, triple-celling in the Gander Hill Criminal Justice Facility in Wilmington, Delaware, was not unconstitutional. To the extent that the City is arguing that *Hubbard* forecloses Plaintiffs' argument that triple-celling in the PPS is unconstitutional, we cannot agree. Any argument that *Hubbard* establishes that triple-celling is *per se* constitutional in any and all circumstances would contradict the Third

Circuit's admonition that the totality of the circumstances must be considered in each case. *See id.* at 235. In any event, this argument goes to the merits of the case rather than class certification. We reject the City's contention that triple-celling has been declared constitutional in the Third Circuit.

(b)     Mootness

Both the City and the District Attorney contend that Plaintiffs' claims are moot, albeit for different reasons. The City Argues that if this Court grants the City's Motion to Dismiss Pursuant to Rule 12(b)(7) or in the Alternative Motion to Join Under Rule 19 of the Federal Rules of Civil Procedure (ECF No. 15) and the City's Motion for Preliminary Injunction (ECF No. 16), Plaintiffs' case will become moot. We have denied the City's Motions. Accordingly, the City's argument fails. *See Williams*, 2010 WL 2977485, at *10.

The District Attorney argues that the eleven named plaintiffs' claims are moot because these plaintiffs have been released from PPS custody. (*See* Dist. Atty.'s 2d Supp. Resp. Ex. A ¶ 4, Sept. 3, 2010, ECF No. 76.) These plaintiffs cannot serve as lead plaintiffs for this class action, the District Attorney contends, since they are subject to the unique defense of mootness and are therefore neither typical nor adequate to represent the class. (Dist. Atty.'s 2d Supp. Resp. 4.)

"Mootness . . . examines whether a party has lost standing due to a change in facts over the course of the suit." *Clarke v. Lane*, 267 F.R.D. 180, 189 (E.D. Pa. 2010) (citations omitted). An action becomes moot when "(1) there is no reasonable expectation that the alleged events will recur . . . and (2) interim relief or events have completely eradicated the effects of the violation." *Ames v. Westinghouse Elec. Corp.*, 864 F.2d 289, 291 (3d Cir. 1988) (quoting *City of Los*

19

*Angeles v. Davis*, 440 U.S. 625, 631 (1979)) (internal quotation marks omitted).  General

principles of Article III jurisdiction therefore require Plaintiffs to retain a personal stake in the

case throughout the entirety of the litigation.  *Sosna v. Iowa*, 419 U.S. 393, 402 (1975).

The District Attorney argues that the eleven named plaintiffs have been released from

PPS custody since Plaintiffs filed their motion for class certification, and therefore no case or

controversy remains between the named plaintiffs and Defendants.  (*See* Dist. Atty.'s 2d Supp.

Resp. 4.)  However, the Supreme Court has recognized exceptions to the mootness doctrine,

several of which we examined in *Bowers I* and *Bowers II.*  The "capable of repetition, yet

evading review" exception applies when the named plaintiff no longer has a personal stake in the

litigation, but may be subjected again at some point in the future to the conduct that forms the

basis of his complaint.  "Since the litigant faces some likelihood of becoming involved in the

same controversy in the future, vigorous advocacy can be expected to continue."  *United States

Parole Comm'n v. Geraghty*, 445 U.S. 388, 398 (1980).  This exception "applies only in

exceptional situations, and generally only where the named plaintiff can make a reasonable

showing that he will again be subjected to the alleged illegality."  *City of Los Angeles v. Lyons*,

461 U.S. 95 (1983) (citing *Defunis v. Odegaard*, 416 U.S. 312, 319 (1974)).  In *Bowers* we

initially expressed skepticism about whether this exception applied to the named plaintiffs who

had been released from custody.  *See* 2006 WL 2818501, at *5-6.  We concluded after

considering additional evidence that the high recidivism rate of the named plaintiffs rendered

them likely to be subjected to unconstitutional conditions during the intake process again in the

future.  *Bowers II*, 2007 WL 219651, at *31.

The Supreme Court has recognized another exception to mootness in cases where the harm complained of is "inherently transitory." *Bowers I*, 2006 WL 2818501, at *6. In *Gerstein v. Pugh*, 420 U.S. 103 (1975), the Court dealt with a class action in which pretrial detainees challenged the conditions of their confinement. The Court noted that "[t]he length of pretrial custody cannot be ascertained at the outset, and it may be ended at any time . . . . It is by no means certain that any given individual, named as plaintiff, would be in pretrial custody long enough for a district judge to certify the class." *Id.* at 110 n.11. Thus, the Court recognized an exception to the traditional mootness analysis for "claims [that] are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." *Geraghty*, 445 U.S. at 399. We determined in *Bowers I* and *Bowers II* that the named plaintiffs, who consisted of pretrial detainees in the PPS, satisfied both the "inherently transitory" and "capable of repetition, yet evading review" exceptions to mootness doctrine. *See Bowers I*, 2006 WL 2818501, at *6 (stating that the exception described in *Gerstein* applied due to "the transitory nature of the harm"); *Bowers II*, 2007 WL 219651, at *31 (noting that the "capable of repetition, yet evading review" exception applied due to the likelihood that named plaintiffs would be arrested again and subjected to the intake process in the future).

We need not decide whether these exceptions apply here, however, as the Supreme Court's decision in *Geraghty*, as interpreted by the Third Circuit in *Wilkerson v. Bowen*, 828 F.2d 117 (3d Cir. 1987), controls. In *Geraghty*, the named plaintiff, John Geraghty, a prisoner in federal custody who had been denied parole, brought a putative class action challenging the United States Parole Commission's parole release guidelines. The district court denied

Geraghty's motion for class certification, and Geraghty was released from prison while the appeal was pending. The Parole Commission moved to dismiss the appeal as moot. The Third Circuit held that the action was not moot, and the Supreme Court granted certiorari. Noting "the flexible character of the Art. III mootness doctrine," 445 U.S. at 400, the Court held that "an action brought on behalf of a class does not become moot upon expiration of the named plaintiff's substantive claim, even though class certification has been denied." *Id.* at 404. In reaching this conclusion, the Court reasoned that "[a] plaintiff who brings a class action presents two separate issues for judicial resolution. One is the claim on the merits; the other is the claim that he is entitled to represent a class." *Id.* at 402. Thus, even after a proposed class representative's claim on the merits is resolved, he retains a right to have a class certified that is "more analogous to the private attorney general concept than to the type of interest traditionally thought to satisfy the 'personal stake' requirement." *Id.* at 403. Thus, "[t]he proposed representative retains a 'personal stake' in obtaining class certification sufficient to assure that Art. III values are not undermined." *Id.* at 404.

In *Wilkerson*, the Third Circuit held that the Supreme Court's reasoning in *Geraghty* applied with equal force to proposed class representatives whose personal claims were mooted after they filed their class certification motion, but before the district court decided the motion. *See Wilkerson*, 828 F.2d at 121 ("It would seem to us that the principle espoused in *Geraghty* is applicable whether the particular claim of the proposed class plaintiff is resolved while a class certification motion is pending in the district court (as in the present case) or while an appeal from denial of a class certification motion is pending in the court of appeals (as in *Geraghty*)."). Since *Wilkerson* was decided, the Third Circuit has consistently held that a putative class

representative whose claim was mooted after the class certification motion was filed but before the motion was decided is not automatically disqualified from representing a class. *See Rosetti v. Shalala*, 12 F.3d 1216, 1227-28 (3d Cir. 1993) (holding that under *Wilkerson*, it was error for district court to deny class action certification motion of named plaintiffs whose claims were resolved after filing motion for class certification but before district court decided motion); *Lusardi v. Xerox Corp.*, 975 F.2d 964, 982 (3d Cir. 1992) ("Just as appellate review may relate back to an adverse class certification decision made when plaintiffs had a live claim, so district court review of a pending certification motion relates back to its filing, if plaintiff had a live claim at that time."); *see also id.* at 982 n.32 ("[A]llowing a district court to decide a pending class certification motion—filed when the named plaintiff had a live claim—after the named plaintiff's individual claims have been resolved is consistent with the Supreme Court's holding in *Geraghty*.").  Although other circuits have disagreed with *Wilkerson*'s reading of *Geraghty*, it remains good law in this circuit and is therefore binding on us.  *See Rosetti*, 828 F.3d at 1228 n.25 (noting other circuits' disagreement with *Wilkerson* and stating that "we remain willing, not to mention bound, to stand by our past decisions, even the lonely ones with which other courts have disagreed").  We therefore find that the named plaintiffs' release from the PPS after the class certification motion was filed does not moot the claims of the class or render the named plaintiffs atypical or inadequate to represent the class.[4]

---

[4] The cases Defendants cite are inapposite.  For example, Defendants cite *Cobb v. Yost*, 342 F. App'x 858 (3d Cir. 2009) (non-precedential), for the proposition that a prison inmate's claims for injunctive relief against the prison are mooted by his release from prison.  (Dist. Atty.'s 2d Supp. Resp. 4.)  *Cobb* was not a class action, however, and it has no application here. *See Rosetti*, 12 F.3d at 1227 ("Only the unique nature of a class action, and the named plaintiff's unique interest in pursuing his procedural claim to represent a class, provide the requisite personal stake in the certification issue that preserves a federal court's jurisdiction over that

In addition, under the Supreme Court's decision in *Sosna*, this case will not become moot after the class action is certified because a controversy between Defendants and a member of the class represented by the named plaintiffs is sufficient to satisfy Article III's "case or controversy" requirement. *See Sosna*, 419 U.S. at 401-402 (holding that after a class is certified, "[t]he controversy may exist . . . between a named defendant and a member of the class represented by the named plaintiff, even though the claim of the named plaintiff has become moot"). We therefore conclude that mootness will not be an issue after certification or at trial.

Although the Third Circuit's decision in *Wilkerson* controls the outcome in this case, a review of the Eastern District of Pennsylvania court docket reveals that in the last ten months at least 93 pro se cases have been filed in this Court in which inmates are objecting to unconstitutional conditions resulting from overcrowding and triple-celling in the PPS. Eight of these cases were filed within the last two months. *See, e.g.*, Compl., Pierce v. CFCF, No. 10-4286 (E.D. Pa. Aug. 27, 2010), ECF No. 3 (alleging triple-celling); Compl., Shepard v. Curran Fromhold Corr. Facility et al., No. 10-4179 (E.D. Pa. Aug. 26, 2010), ECF No. 3 (same); Compl., Terrell Jackson v. C.F.C.F. et al., No. 10-4150 (E.D. Pa. Aug. 26, 2010), ECF No. 3 (same); Compl., Greer v. Phila. Prison Sys. et al., No. 10-3988 (E.D. Pa. Aug. 26, 2010), ECF No. 5 (same); Compl., Sigmund Jackson v. Curran-Fromhold Corr. Facility et al., No. 10-4178 (E.D. Pa. Aug. 24, 2010), ECF No. 3 (same). We are satisfied that if the named plaintiffs' release from PPS custody created a problem with jurisdiction, class counsel could simply add additional

---

question."). Defendants also cite several district court cases, as well as cases from other circuits, as support for their position. (*See, e.g.*, Dist. Atty.'s 2d Supp. Resp. 5 (citing *Clarke*, 267 F.R.D. 180; and *Smith v. Allen*, 502 F.3d 1255, 1267 (11th Cir. 2007)).) Unlike *Wilkerson* and its progeny, these cases are not binding on us and do not control our decision.

inmates who remain in PPS custody to the complaint. While the Supreme Court's mootness jurisprudence contains exceptions that are intended to avoid the "'black hole' of litigation," *Clarke*, 267 F.R.D. at 192, that would result if class counsel were required to constantly add new named plaintiffs or file new class-action complaints when previous named plaintiffs' claims are resolved, clearly there are a number of inmates presently in the PPS who are members of the proposed class and who could be added to the complaint as named plaintiffs to preserve our jurisdiction over this case if need be. (*See* Hr'g Tr. 19, May 3, 2010, ECF No. 66 ("[T]o the extent that the class was certified, all of those cases [alleging triple-celling] would then be within the ambit of the class certification . . . .").) Such prudential considerations lend further support to the flexible, commonsense approach to the Article III "cases and controversies" requirement that is set forth in the Supreme Court's decision in *Geraghty* and the Third Circuit's decisions in *Wilkerson* and its progeny. We therefore find that Defendants' mootness argument does not render the named plaintiffs atypical or inadequate to represent the class.

(c)  Exhaustion under the PLRA

The District Attorney argues that the named plaintiffs are neither typical nor adequate because they have failed to exhaust their administrative remedies under the PLRA, thus subjecting them to a unique defense. We rejected a similar argument in *Bowers II*, finding that exhaustion was excused because the "detainees had no meaningful access to a grievance procedure through which they could have objected to the conditions of their detention." *Bowers II*, 2007 WL 219651, at *33. We find that exhaustion is not required here because overcrowding is not an issue that may be grieved in the PPS. Plaintiffs' failure to exhaust their administrative remedies therefore does not defeat class certification.

As a preliminary matter, we do not believe that the named plaintiffs are unique in their inability to navigate the PPS's grievance procedures to completion. To the contrary, our experience in *Bowers* and the evidence in this case suggest that it is the inmate who successfully shepherds his claims through the PPS's dysfunctional grievance procedures who would truly be unique. A defense that is not unique to the named plaintiffs cannot defeat class certification. *See Stanford v. Foamex L.P.*, 263 F.R.D. 156, 170 (E.D. Pa. 2009) (rejecting defendants' "unique defense" argument because the defense "would presumably work to defeat the claims of the class as a whole" rather than just the named plaintiffs) (citing *Zhu v. Schering Plough Corp.*, No. 03-1204, 2008 WL 4510039, at *5 (D.N.J. Sept. 30, 2008)). The District Attorney has produced no evidence to establish that Plaintiffs' failure to exhaust administrative remedies is a defense that is unique to them. *See Marsden v. Select Med. Corp.*, 246 F.R.D. 480, 486 (E.D. Pa. 2007) ("The burden is on the defendant to show that such a unique defense 'will play a significant role at trial.'" (quoting *Beck*, 457 F.3d at 300)). We will not deny class certification based on a unique defense that is almost certainly not unique to the named plaintiffs.

Even assuming that the exhaustion defense is unique to the named plaintiffs, exhaustion is excused because there is no administrative remedy available for overcrowding. The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies *as are available* are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). "To be 'available' under the PLRA, a remedy must afford 'the possibility of some relief for the action complained of.'" *Clarke*, 267 F.R.D. at 191 n.9 (quoting *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004)); *see also Booth v. Churner*, 532

U.S. 731, 738 (2001) ("[T]he modifier 'available' requires the possibility of some relief for the action complained of."). While there is no futility exception to the PLRA's exhaustion requirement, *see Nyhuis v. Reno*, 204 F.3d 65, 68-72 (3d Cir. 2000), failure to exhaust administrative remedies will not defeat a plaintiff's claim if there is no administrative remedy whatsoever for the issue that is the source of a plaintiff's grievance. *Booth*, 532 U.S. at 736 n.4 ("Without the possibility of some relief, the administrative officers would presumably have no authority to act on the subject of the complaint, leaving the inmate with nothing to exhaust.").

The evidence in this case establishes that there is no available administrative remedy for overcrowding in the PPS. The PPS's grievance policy specifically states that "[n]o grievance may be filed concerning . . . matters beyond the control of the PPS." (Dist. Atty.'s Resp. Ex. B at 3.) The record shows that overcrowding is a matter that is beyond the control of the PPS. (*See, e.g.*, *id.* Ex. 8 at 1-2 (inmate complaining of "overcrowding," "boats," and "restricted movement;" response to grievance stated that conditions were "beyond our control").) Indeed, overcrowding appears to be the paradigmatic example of a situation that is not addressable through the grievance process because it is beyond the control of the PPS. The last 40 years of litigation over prison conditions as a result of overcrowding in the PPS is a testament to this. We are satisfied that the PPS grievance system does not offer "the possibility of some relief for the action complained of." *Booth*, 532 U.S. at 738. The District Attorney's exhaustion argument therefore fails to defeat class certification.

Because there are no unique defenses that are likely to consume the named plaintiffs' attention at trial, and because the "claims or defenses of the representative parties are typical of the claims or defenses of the class," Fed. R. Civ. P. 23(a)(3), we find that Plaintiffs have satisfied

the typicality requirement of Rule 23(a)(3). We likewise find that Plaintiffs will fairly and adequately protect the interests of the class. The adequacy requirement of Rule 23(a)(4) is therefore satisfied.

### C.     Rule 23(b)

Plaintiffs seek to certify this class action pursuant to Rule 23(b)(2). (Mot. Class Cert'n 5.) Under Rule 23(b)(2), a class action may be maintained when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The Third Circuit has noted that the requirements of Rule 23(b)(2) are "almost automatically satisfied in actions primarily seeking injunctive relief." *Baby Neal*, 43 F.3d at 58 (citing *Weiss*, 745 F.2d at 811). "It is the (b)(2) class which serves most frequently as the vehicle for civil rights actions and other institutional reform cases that receive class action treatment." *Id.* at 58-59.

Numerous courts have held that Rule 23(b)(2) is an appropriate vehicle in actions challenging prison conditions. *See, e.g.*, *Bowers I*, 2006 WL 2818501, at *3 (certifying class action under Rule 23(b)(2)); *Santiago v. City of Phila.*, 72 F.R.D. 619, 626 (E.D. Pa. 1976) (observing that Rule 23(b)(2) "has been liberally applied in the area of civil rights, including suits challenging conditions and practices at various detention facilities" (citations omitted)); *Coley v. Clinton*, 635 F.2d 1364, 1378 (8th Cir. 1980) (Rule 23(b)(2) "is an especially appropriate vehicle for civil rights actions seeking such declaratory relief 'for prison and hospital reform'" (citations omitted)).

The City argues that the proposed class is not sufficiently cohesive to be certified under Rule 23(b)(2). (City's Resp. 19-20.) The City expresses concern that if the class is provided relief from the alleged unconstitutional conditions in the PPS by transferring eligible inmates to State custody, transferred inmates who would prefer to remain in PPS custody to be close to family and friends might find this to be an "unacceptable resolution." (*Id.* at 20.) This is essentially the same argument that the City advanced in urging us to reject class certification on typicality and adequacy grounds. We rejected this argument in Section III.A.3.a, *supra*, and we likewise reject it here.[5] We find that the proposed class meets the requirements of Rule 23(b)(2), and we will therefore certify the class pursuant to that subsection.

### D.       Adequacy of Plaintiffs' Counsel under Rule 23(g)

The City contends that Plaintiffs' Counsel cannot fairly and adequately represent the interests of the class because they are subject to several conflicts of interest. (City's Resp. at 21-22 (citing Fed. R. Civ. P. 23(g)).) Citing the Pennsylvania Rules of Professional Conduct, the City argues that Plaintiffs' Counsel's objections to joinder of the State Defendants, their objection to the transfer of 457 inmates to state correctional facilities, and their objection to the relief sought against the First Judicial District demonstrate that they are directly adverse to the interests of certain members of the class, which should disqualify them from representing the

---

[5] The District Attorney adopts the City's argument as the basis for the contention that we should exercise our discretion to limit the class under Rule 23(c). (*See* Dist. Atty.'s Resp. 36-38.) We have rejected the City's speculation regarding where certain inmates may wish to be incarcerated. *See* Section III.A.3.a, *supra*. Similarly, we disagree with the District Attorney that individual issues would so predominate this litigation that a narrower class must be certified under Rule 23(c). We therefore decline the District Attorney's request to narrow the class under Rule 23(c).

class.  (*Id.* at 21-23.)  The District Attorney, by contrast, specifically disclaims any reference to this argument.  (Dist. Atty.'s Resp. 2 n.1.)

These are the same arguments yet again that the City made regarding typicality and adequacy, and later regarding the cohesiveness of the class under Rule 23(b)(2), only recast against Plaintiffs' Counsel rather than the putative class representatives.  We addressed these arguments in Section III.A.3.a, *supra*, and found them to be without merit.  We likewise find the City's concerns about a potential conflict of interest between Plaintiffs' Counsel and certain members of the class to be without merit, for the reasons given in Section III.A.3.a, *supra*.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion For Class Certification will be granted.  An appropriate Order will follow.

BY THE COURT:

_____

R. BARCLAY SURRICK, J.