IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DWIGHT WILLIAMS, ET AL. | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 08-1979 |
| CITY OF PHILADELPHIA, ET AL. | : | |

**MEMORANDUM**

**SURRICK, J.**                                                                                         **AUGUST 5, 2011**

Presently before the Court is the parties' joint request for approval of their Settlement Agreement. (ECF No. 87.) For the following reasons, the Settlement Agreement will be approved.

**I.      BACKGROUND**

On April 28, 2008, Plaintiffs filed the instant class action against the City of Philadelphia and others (collectively, the "City Defendants") seeking injunctive and declaratory relief under Fed. R. Civ. P. 23(b)(2). The Complaint alleges that the Philadelphia Prison System ("PPS") is subjecting inmates to "dangerous, unsanitary, severely overcrowded, degrading, and cruel conditions of confinement." (Compl. ¶ 1, ECF No. 1.) Specifically, it alleges that the PPS's practice of housing three inmates in cells designed to hold only two—referred to as "triple-celling"—violates the Eighth and Fourteenth Amendments of the United States Constitution. (*Id.* ¶ 3.) When the Complaint was filed, the inmate population in the PPS was at a historic high of over 9,300 inmates. (*Id.* ¶ 1.) Over 2,500 inmates were housed in triple cells. (Settlement Agreement 1, ECF No. 87.) By January 2009, the PPS inmate population had reached 9,800 inmates, with close to 3,000 inmates housed in triple cells. (*Id.* at 2.)

Since January 2009, the inmate population in the PPS has declined, due in large part to significant steps taken by the City Defendants.  The City Defendants have expanded the "Video Crash Course" program, which accelerates disposition of minor cases for persons in custody, and have consolidated probation and parole hearings before judges who specialize in such matters. (Settlement Agreement 2-3.)  The City Defendants have also increased the use of house arrest and GPS monitoring, as well as increased the use of diversionary programs for certain nonviolent offenders.  (*Id.* at 3.)  There are currently 7,594 in-house inmates in the PPS—a reduction of approximately 1,700 from when this action was filed.  (Fairness Hr'g Tr. 6.)  There are approximately 1,000 inmates housed in triple cells today, compared to over 2,500 when the Complaint was filed.  (*Id.* at 6.)  Triple-celling has been eliminated in the Riverside Correctional Facility, which houses female inmates, as well as in Alternative Special Detentions and the Philadelphia Industrial Correctional Center.  (District Att'y's Supplemental Resp. Opp'n Mot. Certify Class 1-2, ECF No. 63.)  Moreover, sentencing legislation recently passed by the Pennsylvania Legislature, which takes effect in September of 2011, will further alleviate the overcrowding problem at PPS.

On October 8, 2010, we certified the following class under Federal Rule of Civil Procedure 23(b)(2):

> All persons who are or will in the future be confined in the Philadelphia Prison System, and who are or will in the future be subjected to the conditions of confinement, including triple celling, or placement in dormitories, without minimally adequate security, services or programs as set forth in plaintiffs' Complaint.

Order, *Williams v. City of Phila.*, No. 08-1979 (E.D. Pa. Oct. 8, 2010), ECF No. 80.  In early 2011 the parties entered into settlement negotiations.  On April 29, 2011, we granted preliminary

approval of the proposed Settlement Agreement and scheduled a fairness hearing for June 15, 2011.  (*See* Order ¶¶ 1-2, ECF No. 86.)  The City Defendants published notice of the proposed Settlement Agreement in the Philadelphia Inquirer and the Philadelphia Daily News and posted a Notice of Class Action Settlement in every housing unit and law library in the PPS.

Taking into consideration the reduction in the inmate population at the PPS, this Settlement Agreement essentially preserves the status quo and provides for monitoring of the situation by Plaintiffs' counsel for the next two years.  (Settlement Agreement 4-6.)  The City Defendants agree to continue to implement the programs that have reduced the inmate population in the PPS and to make reasonable efforts to reduce the triple-celling of inmates.  (*Id.* at 4.)  The City Defendants also agree to make reasonable efforts to minimize the use of lockdowns and to provide inmates with medical and social services during lockdowns.  Plaintiffs' counsel will be provided with information regarding the prison population, triple-celling, and other relevant matters on a monthly basis for a two-year period beginning on the date that the Settlement Agreement is approved.  (*Id.* at 5.)  Plaintiffs' counsel will also have the right to inspect any facilities at PPS in which there is triple-celling at six-month intervals.  The City Defendants will reimburse Plaintiffs' counsel for fees and costs in the amount of $45,000.  (*Id.* at 6.)

At the fairness hearing on June 15, 2011, counsel for all of the parties agreed that the Settlement Agreement was fair and reasonable, particularly in light of the steps the City Defendants have taken to reduce the prison population over the past two years.  The City Defendants noted that inmates would not spend more than 60 days in a triple cell and assured the Court that they were taking further steps to reduce the amount of time inmates are housed in triple cells, the goal being 30 days. (Fairness Hr'g Tr. 10, 12.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 23(e), the "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Final approval of a class-action settlement requires a finding by the Court that the settlement is fair, reasonable, and adequate. *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 592 (3d Cir. 2010).

In *Girsh v. Jepson*, the Third Circuit articulated nine factors for district courts to consider in deciding whether a class-action settlement is fair, reasonable, and adequate:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

521 F.2d 153, 157 (3d Cir. 1975) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (alterations omitted)). Subsequently, the Third Circuit advised that in light of the "sea-change in the nature of class actions," it may be useful for courts to consider the following factors in addition to the *Girsh* factors:

> the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and

reasonable.

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998). We must make findings regarding the *Girsh* factors and the *Prudential* factors where appropriate. *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010). However, we can not "substitute the parties' assurances or conclusory statements for [our own] independent analysis of the settlement terms." *Id.* at 350-51.

## III. ANALYSIS

### A. The *Girsh* Factors[1]

#### 1. *The complexity, expense and likely duration of the litigation*

This litigation has been ongoing for over three years. The parties have already engaged in significant discovery; however, more remains to be done before this case is ready for trial. The trial itself would be costly and complex, since a significant part of the evidence will of necessity come from expert witnesses. The first factor weighs in favor of the proposed Settlement Agreement.

#### 2. *The reaction of the class to the settlement*

We have received correspondence from the class members through counsel for Plaintiffs and counsel for Defendants. For the most part, the correspondence makes inquiry about the seeking of damages for the conditions of overcrowding and triple-celling. None of the

---

[1] Since this is a Rule 23(b)(2) class action for injunctive relief, not all the *Girsh* factors apply. We need not consider the ability of the defendants to withstand a greater judgment, the range of reasonableness of the settlement fund in light of the best possible recovery, and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *See Serventi v. Bucks Technical High Sch.*, 225 F.R.D. 159, 167 (E.D. Pa. 2004) (noting that certain factors do not apply where class does not seek monetary damages).

correspondence objects to the Settlement Agreement as such. Plaintiffs' counsel informs us that the inmates who have inquired about damages have been referred to an attorney who is currently handling actions for damages as a result of overcrowding in the PPS, since damages are not at issue in this Rule 23(b)(2) class action. The lack of any objection from a class of potentially thousands of inmates creates a strong presumption in favor of approving the settlement. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 234–35 (3d Cir. 2001). This factor counsels in favor of approving the proposed Settlement Agreement.

> 3. *The stage of the proceedings and the amount of discovery completed*

As noted above, much discovery has been completed in this action, though the parties will certainly require additional discovery before the case is ready for trial. Nevertheless, the parties have completed enough discovery to accurately evaluate whether to settle this action or proceed to trial. This factor weighs in favor of the proposed Settlement Agreement.

> 4. *The risks of establishing liability*

If one were to look at the 40-year history of prison litigation involving conditions in the PPS, one could conclude that Plaintiffs face no risk in establishing liability. Consistently over the years, both state and federal courts have taken the City Defendants to task for conditions in the PPS that were caused by overcrowding and that failed to pass constitutional muster. Just three years ago in *Bowers v. City of Philadelphia*, No. 06-3229, 2007 WL 219651 (E.D. Pa. Jan. 25, 2007), we concluded after hearing and after a site visit that conditions at PPS related to overcrowding were unconstitutional. However, as discussed above, since that time the City Defendants have taken steps to reduce the prison population and to eliminate many of the problems caused by overcrowding. The results have been significant.

In addition, in 2008 the Third Circuit Court of Appeals in the case of *Hubbard v. Taylor*, 538 F.3d 229 (3d Cir. 2008), specifically addressed the problem of triple-celling. The court concluded that triple-celling standing alone is not necessarily unconstitutional. The court determined that in assessing the constitutionality of the practice of triple-celling one must consider the practice as part of the totality of the circumstances within the institution. Even though the inmates in *Hubbard* spent up to seven months sleeping on a floor mattress in a triple cell, the court found given the totality of the circumstances that triple-celling did not violate the inmates' constitutional rights. The court cautioned, however, that "our holding in this case should not be misconstrued as an endorsement of 'triple celling' or the use of floor mattresses."[2] *Id.* at 238.

Inmates at the PPS are presently spending only approximately 60 days at a time in triple cells. The PPS is attempting to reduce that time to 30 days. The PPS has reduced the use of lockdowns and restricted movement. As a result, inmates are permitted more time out of their cells. Attempting to establish that triple-celling at the PPS is unconstitutional under the present

---

[2] We note that federal courts have split on the issue of whether requiring an inmate to sleep on a mattress on the floor violates the Constitution. The majority has concluded that it does not. Several of these cases involved triple-celling. *See, e.g.*, *Sanders v. Kingston*, 53 F. App'x 781, 782 (7th Cir. 2002) (holding that the Eighth Amendment does not require "elevated beds for prisoners"); *Mann v. Smith*, 796 F.2d 79, 85 (5th Cir. 1986) (same); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (same); *Chilcote v. Mitchell*, 166 F. Supp. 2d 1313, 1315 (D. Or. 2001) (finding triple-celling constitutional); *Randall v. City of Phila.*, No. 86-6300, 1987 WL 14383, at *1 (E.D. Pa. July 22, 1987) (forcing inmate to sleep on floor of gymnasium did not establish a claim under the Eighth Amendment); *Huttock v. Phila. Prison Sys.*, No. 86-3714, 1986 WL 10558, at *1 (E.D. Pa. Sept. 18, 1986) (forcing inmate to sleep on the floor, "[a]lthough uncomfortable, and certainly not the preferred practice, . . . do[es] not amount to the 'wanton and unnecessary infliction of pain' prescribed by the Eighth Amendment's prohibition of cruel and unusual punishment"). *But see Lareau v. Manson*, 651 F.2d 96, 107-08 (2d Cir. 1981) ("[F]orcing men to sleep on mattresses on the floors . . . do[es] not provide minimum decent housing under any circumstances for any period of time.").

circumstances and under *Hubbard* is not without risk.  Nevertheless, we do not endorse triple-celling as a long-term solution to the prison overcrowding problem.  As we noted three years ago in *Bowers*, "even if triple-celling is permissible as a short-term emergency solution, it is not tenable as a permanent cure."  *See* 2007 WL 219651, at *26.[3]

    5.  *The risks of establishing damages*

This is a class action under Rule 23(b)(2) for injunctive relief only.  The class does not seek damages.  However, the risks inherent in seeking injunctive relief are always significant.  *See Inmates of Northumberland Cnty. Prison v. Reish*, No. 08-0345, 2011 WL 1627951, at *3 (M.D. Pa. Apr. 29, 2011) (noting risks involved in making the necessary showing to obtain an injunction in prison litigation).  This factor therefore weighs in favor of approval of the proposed Settlement Agreement.

    6.  *The risks of maintaining the class through the trial*

We see no particular risk of modification or decertification of the class during or prior to trial.  This factor weighs against approving the settlement.

  **B.**  **The *Prudential* Factors**

Since this is a Rule 23(b)(2) class action seeking injunctive relief only, most of the factors set forth in *Prudential* do not apply.  The only factor that is relevant is the reasonableness of the provision for attorney's fees.  We believe that the attorneys' fees provided for in the Settlement Agreement are fair and reasonable.  Plaintiffs' counsel are very experienced in prison litigation of this nature and have been working on this case for several years.  Counsel fees of $45,000

---

[3] In this regard, the testimony of the Commissioner of the Philadelphia Prison System, Louis Giorla, that plans are presently being developed for the creation of new housing units at the old Holmesburg complex for 380 to 600 inmates is encouraging.  (Fairness Hr'g Tr. 11-13.)

considering the amount of time spent and the quality of the work done by Plaintiffs' counsel is more than reasonable.

IV. **CONCLUSION**

It is apparent that the City Defendants have decided to confront the overcrowding problem at the PPS and to address the conditions resulting therefrom. The Settlement Agreement provides that the City Defendants will continue to address the problem. It permits Plaintiffs to actively monitor the situation for the next two years. And it permits Plaintiffs to return to this Court if conditions at PPS deteriorate. We are satisfied that this Agreement is fair, reasonable, and adequate. Accordingly, the joint request for approval will be granted.

An appropriate Order follows.

**BY THE COURT:**


/**s**/ *R. Barclay Surrick*
**U.S. District Judge**