Law Offices
# O'CONNOR KIMBALL LLP

| | | |
|---|---|---|
| Stephen E. Siegrist<br>New Jersey Managing Partner | 51 Haddonfield Road<br>Suite 330<br>Cherry Hill, NJ 08002-4805<br>(856) 663-9292<br>FAX (856) 663-6566<br>Web site: www.oconnorkimball.com<br>E-Mail: ssiegrist@okllp.com | PENNSYLVANIA OFFICE<br>Two Penn Center Plaza<br>Suite 1100<br>Philadelphia, PA 19102<br>(215) 564-0400<br>FAX (215) 564-1973 |

March 27, 2014

Honorable R. Barclay Surrick, U.S.D.J.
United State District Court
James A. Byrne U.S. Courthouse
601 Market Street, Room 8614
Philadelphia, PA  19106-1797


RE:	Dwight Williams v. City of Philadelphia, et als
	Docket Number: 08-1979


	Letter Brief on the issue of whether the mental health records at issue may be disclosed under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), and the Mental Health Procedures Act ("MHPA")


Dear Judge Surrick:

	I represent non-party Corizon Health, Inc., in this matter where the underlying issues concern the alleged overcrowding conditions at the Philadelphia Prison System.


	**A.	ISSUE:**


	Following a phone conference with all counsel and Your Honor on March 18, 2014, Your Honor has requested briefing on the issue:   Whether the mental health records at issue may be disclosed under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), and the Mental Health Procedures Act ("MHPA")?

1

B.   **SHORT ANSWER:**

NO, the mental health records are NOT discoverable, unless HIPAA, or certain Pennsylvania State statute and Administrative Code procedures are complied with.

The mental health records, including "logs" identifying the patient and their mental health condition or complaint, are confidential and cannot not be disclosed, without either a HIPPA compliant authorization, or if no consent is obtained from the patient, then plaintiffs' counsel must give **NOTICE** to each affected patient before such records may be produced even with a Court Order.

C.   **FACTS:**

Defense counsel for Corizon has been asked to sign a new Protective Order, **(Exhibit "A")**, and then produce certain somewhat undefined mental health records of inmates from the Philadelphia Prison System, without the written consent of the individual inmates.

The new Protective Order does not specifically identify what mental health documents are being sought, but my understanding from discussing this issue with plaintiffs' counsel, Jon Feinberg, Esq, is that the plaintiffs' counsels are seeking: (1) "The logs for mental health requests for services for all sites for the month of September, 2013, with inmate name, PPS number and date of request". (Item # 12 from the Plaintiff's Supplemental Request for Production, dated December 12, 2013), and (2) possibly the actual medical charts of various inmates which may contain mental health records.

However, since I was not involved in the discussion surrounding the drafting of the new Protective Order, then I am not certain if other mental health records of the inmates are being requested.

I was however, involved in the reviewing and suggesting additions to the Protective Order that was signed by Your Honor on August 26, 2013. **(Exhibit "B", Court docket, document # 108).** I requested, and received, specific language to be added to that Protective Order to protect against the production of confidential patient mental health records. That language included:

2

"Additionally, added protection for patient mental health medical records is set forth in the Pennsylvania statute, the Mental Health Procedures Act, 50 P.S. 7111, which protects mental health information from disclosure, except in limited exceptions that do not apply in the instant case." (Paragraph 1, page 2), (Exhibit "B").

"**ADDITIONALLY**, in order to protect from disclosure any and all patient mental health medical records, which are protected pursuant to Pennsylvania statute, the Mental Health Procedures Act, 50 P.S. 7111, the non-party in possession of the requested records, Corizon Health, Inc., **IS ALLOWED TO REDACT** any and all references to a patients mental health diagnosis and care, if such references exist in the non-medical chart documents." (Paragraph 5, page 3), (Exhibit "B").

**ADDITIONALLY**, in instances in which the plaintiff's counsel has specifically requested the actual medical chart of a plaintiff class member (such as documents 14(a) – (k) below), those specific patient medical charts will only be produced by non-party Corizon health, Inc., **IF THE SPECIFIC PLAINTIFF CLASS MEMBER HAS SIGNED A HIPAA** compliant authorization allowing for the specific release of mental health records, (and non-mental health records), because the inmate medical charts are a unified document and may consist of both mental health records and non-mental health medical records." (Paragraph 6, page 3 to the top of page 4), (Exhibit "B").

**To date, the plaintiffs' counsel has provided Corizon with HIPPA compliant authorizations for approximately six of the named plaintiff's and the medical charts, including mental health records, have been produced.**
**To date, Corizon has produced numerous "tracking logs" such as Grievance Logs, etc, and references to inmate mental health issues have been redacted.**

Based upon the legal arguments below, it is the contention of non-party Corizon Health, Inc., that the mental health records, including "logs" identifying the patient and their mental health condition or complaint, are confidential and cannot not be disclosed, without either a HIPPA compliant authorization, or if no consent is obtained from the patient, then plaintiffs'

3

counsel must give **NOTICE** to each affected patient before such records may be produced even with a Court Order. (Non-party Corizon Health, Inc., did not draft the mental health records sought to be produced, but Corizon is the records custodian of the requested medical records, or has access to the requested logs from the mental health provider, MHM Services, Inc.).

    D.    **LEGAL ANALYSIS:**

### POINT ONE

**THE EXISTING AUGUST 26, 2013 PROTECTIVE ORDER HAS ALREADY ACKNOWLEDGED THAT THE MENTAL HEALTH PROCEDURES ACT PROVIDES PROTECTION TO PLAINTIFFS' MENTAL HEALTH RECORDS**

The inclusion of language in the first Protective Order, (Exhibit "B", Court docket, document # 108), set forth in the FACTS above, already has acknowledged that the protections of the Mental Health Procedures Act, and bars production of the requested documents that contain mental health care information, unless the patient has signed a HIPAA complaint authorization, or unless for documents such as mental health department "logs" of appointments, which contain the names and inmate numbers, (or any other identifying information such as cell number), are redacted to protect patient confidentiality in the mental health records.

### POINT TWO

**THE PENNSYLVANIA MENTAL HEALTH PROCEDURES ACT TAKES PRIORITY OVER HIPPA REGARDING THE PRODUCTION OF MENTAL HEALTH RECORDS WITHOUT PATIENT CONSENT**

In this case, involving the Philadelphia Prison System, the Pennsylvania statute, the Mental Health Procedures Act, 50 P.S. § 7111, (MHPA), is more stringent than HIPAA, and therefore, is a valid statutory protection for inmate mental health records.

<u>In the absence of the MHPA</u>, the inmate patient medical records, and any logs containing patient mental health information are protected by the Health Insurance Portability and Accountability Act of 1996 (HIPAA), and HIPAA does contain regulations, <u>45 C.F.R § 164.512</u>, that allows for the production of patient medical information without the patient's authorization of the release of the information.  **<u>However</u>**, the MHPA is the controlling statutory protection for the patient mental health records at issue in this case.

HIPAA and its Standards, (regulations), expressly supersede any contrary provision of State law, 42 U.S.C. §1320d-7(a)(1); 45 CFR §160.203, **<u>unless</u>** the contrary state law related to the privacy of individually identifiable health information is more stringent than HIPAA's requirements. 45 C.F.R. §160.203(b).  <u>United State of America ex rel. Stewart v. The Louisiana Clinic</u>, 2002 U.S. Dist. LEXIS 24062; and <u>National Abortion Federation v. Ashcroft</u>, 2004 U.S. Dist. LEXIS 1701, (N.D. IL, 2004).

The MENTAL HEALTH PROCEDURES ACT, <u>50 P.S. § 7111,</u> contains additional protection for patient medical records which **<u>protects mental health information from disclosure except in limited exceptions that do not apply in our case.</u>**   Therefore, the MHPA is the controlling statutory protection for the patient mental health records at issue in this case.

### POINT THREE

**The MENTAL HEALTH PROCEDURES ACT, <u>50 P.S. § 7111,</u> AND ITS ADMINISTRATIVE CODE PROVISIONS, <u>55 Pa §5100.32</u> and <u>55 Pa §5100.35</u>, BAR THE PRODUCTION OF PATIENT MENTAL HEALTH RECORDS, (EVEN IF A COURT ORDER IS OBTAINED), UNLESS NOTICE IS PROVIDED, IF THE PERSON WHOSE RECORDS ARE REQUESTED IS CURRENTLY RECEIVING SERVICES, AND THEIR WHEREABOUTS ARE KNOWN, OR IF NO LONGER RECEIVING SERVICES, THEN NOTICE TO THEIR LAST KNOWN ADDRESS**

The Pennsylvania Mental Health Procedures Act, 50 P.S. § 7111, (MHPA), contains a confidentiality provision which mandates that, absent the patient's consent, all documentation concerning a person's mental health treatment must be kept confidential.

There are only four exceptions, as noted below. None of those four exceptions apply in this case. Therefore, to the extent that a requested inmate medical record, or mental health log, contains mental health treatment information, then the inmate medical records, or logs, cannot be produced in discovery without the inmate authorizing that release, or subject to strict adherence to accompanying Pennsylvania Administrative Code regulations, discussed below.

### A.   MENTAL HEALTH PROCEDURES ACT

**50 P.S. § 7111, Confidentiality of records, (Exhibit "C")**

(a) All documents concerning persons in treatment shall be kept confidential and, without the person's written consent, may not be released or their contents disclosed to anyone except:

    (1) those engaged in providing treatment for the person;

    (2) the county administrator, pursuant to section 110;

    (3) a court in the course of legal proceedings authorized by this act; and

    (4) pursuant to Federal rules, statutes and regulations governing disclosure of patient information where treatment is undertaken in a Federal agency.

In no event, however, shall privileged communications, whether written or oral, be disclosed to anyone without such written consent. This shall not restrict the collection and analysis of clinical or statistical data by the department, the county administrator or the facility so long as the use and dissemination of such data does not identify individual patients. Nothing herein shall be construed to conflict with section 8 of the act of April 14, 1972 (P.L. 221, No. 63), known as the "Pennsylvania Drug and Alcohol Abuse Control Act."

(b) This section shall not restrict judges of the courts of common pleas, mental health review officers and county mental health and mental retardation administrators from disclosing information to the Pennsylvania State Police or the Pennsylvania State Police from disclosing information to any person, in accordance with the provisions of *18*

*Pa.C.S. § 6105(c)(4)* (relating to persons not to possess, use, manufacture, control, sell or transfer firearms).

A review of Pennsylvania case law reflects a "virtually unanimous" interpretation of the broad protection afforded by the confidentiality provision of the MHPA.  Zane v. Friends Hospital, 836 A.2d 25, 32 (Pa 20043). The Pennsylvania courts have consistently held that the terms of the MHPA's confidentiality provision are "eminently clear and unmistakable" and "without doubt" there is to be no disclosure of a patient's mental health records "to anyone" unless the patient consents or one of the above exceptions applies.  Zane, see also In the Interest of Roy, 620 A.2d 1172, 1173 (Pa. Super 1993): Commonwealth v. Moyer, 595 A.2d 1177, 1179 (Pa. Super. 1991); Hahnemann University Hospital v. Edgar, 74 F.3d 446, 463, (3d Cir. 1996); Ferrara v. Horsham Clinic, 1994 U.S. Dist. LEXIS 7578, at 2 (E.D.Pa. June 3, 1994); Christy v. Wordsworth-at-Shawnee, 749 A.2d 557, 559-560, (Pa. Cmwlth. 2000); Johnsonbaugh v. Dept of Public Welfare, 665 A.2d 1243, 144-45 (Pa. Cmwlth 1995); and Kakas v. Department of Public Welfare, 65 Pa.Cmwlth 550, 442 A.2d 1243, 144-1245 (Pa. Cmwlth 1982).

**Exception # (3) to 50 P.S. § 7111(a), "a court in the course of legal proceedings authorized by this act (MHPA)"**, would allow the release of inmate records that contain mental health treatment information.  **However, this exception does NOT apply to this case**.  The Courts have stated that exception # 3 only applies to:

       (i)       Involuntary emergency treatment (50 P.S. §7303);

       (ii)      Court-ordered involuntary treatment (50 P.S. §7304 and §7305);

       (iii)     Transfer of persons in involuntary treatment (50 P.S. §7306); and

7

(iv)   Voluntary mental health commitment determinations (50 P.S. §7204 and §7206).   See Zane, 836 A.2d at 32-33 (Pa. 2003).

B.   **RELEVANT PENNSYLVANIA ADMINISTRATIVE CODE:**

Also applicable in the understanding of the requirements of the Mental Health Procedures Act, are two Pennsylvania Administrative Code sections, 55 Pa. Code §5100.32, "Nonconsensual Release of Information", and, 55 Pa. Code §5100.35, "Release to Court".

**55 Pa. Code §5100.32,** "Nonconsensual Release of Information", states in relevant part **(Exhibit "D")**:

> (a) Records concerning persons receiving or having received treatment shall be kept confidential and shall not be released nor their content disclosed without the consent of a person given under § 5100.34 (relating to consensual release to third parties), except that relevant portions or summaries may be released or copied as follows:
>
> (7) In response to a court order, when production of the documents is ordered by a court under § 5100.35(b) (relating to release to courts).

**55 Pa. Code §5100.35**, "Release to Court", states in relevant part, **(Exhibit "E")**:

> (a) Each facility director shall designate one or more persons as a records officer, who shall maintain the confidentiality of client/patient records in accordance with this chapter.
>
> **(b) Records shall comply with the following:**
>
> (1) Whenever a client/patient's records are subpoenaed or otherwise made subject to discovery proceedings in a court proceeding, other than proceedings authorized by the act, and the patient/client has not consented or does not consent to release of the records, no records should be released in the absence of an additional order of court.
>
> ……..
>
> (3) If it is known that a patient has a current attorney of record for the given proceedings, that attorney shall be informed of the request of subpoena, if not already served with a copy, and shall be expected to represent and protect the client/patient's interests in the confidentiality of the records. The person whose

8

> record has been subpoenaed shall be notified of such action if they are currently receiving services and their whereabouts are known, unless served with a copy of the subpoena. Those currently in treatment shall also be advised that they may wish to obtain an attorney to represent their interests. In the case of persons no longer receiving services, the facility shall send this notification by certified mail to the last known address.

### C.   CASE LAW:

### THE SPENCER CASE:

The Federal Court discussed the Pennsylvania Mental Health Procedures Act and Pennsylvania Administrative Code 55 Pa. Code 5100.32, in the recent case Spencer v. Beard, 2010 U.S. Dist. LEXIS 61057, (W.D. Pa, May 13, 2010).  **(Exhibit "F")**

The Court discussed another subparagraph of the PMHA, "50 P.S. § 7111(a)(4), is part of Pennsylvania's Mental Health Procures Act, 50 P.S. 7101, et seq. ("MHPA"), and provides, in pertinent part, as follows:

> All documents concerning persons in treatment shall be kept confidential and, without the person's written consent, may not be released or their contents disclosed to anyone except:
>
>    \* \* \*
>
>   (4) pursuant to Federal rules, statutes and regulations governing
> disclosure of patient information where treatment is undertaken in a
> Federal agency.
>
> In no event, however, shall privileged communications, whether written or oral, be disclosed to anyone without such written consent....

As an extension of the foregoing statute, 55 Pa. Code § 5100.32 was codified and provides, in pertinent part, as follows:

> (a) Records concerning persons receiving or having received treatment shall be kept confidential and shall not be released nor their content disclosed without the consent of a person given under  [*21] § 5100.34 (relating to consensual release to third parties), except that relevant portions or summaries may be released or copied as follows:

>    (1) To those actively engaged in treating the individual, or to persons at other facilities, including professional treatment staff of State Correctional Institutions and county prisons, when the person is being referred to that facility and a summary or portion of the record is necessary to provide for continuity of proper care and treatment.  55 Pa. Code § 5100.32(a)(1).

The Spencer Court wrote: "The purpose of the MHPA is to further the policy of the Commonwealth of Pennsylvania "to seek to assure the availability of adequate treatment to persons who are mentally ill." Hahnemann University Hosp. v. Edgar, 74 F.3d 456, 463 (3d Cir. 1996), citing 50 P.S. § 7102. "In fact, the Pennsylvania Supreme Court has given the patient's right to confidentiality of psychiatric records constitutional status." Id. (citations omitted). "The Act therefore is strictly construed." Id. (citations omitted)".

### **THE STANSFIELD CASE:**

The Federal Court, the Honorable Clifford Scott Green, discussed the Pennsylvania Mental Health Procedures Act in the Stansfield, a minor, v. Summit Quest Academy, et als, 2006 U.S. Dist. LEXIS 69413, (E.D. Pa, September 26, 2006).  **(Exhibit "G")**

In Stansfield the Federal Court in Pennsylvania have even barred the production of patient mental health records where the plaintiff, a mentally retarded minor, was sexually assaulted by the patient whose mental health records were sought.

The Honorable Judge Green wrote:

Plaintiff seeks to discover documents detailing "reportable incidents," as defined by 55 Pa. Code § 3800.16, for individuals other than Stansfield. Specifically, Plaintiff's seek all documents relating to five subcategories of incidents; 1) a death of a child, 2) an injury, trauma or illness of a child requiring inpatient treatment at a hospital, 3) a serious injury or trauma of a child requiring outpatient treatment at a hospital, not to include minor injuries such as sprains or cuts, 4) intimate sexual contact between children, consensual or otherwise, and 5) any condition which results in closure of the facility. 55 Pa. Code § 3800.16 (a)(1), (3), (4), (6), (11). At the

10

outset, the court notes that only the fourth subcategory listed, intimate sexual contact between children, consensual or otherwise, is at all related to Plaintiff's claim of sexual abuse, and consequently, is the only of the five subcategories identified that appears reasonably likely to lead to the discovery of admissible evidence. In any event, all of the reportable incident documents are privileged under Pennsylvania's Mental Health Procedure Act (hereinafter "MHPA"). 50 P.S. § 7101.

The MHPA provides that, "[a]ll documents concerning persons in treatment shall be kept confidential and, without the person's written consent, may not be released or their contents disclosed to anyone . . . ." 50 P.S. § 7111 (a). The MHPA presents "an absolute confidentiality privilege against the disclosure of documents that 'concern persons in treatment.'" Hahnemann Univ. Hosp. v. Edgar, 74 F.3d 456, 465 (3rd Cir. 1996). There are four exceptions to the MHPA which permit documents concerning persons in treatment to be released to 1) those engaged in providing treatment for the person, 2) the county administrator, pursuant to section 110, 3) a court in the course of legal proceedings authorized by this act, and 4) pursuant to Federal rules, statutes and regulations governing disclosure of patient information where treatment is undertaken in a Federal agency. 50 P.S. § 7111 (a)(i)-(iv). Plaintiff clearly does not meet the first, second, or fourth exception. The third exception has been strictly construed by Pennsylvania courts to include only involuntary and voluntary mental health commitment proceedings. Commonwealth v. Moyer, 407 Pa. Super. 336, 595 A.2d 1177, 1179 (Pa. Super. 1991).

Plaintiff asserts instead that the documents sought do not bear "any relation to the treatment of mental health problems." Plaintiff's argument misconstrues the scope of the MHPA. The MHPA is not limited to documents relating to the *treatment* of mental health problems, rather it extends to all documents which merely *concern* persons in treatment. The relevant reportable incidents in the present case fall within this definition. They consist of detailed reports of incidents of intimate sexual contact between residents at Defendant Summit Quest's mental health facility. **The residents in question have not waived the confidentiality privilege, and as such, the reportable incident documents are outside of the scope of discovery.**

11

**THE PEARSON CASE:**

The Federal Court, the Honorable Clifford Scott Green, discussed the Pennsylvania Mental Health Procedures Act in the Pearson v. Miller, 1998 U.S. Dist. LEXIS 23043, (M.D. Pa, December 14, 1998).  **(Exhibit "H")**

The Court in Pearson discussed the MHPS as follows: Pennsylvania's Mental Health Procedures Act ("MHPA"), Pa. Stat. Ann. tit. 50 §§ 7101-7503 (West Supp. 1998), provides in pertinent part:

> All documents concerning persons in [mental health] treatment shall be kept confidential and, *without the person's written consent*, may not be released or their contents disclosed to anyone except: (1) those engaged in providing treatment for the person; (2) the county administrator . . . ; (3) a court in the course of legal proceedings authorized by this act; and (4) pursuant to Federal rules, statutes and regulations governing disclosure of patient information where treatment is undertaken in a Federal agency. In no event, however, shall privileged communications, whether written or oral, be disclosed to anyone *without such written consent*. Pa. Stat. Ann. tit. 50 § 7111 (a) (emphasis added).

The phrases "without the person's written consent" and "without such written consent" limit the scope of the statute. By its terms, the statute permits disclosure where it is authorized by the recipient of the treatment. In this case, the recipient of the treatment is Defendant Miller. His written release removes the records from the confidentiality provision of the statute.

In Hahnemann University Hospital v. Edgar, 74 F.3d 456 (3d Cir. 1996), a case in which the patients whose records were sought had not consented to release of their records, the Third Circuit held that the MHPA as a matter of law prevents the disclosure of documents relating to the patients' psychiatric care. See 74 F.3d at 460-61. Hahnemann is readily distinguishable from the instant case because the patients in Hahnemann did not, like Mr. Miller, execute a waiver of confidentiality. Indeed, the Court in Hahnemann excepted from its analysis of the MHPA those "cases in which the statutory privilege has been waived by the patient." Id. at 464 (citing Sprague v. Walter, 441 Pa. Super. 1, 656 A.2d 890, 910-11 (1995)).

12

The three Federal cases cited above, Spencer, Stansfield and Pearson, make it clear that the MHPA does provide protection to mental health records and that the Federal District Court in Pennsylvania recognizes that protection.

In the instant case involving the current and former patient inmates at the Philadelphia Prison System, the plaintiff's counsel has **NOT** complied with the Administrative Code Requirements of 55 Pa. Code §5100.32, "Nonconsensual Release of Information", and, 55 Pa. Code §5100.35, "Release to Court".

For a nonconsensual release of patient mental health information, the plaintiffs' counsel must comply with Administrative Code Requirements of 55 Pa. Code §5100.32, "Nonconsensual Release of Information", and, 55 Pa. Code §5100.35, "Release to Court".

Without a HIPAA compliant release, mental health records, including logs that identify the patient and his mental health issue, cannot be released to **ANYONE**, not even to the patient's own attorney, unless the plaintiff's attorney provides proof that they have complied with the **NOTICE** requirements of 55 Pa. Code §5100.35, "Release to Court":

**(b) Records shall comply with the following:**

> (1) Whenever a client/patient's records are subpoenaed or otherwise made subject to discovery proceedings in a court proceeding, other than proceedings authorized by the act, and the patient/client has not consented or does not consent to release of the records, no records should be released in the absence of an additional order of court.
>
> ……..
>
> (3) If it is known that a patient has a current attorney of record for the given proceedings, that attorney shall be informed of the request of subpoena, if not already served with a copy, and shall be expected to represent and protect the client/patient's interests in the confidentiality of the records. The person whose record has been subpoenaed shall be notified of such action if they are currently receiving services and their whereabouts are known, unless served with a copy of

13

the subpoena. Those currently in treatment shall also be advised that they may wish to obtain an attorney to represent their interests. In the case of persons no longer receiving services, the facility shall send this notification by certified mail to the last known address.

To date, Corizon has not been provided with any documentation to confirm that **NOTICE** to the plaintiff patients has been provided to comply the MHPA, 50 P.S. § 7111, and its Administrative Code provisions, 55 Pa. Code §5100.32, "Nonconsensual Release of Information", and, 55 Pa. Code §5100.35, "Release to Court".  Therefore, without compliance with the MHPA, the requested mental health documentation is confidential and protected from **ALL** disclosure.

### E. CONCLUSION:

The requested patient mental health records or logs that identify the patient and the mental health condition are confidential and are protected for ALL disclosure unless a HIPAA compliant authorization signed by the patient is provided or unless the requirements of the Pennsylvania Mental Health Procedures Act, and its Administrative Code provisions regarding NOTICE to the patient are satisfied.  To date, those requirements have not been met.

Therefore, the Court is respectfully requested NOT to Order the release of any patient mental health records at this time.

>
> Respectfully submitted,
> O'CONNOR KIMBALL LLP
> s/Stephen E. Siegrist
> STEPHEN E. SIEGRIST