**KAIRYS, RUDOVSKY, MESSING & FEINBERG LLP**               Law Offices
                                                          The Cast Iron Building
                                                          718 Arch Street
                                                          Suite 501 South
                                                          Philadelphia, PA 19106

David Rudovsky                                            Phone  (215) 925-4400
Paul Messing                                              Fax    (215) 925-5365
Jonathan Feinberg                                         jfeinberg@krlawphila.com
Ilene Kalman (1985-1996)
David Kairys
   Of Counsel
Tanya Alexander
   Office Manager

April 7, 2014

*Via ECF*
Honorable R. Barclay Surrick
United States District Court
601 Market Street
Philadelphia, PA 19106

          **Re:**    *Williams et al. v. City of Philadelphia et al.*, **No. 08-1979**

Dear Judge Surrick:

We write in response to the March 27, 2014 letter brief submitted by non-party Corizon Health, Inc., on the issue of whether records relating to mental health treatment and services provided in Philadelphia Prison System facilities to members of the plaintiff class may be disclosed to plaintiffs' counsel. Corizon takes the remarkable and unsupported position that, under the Mental Health Procedures Act, 50 P.S. § 7111 ("MHPA"), counsel may not receive records related to *their own clients* without either waivers signed by every class member whose records are sought or the provision of notice to each such class member. This argument is based on a misreading of the MHPA, as the MHPA's implementing regulations specifically provide that disclosure of mental health records is appropriate when notice of the disclosure is provided to counsel known to represent the persons whose records are disclosed. Because plaintiffs' counsel are seeking records related to their own clients, the MHPA permits the disclosure of those records, and, accordingly, the Court should direct Corizon to produce the requested materials subject to the Protective Order negotiated by the parties.[1]

**Background**

Plaintiffs initiated this action on April 28, 2008. Bringing the action on their own behalf and on behalf of a class of all inmates incarcerated in the Philadelphia Prison System, plaintiffs requested in the Complaint injunctive and declaratory relief related to the pervasive

---

[1] All parties and Corizon agree that the requested records include protected health information subject to the provisions of HIPAA, and, further, agree that the negotiated Protective Order meets the requirements of 45 C.F.R. § 154.512(e) to allow for the disclosure of such information without HIPAA-specific waivers signed by the persons whose records are sought. Corizon's only objection to the proposed Protective Order is based on the MHPA.

unconstitutional conditions of confinement caused by overcrowded facilities in the PPS. Of particular importance, the Complaint alleged that the City's policies and practices led to the deprivation of necessary medical and mental health care for PPS prisoners. *See* Complaint at ¶ 29 ("As a result of the overcrowding and the failure of the City to provide adequate services, supplies, and staffing at the PPS, the plaintiffs and members of the plaintiff class have been, and without judicial intervention, will be subjected to a pervasive system of unconstitutional conditions that include…danger to the physical and mental health and safety of inmates due to lack of sufficient numbers of correctional officers, medical personnel and other staff.").

After briefing on dispositive motions and plaintiffs' request for class certification, on October 8, 2010, the Court issued a decision certifying the case as a class action and defining the class as:

> All persons who are or will in the future be confined in the Philadelphia Prison System, and who are or will in the future be subjected to the conditions of confinement, including triple celling, or placement in dormitories, without minimally adequate security, services or programs as set forth in plaintiffs' Complaint.

*Williams v. City of Philadelphia*, 270 F.R.D. 208, 223 (E.D. Pa. 2010). Additionally, the Court appointed undersigned counsel as counsel to the plaintiff class. *Id.*

Thereafter, due in large part to a decreasing inmate population, the parties entered into settlement discussions and negotiated a settlement agreement which the Court approved by Order dated August 8, 2011. However, in the fall of 2012, because the inmate population began to rise, plaintiffs exercised their right under the settlement agreement to reopen the case. On November 28, 2012, the Court held a conference with counsel for the parties and issued a Scheduling Order concerning fact and expert discovery.

Since that time, the parties have diligently proceeded with discovery, having exchanged and reviewed voluminous documents. As part of plaintiffs' efforts to conduct comprehensive discovery concerning all possible impacts of overcrowding on the inmate population, in April 2013, the parties arranged for plaintiffs' expert witnesses in five separate disciplines—medical, mental health, corrections, environmental and physical plant—to tour the PPS facilities. As a result of those tours, plaintiffs' medical experts, Dr. Robert Cohen and Madeleine LaMarre, MN, and mental health expert, Dr. Roberta Stellman, reached preliminary conclusions that PPS practices resulted in serious deficits in the medical and mental health care provided to PPS inmates.

Following the tours and in order to further investigate the deficits identified by plaintiffs' experts, plaintiffs' counsel served on counsel for the City defendants supplemental discovery requests seeking documents related to medical and mental health care in PPS facilities, including, in relevant part, the entire patient charts for eleven PPS inmates whom plaintiffs' experts encountered during the tour and whom the experts identified as inmates who had possibly not received proper medical or mental health care. Counsel for the City defendants sought to obtain the requested information from Corizon, which is the contracted provider of medical services in

Honorable R. Barclay Surrick
April 7, 2014
Page 3

_____

the PPS. In response, counsel for Corizon stated that the disclosure of the requested documents would implicate issues under HIPAA and the MHPA. To alleviate these concerns, all counsel negotiated a Protective Order, which, consistent with HIPAA's implementing regulations, provided that the requested materials would be used only for purposes of the instant litigation and would be destroyed or returned to Corizon at the conclusion of the litigation. As part of those negotiations, because of Corizon's belief that the MHPA precluded release of mental health information, counsel for Corizon asked that, for each of the eleven patient charts requested, plaintiffs' counsel obtain and provide to Corizon authorizations for the release of such information signed by each of the eleven class members. Although plaintiffs' counsel did not concur with Corizon's interpretation of the MHPA, in order to expedite the production of important discovery information without the need for protracted litigation, and because counsel believed that they would be able to secure signed authorizations from the eleven identified inmates with relative ease, plaintiffs' counsel agreed to Corizon's request. All parties thus agreed to a Protective Order, which the Court approved and entered on August 26, 2013.

Thereafter, Corizon began to supply the requested information to counsel for the City, who, in turn, disclosed the information to plaintiffs' counsel. With respect to the eleven requested patient charts, however, plaintiffs' counsel were able to secure signed authorizations from only six of the eleven inmates; the remaining five had been released from PPS custody (as is frequently the case where many inmates are held only for short periods of time), and plaintiffs' counsel were unable to locate them.

Following their review of the information disclosed under the August 26, 2013 Protective Order, plaintiffs' medical and mental health experts determined that they required a broader scope of materials in order to complete their assessment as to the appropriateness of care provided to PPS inmates. Accordingly, plaintiffs' counsel, with the assistance of the experts, prepared twelve requests for production of documents which they served on counsel for the City defendants on December 12, 2013. *See* Ex. A. The requests were designed to provide to plaintiffs' experts information in selected areas identified by plaintiffs' experts as problematic and systemic in the PPS. Thus, for example, plaintiffs requested "[e]ntire patient health records for all inmates who died while in custody from January 2012 to December 1, 2013," Ex. A at Req. 7, and "[t]he log for mental health requests for services for all sites from the month of September, 2013 with inmate name, PPS number and date of request." Ex. A at Req. 12.

The City defendants agreed to provide the materials outlined in these requests subject to an additional Protective Order. All parties, including plaintiffs, the City defendants and the District Attorney's Office and non-party MHM Services, Inc. (the provider of mental health services in the PPS) reached agreement on the terms of an Order. Ex. B. Counsel for Corizon, however, declined to sign on to the Order based on its position that even a Court Order limiting use of the requested materials to litigation purposes and requiring the destruction or return of the materials at the conclusion of the litigation was insufficient to satisfy the MHPA's confidentiality provisions. The parties requested an opportunity to address this issue with the Court, and, in a telephone conference on March 19, 2014, the Court directed the parties to submit legal argument as to whether the proposed Protective Order satisfies the parties' obligations regarding the

_____

disclosure of mental health information. Corizon submitted a letter brief on March 27, 2014, and plaintiffs now submit this response.

**Argument**

Much of Corizon's argument as to why the MHPA precludes production of the requested materials is boilerplate and states uncontroversial principles concerning application of the MHPA's confidentiality provisions. There is no dispute that the MHPA is a "valid statutory protection for inmate mental health records," Corizon Ltr. Br. at 4, that the MHPA provides in 50 P.S. § 7111 for the confidentiality of records related to mental health treatment, Corizon Ltr. Br. at 5-6, and that the exception to the confidentiality provision in § 7111(a)(3) does not apply to the instant case as it does not involve "legal proceedings authorized by [the MHPA]." Corizon Lt. Br. at 7-8.

These principles, however, do not address the unique circumstances presented by this case, where counsel appointed by the Court to represent the class of all PPS inmates in a matter addressing, among other things, the appropriateness of medical and mental health care provided to those inmates, seek the production of records concerning that care. Indeed, not a single case cited by Corizon addresses class representation; to the contrary, the cited cases involve requests for records of mental health treatment by an adverse or third party, or are otherwise not relevant.[2]

_____

[2] Most of the decisions cited by Corizon involve cases where a plaintiff sued a mental health care provider based on allegations that a third party under the care of the defendant provider assaulted the plaintiff; in each case, the plaintiff's requests for records related to the third party's mental health treatment was denied under the MHPA. *See Hahnemann Univ. Hosp. v. Edgar*, 74 F.3d 456, 462-65 (3d Cir. 1996); *Ferrara v. Horsham Clinic*, 1994 WL 249741, at *1-2 (E.D. Pa. June 3, 1994); *Zane v. Friends Hosp.*, 836 A.2d 25, 27-28 (Pa. 2003); *Christy v. Wordsworth-at-Shawnee*, 749 A.2d 557, 558-60 (Pa. Commw. Ct. 2000). Similarly, in *Stansfield v. Summit Quest Academy*, 2006 WL 2794197, at *1-2 (E.D. Pa. Sept. 26, 2006), the plaintiff alleged that the defendant mental health provider's negligence allowed the plaintiff to be sexually assaulted while residing in the defendant's facility, and the plaintiff's requests for records related to similar incidents reported by other recipients of mental health treatment were denied.

Two cases cited by Corizon involve efforts to obtain mental health records from adverse parties in the litigation. *See Pearson v. Miller*, 1998 U.S. Dist. LEXIS 23043 (M.D. Pa. Dec. 14, 1998) (plaintiff seeking mental health records of defendant who was alleged to have abducted and sexually assaulted plaintiff's minor daughter at a time when defendant was under the care of a mental health provider); *Commonwealth v. Moyer*, 595 A.2d 1177 (Pa. Super. Ct. 1991) (reversing criminal conviction where prosecution introduced defendant's mental health records against defendant at trial). Two other cases involve petitions challenging the termination of civil service employment positions with state mental health facilities where the terminated employees sought the mental health records of third party patients who accused the employees of sexual misconduct. *See Johnsonbaugh v. Dept. of Pub. Welfare*, 665 A.2d 20, 27 (Pa. Commw. Ct. 1995); *Kakas v. Dept. of Pub. Welfare*, 442 A.2d 1243, 1244-45 (Pa. Commw. Ct. 1982). The two remaining cases cited by Corizon are equally inapposite. *See Spencer v. Beard*, 2010 WL

Honorable R. Barclay Surrick
April 7, 2014
Page 5

_____

Corizon's failure to cite a case addressing a situation like this one is not surprising. A plain reading of the MHPA's implementing regulation demonstrates that the MHPA permits court orders for the production of records in exactly these circumstances.[3]

The relevant regulation is 55 Pa. Code § 5100.35, which concerns "[r]elease to courts." The regulation clearly envisions that mental health records otherwise subject to protection under 50 P.S. § 7111 may be requested as part of litigation outside the context of the MHPA. Thus, the regulation sets forth rules for situations where records for a person receiving mental health treatment "are subpoenaed or otherwise made subject to discovery proceedings in a court proceeding, *other than proceedings authorized by the act*." § 5100.35(b)(1) (emphasis added).[4] In such situations, the regulation provides that, notwithstanding confidentiality provisions, the records may be released pursuant to a court order. *See id.* (when "the patient/client has not consented or does not consent to release of the records, no records should be released in the absence of an additional order of court").

Most critically, the regulation permits attorneys who represent the persons whose records are requested to protect the subject's interests in confidentiality. Specifically, the regulation provides:

> *If it is known that a patient has a current attorney of record for the given proceedings, that attorney shall be informed of the request of subpoena, if not already served with a copy, and shall be expected to represent and protect the client/patient's interests in the confidentiality of the records.* The person whose record has been subpoenaed shall be notified of such action if they are currently receiving services and their whereabouts are known, unless served with a copy of the subpoena. Those currently in treatment shall

---

2545648, at *1, *7-8 (W.D. Pa. May 13, 2010) (prisoner plaintiff brought civil claim against prisoner psychiatrist who was alleged to have disclosed to other inmates information about plaintiff's mental health history); *In the Interest of Roy*, 620 A.2d 1172, 1172-73 (Pa. Super. Ct. 1993) (heir to decedent seeking decedent's mental health records in action to contest validity of decedent's will).

[3] Indeed, in similar cases concerning systemic prison conditions claims, courts have approved the disclosure of the type of information plaintiffs seek in this case. *See, e.g.*, *Inmates of Northumberland County Prison v. Reish*, U.S. Dist. Ct. M.D. Pa. No. 4:08-cv-00345, Stip. Prot. Order, April 24, 2009 (Doc. No. 108) (appended as Ex. C) (allowing for disclosure of "inmate medical records without document-by-document controversy concerning confidentiality" and setting forth procedures to comply with HIPAA "and Pennsylvania confidentiality statutes").

[4] The "proceedings authorized by the act" involve proceedings for involuntary emergency treatment, court-ordered involuntary treatment, transfer of persons in involuntary treatment and voluntary mental health commitment determinations, none of which is applicable here. *Zane*, 836 A.2d at 32-33.

Honorable R. Barclay Surrick
April 7, 2014
Page 6

---

> also be advised that they may wish to obtain an attorney to
> represent their interests. In the case of persons no longer receiving
> services, the facility shall send this notification by certified mail to
> the last known address.

§ 5100.35(b)(3) (emphasis added). The emphasized language in this provision is dispositive in this case. Thus, "it is known" that each person whose records are requested "has a current attorney of record for the given proceedings." All persons who are the subject of the record requests are members of the plaintiff class, and all members of the plaintiff class are represented by the undersigned counsel "for the given proceedings." Plaintiffs' counsel have been "informed of the request" for records as it was plaintiffs' counsel who made the request in the first instance. And, counsel have acted to "represent and protect the client/patient's interests in the confidentiality of the records." Indeed, counsel have requested the records to advance the plaintiffs' interests in proper care while at the same time ensuring that the records maintain a measure of confidentiality by negotiating a Protective Order which precludes the use of the records outside the scope of the litigation.

Corizon appears to take the position that, even though counsel are appointed by the Court to represent the interests of the plaintiff class, the cited provision requires counsel to notify the subject of the records as to the nature of the requests. Corizon Ltr. Br. at 13-14. Corizon's argument relies on the second sentence of the quoted provision. That sentence, however, must be read in the context of the entire paragraph, which provides in the next sentence that those who are receiving treatment should "be advised that they may wish to obtain an attorney to represent their interests." Similarly, the following sentence requires that notification as to obtaining an attorney be provided by certified mail to the last known address of those persons no longer receiving treatment. Read in the most logical manner, the provision requires notice as to a request for mental health records *only* for those persons who do not have an "attorney of record for the given proceedings."

Beyond the fact that common sense supports this reading of the regulation, there are two independent reasons that defeat Corizon's objections. First, as evidenced by the difficulties plaintiffs' counsel encountered in obtaining signed authorizations from just eleven inmates for the provision of entire medical charts, requiring counsel to either obtain signed authorizations or provide notice to every person whose records would be produced in response to the instant requests would impose a substantial burden on counsel and frustrate the parties' efforts to conduct discovery in a timely and efficient way.[5] *See Pearson v. Miller*, 211 F.3d 57, 73 (3d Cir. 2000) (directing district court crafting protective order regarding the production of mental health materials to "focus less on the letter of the Pennsylvania statutes than on an accommodation of

---

[5] Corizon's reliance on the fact that plaintiffs agreed to the terms of the August 26, 2013 Protective Order requiring authorizations signed by the subject of the requested records is a *non sequitur*. As noted above, plaintiffs' counsel agreed to this term due to the narrow nature of the requests and in an effort to avoid the need for briefing and argument. This agreement did not affect any form of "waiver" which would bind plaintiffs to accede to Corizon's similar demands in all future instances.

Honorable R. Barclay Surrick
April 7, 2014
Page 7

_____

plaintiff's legitimate discovery interests with the legitimate interests of third parties in the confidentiality of portions of the requested material"); *Griffin-El v. Beard*, 2009 WL 1606891, at *15-17 (E.D. Pa. June 8, 2009) (Restrepo, J.) (ordering Department of Corrections to release subject to protective order copies of plaintiff's mental health records despite defendants' security concerns on ground that "review of these materials is important for [plaintiff's] attorneys to prepare for the depositions of the professionals who generated the documents and to develop [plaintiff's] theories of the case"). The records that plaintiffs seek are much broader than those that were the subject of the requests addressed in the earlier Protective Order. Indeed, Corizon's proposed procedure of providing notice to all persons who are the subject of the requested records is impossible for counsel to undertake, as, for example, counsel have no knowledge as to the identity of all persons who made "mental health requests for services." Ex. A at Req. 12. Accordingly, the Protective Order that plaintiffs' counsel have proposed represents an appropriate balancing of the interests in allowing plaintiffs to build their case while ensuring that the requested records will not be disclosed outside the scope of the litigation.

Second, denial of these records to plaintiffs' counsel would violate due process protections. Because the City of Philadelphia and its employees direct operations at the PPS facilities and contract with Corizon, City employees, including Chief of Medical Operations Bruce Herdman, Ph.D., have access to all class members' medical charts, including the mental health records contained in such charts. Dr. Herdman has given deposition testimony demonstrating that, as part of his duties overseeing the provision of medical and mental health care, he regularly reviews patients' health information. In these circumstances, as Pennsylvania courts have recognized, plaintiffs should be given the same level of access as are the agents of the defendants. *See Johnsonbaugh*, 665 A.2d at 27-28 (referencing due process concerns in reversing termination of civil service employee on ground that employer's attorney was given access to mental health records of third party witnesses who accused employee of sexual misconduct and employee was not permitted access to records).

Honorable R. Barclay Surrick
April 7, 2014
Page 8

_____

**Conclusion**

For the foregoing reasons, plaintiffs respectfully submit that the Court should enter the proposed Protective Order and direct that Corizon provide all outstanding requested material.

Additionally, because production of the requested materials will necessarily require additional time to conduct discovery, plaintiffs request that, upon resolution of this matter, the Court conduct a telephone conference with all counsel to address an amendment to the current Scheduling Order which set March 31, 2013 as the deadline for fact discovery.

           Respectfully submitted,


           /s/ Jonathan H. Feinberg
           Jonathan H. Feinberg
           David Rudovsky
           Kairys, Rudovsky, Messing & Feinberg, LLP
           718 Arch Street, Suite 501S
           Philadelphia, PA  19106
           (215) 925-4400

           Robert W. Meek
           Disability Rights Network of Pennsylvania
           1315 Walnut Street, Suite 500
           Philadelphia, PA  19107
           (215) 238-8070

           David Richman
           Matthew Janssen
           Pepper Hamilton LLP
           3000 Two Logan Square
           Eighteenth and Arch Streets
           Philadelphia, PA 19103-2799
           (215) 981-4000

           Angus Love
           Su Ming Yeh
           Pennsylvania Institutional Law Project
           718 Arch Street, Suite 304S
           Philadelphia, PA 19106
           (215) 925-2966