**KAIRYS, RUDOVSKY, MESSING & FEINBERG LLP**

Law Offices
The Cast Iron Building
718 Arch Street
Suite 501 South
Philadelphia, PA 19106

David Rudovsky
Paul Messing
Jonathan Feinberg
Ilene Kalman (1985-1996)
David Kairys
  Of Counsel
Tanya Alexander
  Office Manager

Phone  (215) 925-4400
Fax      (215) 925-5365
jfeinberg@krlawphila.com

May 22, 2014

*Via ECF*
Honorable R. Barclay Surrick
United States District Court
601 Market Street
Philadelphia, PA 19106

Re:    *Williams et al. v. City of Philadelphia et al.*, No. 08-1979

Dear Judge Surrick:

We write in response to the letter brief filed on May 12, 2014 on behalf of non-party Corizon Health, Inc. ("Corizon"), in which Corizon asserts that certain materials requested in discovery by counsel for the plaintiff class are protected from disclosure under a peer review and/or quality assurance privilege.  The legal issue involved in this dispute is distinct from the question addressed in plaintiffs' recent letter briefs to the Court, which summarize the procedural history of the case leading up to the instant discovery disputes and outline plaintiffs' position that Corizon may not withhold documents under the Mental Health Procedures Act.  *See* Pls.' Ltr. Br, April 7, 2014 (Doc. No. 118); Pls.' Ltr. Br., April 10, 2014 (Doc. No. 119).

The specific discovery item at issue is plaintiffs' request in a set of medical and mental health related production requests served on December 12, 2013 that the City defendants provide "[m]ortality and sentinel event reviews for deaths that occurred in custody from January 2012 to December 1, 2013."  Doc. No. 118 at Ex. A, Req. 8.  Similar to the points made in earlier submissions to the Court, these materials are critical to plaintiffs' claims that overcrowding in the Philadelphia Prison System ("PPS") results in danger to the health and safety of the inmate population.  Doc. No. 118 at 2.  Likewise, these requests are aimed at obtaining information in areas identified by plaintiffs' experts as problematic and systemic in the PPS.  *Id.* at 3.  The parties have envisioned that any materials produced in response to this request will be subject to the provisions of a protective order negotiated and approved by all relevant parties except Corizon.  Doc. No. 118 at 3 & Ex. B.

As we demonstrate in this submission, Corizon's assertion of privilege in response to plaintiffs' request for mortality and sentinel event reviews is not proper, and Corizon must be ordered to produce the requested materials.

**Argument**

Although Corizon is correct that nearly every state, including Pennsylvania, provides some form of protection to materials developed through a medical peer review process, the overwhelming weight of federal authority establishes that such protections do not apply in cases, like this one, involving federal civil rights claims. Most relevant is the decision in *Agster v. Maricopa County*, 422 F.3d 836 (9th Cir. 2005). In that case, the plaintiff estate brought a civil rights wrongful death action alleging that the decedent died as a result of the defendants' improper conduct while the decedent was detained in a county jail. *Id.* at 837-38. In discovery, the estate sought production of a mortality review conducted by the private contract entity providing medical services at the jail, and the defendants objected to production of the review based on Arizona's statutory peer review privilege. *Id.* at 838-39. On appeal from the district court's order directing production of the requested materials, the court rejected the assertion of privilege.

Two grounds supported the court's ruling. First, although federal courts may create a privilege as a matter of federal common law, courts "must be 'especially reluctant to recognize a privilege in an area where it appears that Congress has considered the relevant competing concerns but has not provided the privilege itself.'" *Id.* at 839 (quoting *Univ. of Pennsylvania v. EEOC,* 493 U.S. 182, 189 (1990)). Because Congress had enacted the Health Care Quality Improvement Act of 1986, 42 U.S.C. §§ 11101-11152, to grant immunity to participants in medical peer reviews and then amended the Act in 1987, but had in neither instance adopted a privilege protecting peer review materials from disclosure, "there exists a general objection to [a court] doing so." *Id.* Second, because of the important public interests implicated in civil rights claims brought against a government entity, in the prison context—as distinguished from a private hospital defending against an individual malpractice claim—"it is peculiarly important that the public have access to the assessment by peers of the care provided." *Id.*

At least three other circuit courts, both before and after *Agster*, have issued similar rulings. *See Adkins v. Christie,* 488 F.3d 1324, 1328-29 (11th Cir. 2007) (holding in case involving allegations of racial discrimination "that the medical peer review process does not warrant the extraordinary protection of an evidentiary privilege in federal civil rights cases"); *Virmani v. Novant Health Inc.,* 259 F.3d 284, 292 (4th Cir. 2001) (refusing to recognize medical review privilege where allegations of discrimination arose from conduct of peer review officials); *Memorial Hosp. for McHenry County v. Shadur,* 664 F.2d 1058, 1063 (7th Cir. 1981) (denying medical review privilege in federal antitrust action). Multiple district courts, including one court in this district, have, in the context of prisoner civil rights actions brought under § 1983, reached the same conclusion. *See Grabow v. County of Macomb*, 2013 WL 3354505, at *9 (E.D. Mich. July 3, 2013) (refusing to apply privilege in prisoner civil rights matter); *Jenkins v. Dekalb County*, 242 F.R.D. 652, 659-61 (N.D. Ga. 2007) (same); *Lewis v. County of Henry,* 2006 WL 1843336, at *2 (S.D. Ind. June 29, 2006) (same); *Weiss v. County of Chester,* 231 F.R.D. 202, 207 (E.D. Pa. 2005) (Rufe, J.) (same); *Leon v. County of San Diego,* 202 F.R.D. 631, 637 (S.D. Cal. 2001) (same). In sum, "the vast majority of federal courts that have considered the issue have rejected creation of a federal common law medical peer review privilege." *Williams v. Univ. Med. Ctr. of S. Nev.,* 760 F. Supp. 2d 1026, 1031 (D. Nev. 2010); *see also id.* at 1032 (citing more than a dozen cases reaching the same conclusion).

_____

Notwithstanding this abundance of contrary authority, Corizon identifies what it characterizes as a "slowly growing new opinion in the Federal Courts" accepting the existence of a federal peer review privilege. Corizon Ltr. Br. at 2. Far from identifying a compelling trend, however, Corizon succeeds only in identifying decisions that, even on a cursory review, are self-evidently distinguishable from the instant case.

Four of the cited decisions involve straightforward medical malpractice claims, which do not implicate the important federal interests at stake in a civil rights matter such as this one. *See Veith v. Portage County*, 2012 WL 4850197, at *2-3 (N.D. Ohio Oct. 11, 2012) (noting that applying "the privilege in a medical malpractice case does not affect a plaintiff's ability to prove his case" as "such an after-the-fact review has no relevance to the underlying claim"); *Sevilla v. United States*, 852 F. Supp. 2d 1057, 1068-69 (N.D. Ill. 2012) (concluding that "only consequence in not recognizing the privilege" in medical malpractice claim under the Federal Tort Claims Act "is to require the plaintiff in this case to do what plaintiffs in medical malpractice cases are routinely required to do in all other cases, namely adduce proof independent of what occurred in the peer review process"); *Francis v. United States*, 2011 WL 2224509, at *4-6 (S.D.N.Y. May 31, 2011) (precluding production of peer review documents in medical malpractice action but noting "consensus among lower courts…that no federal privilege protects medical peer review materials in civil rights…actions" because "peer review materials in such actions have been deemed essential to the plaintiff's case" and because recognition of the privilege in such cases would "not further the primary purpose of such a privilege"); *K.D. ex rel. Dieffenbach v. United States*, 715 F. Supp. 2d 587, 597 (D. Del. 2010) ("Unlike claims alleging violation of federal civil rights (which implicate the strong federal policy of rooting out invidious discrimination)…no such federal policy is at stake in a medical malpractice case.").

These cases, are, therefore, missing a critical element underlying the decisions in *Agster* and numerous other cases refusing to apply a peer review privilege: the fact that, in a civil rights case, "it is peculiarly important that the public have access to the assessment by peers of the care provided." *Agster*, 422 F.3d at 839. Because this matter, involving a systemic challenge to the ability of the PPS to provide safe conditions of confinement to its inmate population, undoubtedly invokes those interests, the cases cited by Corizon provide no basis for applying the peer review privilege in this case.[1]

_____

[1] Three of the cited decisions purport to also rely on the Patient Safety and Quality Improvement Act of 2005 ("PSQIA") on the ground that it generally illustrates Congress's broader approval of maintaining the confidentiality of peer review processes. *Sevilla*, 852 F. Supp. 2d at 1068; *Francis*, 2011 WL 2224509, at *6-7; *Dieffenbach*, 715 F. Supp. 2d at 597. In the first instance, even if the cited legislation could be viewed as affecting the availability of a peer review privilege in federal court, that availability extends only to the narrow medical malpractice context at issue in the cited cases. *See Awwad v. Largo Med. Ctr., Inc.*, 2012 WL 1231982, at *1 (M.D. Fla. April 12, 2012) (citing *Adkins v. Christie*, 488 F.3d 1324 (11th Cir. 2007)) (noting binding circuit rule that "there is no medical peer review privilege for documents related to such proceedings in federal discrimination cases" and that, accordingly, any privilege theoretically created by the PSQIA appears "inapplicable to the circumstances of this case"). More fundamentally, no matter how broad the intent of the PSQIA, the actual privilege created in the

The decision relied on most heavily by Corizon, *Finney v. Palakovich*, 2010 WL 3703791 (M.D. Pa. Sept. 15, 2010), cannot, despite Corizon's arguments to the contrary, be read as advocating a substantial departure from the prevailing rule. Indeed, *Finney* is distinguishable for similar reasons to the cases cited above as it involved an individual medical claim that a defendant medical provider's actions caused the plaintiff's decedent's suicide. Most significantly, the defendants' peer-review objections in that case were limited to a single document compiled not in response to the decedent's suicide attempts, but, rather, for the narrow purpose of determining whether the defendant doctor should be offered full-time employment, and, significantly, "would have been done regardless of the prisoners' suicides." *Id.* at *2. Thus, *Finney* is, at most, a decision prohibiting disclosure on the ground that "little evidentiary value is gained by allowing this document to be discovered." *Id.*

The one and only decision cited by Corizon from an analogous factual context, *Hadix v. Caruso*, 2006 WL 2925270 (W.D. Mich. Oct. 6, 2006), is similarly inapposite. In *Hadix*, the class of inmate plaintiffs in an ongoing injunctive action against Michigan state prisons sought peer review medical documents, and the court rejected that request. The court's ruling, however, was based largely on the fact that, as a result of the litigation, an "Independent Medical Monitor" had been appointed by the court for the purpose of reviewing medical files and investigating complaints regarding insufficient medical care. *Id.* at *3. Accordingly, the interests in the disclosure of the requested documents were minimal as those interests were already protected by an individualized and independent review—a factor not present in this case. *See Lowe v. Vadlamudi*, 2012 WL 3887177, at *5 (E.D. Mich. Sept. 7, 2012) (declining to follow *Hadix* and rejecting peer review privilege argument based on fact that no independent medical monitor had been appointed to review requested records); *see also Jenkins*, 242 F.R.D. at 660-61 (criticizing *Hadix* court's consideration of precedent and, in refusing to protect disclosure of peer review documents, noting that "[g]iven the extreme difficulty prison inmates often face in obtaining evidence of jail customs or policies, it is unlikely that access to a prisoner's medical records is enough"). *Hadix* thus does not support Corizon's objection to disclosure of documents requested by plaintiffs in this matter.

_____

legislation is quite narrow, applying only to documents submitted to a "patient safety organization" for purposes of "patient safety activities." *Martinez v. Cui*, No. 06-40029-FDS, slip op. at 6 n.5 (D. Mass. Aug. 28, 2007) (appended at Ex. A). Thus, contrary to Corizon's characterization of the PSQIA as supporting the application of a peer review privilege in this case, the decision of Congress not to expressly create a privilege supports a conclusion in the opposite direction. Indeed, Congress's actions are even more telling in light of numerous decisions relying on Congressional silence to justify refusing to create a federal privilege.

**Conclusion**

For the foregoing reasons, plaintiffs respectfully submit that no peer review privilege precludes production of the mortality and sentinel event reviews requested in discovery in this matter. Plaintiffs, therefore, respectfully request that the Court direct non-party Corizon to produce those materials to all other parties in the litigation.

Respectfully submitted,

/s/ Jonathan H. Feinberg
Jonathan H. Feinberg
David Rudovsky
Kairys, Rudovsky, Messing & Feinberg, LLP
718 Arch Street, Suite 501S
Philadelphia, PA 19106
(215) 925-4400

Robert W. Meek
Disability Rights Network of Pennsylvania
1315 Walnut Street, Suite 500
Philadelphia, PA 19107
(215) 238-8070

David Richman
Matthew Janssen
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
(215) 981-4000

Angus Love
Su Ming Yeh
Pennsylvania Institutional Law Project
718 Arch Street, Suite 304S
Philadelphia, PA 19106
(215) 925-2966

# EXHIBIT A

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ERIDANIA MARTINEZ, | ) |  |
|         Plaintiff | ) |  |
| vs. | ) | **CIVIL ACTION** |
|  | ) | **NO. 06-40029-FDS** |
| HONGYI CUI, M.D., Ph.D, | ) |  |
|         Defendant. | ) |  |
|  | ) |  |

## <u>Order</u>
**August 28, 2007**

### <u>Proceeding</u>

By Order of Reference dated April 30, 2007, the following Motions have been referred to

me for disposition:

> 1.      Defendant's Motion To Quash Plaintiff's Notice Of Deposition Of Gary Setnik, M.D. (Docket No. 23);
>
> 2.      Motion For A Protective Order Of The Non-Party University Of Massachusetts Medical School From The Plaintiff's Keeper Of Records Subpoena Directed To The General Surgery Residency Program And The Emergency Medicine Residency Program (Docket No. 24)
>
> 3.      Motion For A Protective Order Of The Non-Party Mary Schwartz From The Plaintiff's Subpoena (Docket No. 26);
>
> 4.      Motion For A Protective Order Of The Non-Party Susan Tarrant From the Plaintiff's Subpoena (Docket No. 27);
>
> 5.      Motion To Impound Subpoena Of The Non-Party Tebo Chiropractic (Docket No. 31)[1];

---

[1]This motion is <u>allowed</u> without opposition.

6.      Motion For A Protective Order Of The Non-Party Tebo Chiropractic
        (Docket No. 32);

7.      Motion For A Protective Order Of The Non-Party Ronald F. Tebo, D.C.
        (Docket No. 33);

8.      Motion For A Protective Order Of The Non-Party Jennifer Burgos
        (Docket No. 34);

9.      Motion For A Protective Order Of The Non-Party Irene Korzep (Docket
        No. 36); and

10.     Plaintiff's Motion To Compel Defendant's Initial Disclosures Per
        Fed.R.Civ.P. 26(a)(1)(A) & (D) And 37(a)(2)(A) And For Appropriate
        Sanctions (Docket No. 38).

Nature of the Case

Eridania Martinez ("Plaintiff" or "Ms. Martinez") alleges that during an emergency room

visit to UMass Memorial Medical Center, she was digitally raped by Hongyi Cui, M.D.

("Defendant" or "Dr. Cui").  As a result, Ms. Martinez has filed a federal claim against Dr. Cui,

under 42 U.S.C. § 1983, alleging that he violated her civil rights, as well as state law claims for

sexual assault and battery-rape, intentional infliction of emotional distress, violation of the

Massachusetts Civil Rights Act (Mass. Gen. L. ch. 12 § 11I) and violation of the Patient Bill of

Rights of Massachusetts (Mass. Gen. L. ch. 11I, § 70E).

**Discussion**

Both the Defendant and various non-party individuals affiliated with the University of

Massachusetts Medical School ("UMass") seek to quash subpoenas directed to information

which they argue is protected by the peer review privilege, or seek protective orders against

having to disclose such information based on the peer review privilege.  They also seek a

protective order against disclosing information relating to patients other than the Plaintiff on the

2

grounds that the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. §§1320d, *et seq.* precludes them from disclosing such information without written authorization or a court order.  Furthermore, Tebo Chiropractic and Ronald F. Tebo, D.C. seek protective orders concerning information which the Plaintiff seeks concerning privilege or confidential patient information.  Before addressing the individual motions, I will discuss whether the peer review privilege may be invoked in this case, and whether under HIPAA, any privilege or any privacy concerns prevent the disclosure of confidential patient information.

<u>The Peer Review Privilege</u>

The Plaintiff has brought a Civil Rights action against the Defendant pursuant to 42 U.S.C. §1983[2].  Under the Federal Rules of Evidence, unless required by the Constitution or an applicable federal statute or rule, in a case involving a federal question, the determination of whether a witness, person, etc. may invoke a privilege is governed by federal common law, as "interpreted by the courts of the United States in the light of reason and experience". *See* Fed.R.Evid. 501.   The "'medical peer review privilege' ... seeks to protect from discovery and disclosure records containing performance reviews and assessments of physicians by their peers, primarily in connection with their practices at hospitals".  *Adkins v. Christie*, 2007 WL 1673510, at *1 (11th Cir. June 12, 2007).  While the privilege is universally recognized at the state level[3],

---

[2]Although the issue need not be resolved at this time, it should be noted that where the suit is in federal court on the basis of a federal substantive claim, many courts have held that the federal law of privilege will apply even to any pendant state law claims. *See Krolikowski v. University of Massachusetts*, 150 F.Supp.2d 246, 248 (D.Mass. 2001); *see also Downeast Ventures, Ltd. v. Washington County*, 450 F.Supp.2d 106, 109 (D.Me. 2006); *Atterberry v. Longmont United Hosp.*, 221 F.R.D. 644, 646-47 (D.Col. 2004) .

[3]The Massachusetts legislature has enacted a medical peer review privilege. *See* Mass.Gen.L. ch. 111, §203. The purpose of the privilege is to allow the medical profession to use internal review proceedings to regulate the quality of patient care by identifying and remedying instances of substandard care. *Pardo v. General Hosp. Corp.*, 446 Mass. 1, 841 N.E.2d 692 (2006).

the Fourth, Seventh and Eleventh Circuits have declined to recognize the privilege in federal

civil rights discrimination and anti-trust cases. *See id (*and cases cited therein); *see also Agster v.*

*Maricopa County*, 422 F.3d 836 (9th Cir. 2005)(refusing to recognize peer review privilege in

area where Congress has had opportunity to do so and not granted it; also suit involved claim

that prisoner received inadequate medical care and court noted that it is important to public to

have access to assessment of care by peers in prison context where goals of safety and efficiency

may conflict with care provided).

 While a few federal courts have left open the possibility that the peer review privilege

may be recognized for purposes of federal claims alleging medical malpractice, to date, few

federal courts have done so.  *See Atteberry*, 221 F.R.D. at 648 (in case involving medical

malpractice allegations court finds that every federal legislative and judicial indication is that

federal peer review privilege is not recognized); *Nilavar v. Mercy Health System-Western Ohio*,

210 F.R.D. 597 (S.D.Ohio 2002)(whether peer privilege exists under federal common law should

not turn on nature of claim; court finds that great weight of authority as well as reason and

experience militate against recognizing federal peer review privilege in any context); *Syposs v.*

*United States*, 63 F.Supp.2d 301 (W.D.N.Y. 1999)(in Federal Tort Claims Act for malpractice,

court held that Congress's silence in not including peer review privilege in Health Care Quality

Improvement Act and federal interest in presenting relevant information to trier of fact mandate

against extending peer review privilege to federal cases); *but see e.g., Hadix v. Caruso,* 2006 WL

2925270 (W.D.Mich. Oct. 6, 2006)(peer review process, including confidentiality, must be

preserved to facilitate proper delivery of medical care in prison context);  Weekoty *v. United*

*States*, 30 F.Supp.2d 1343 (D.N.M. 1998)(overwhelming public interest in providing physicians

with confidential context in which to evaluate effectiveness of techniques and procedures, court is compelled to recognize peer review privilege in medical malpractice case brought under FTA); *Whitman v United States*, 108 F.R.D. 5 (D.N.H. 1985)(court states that federal law recognizes peer review privilege and, in any event, Defendant waived privilege when witness voluntarily testified to peer review committee's findings in deposition).[4]

When determining whether to apply a privilege which has not been previously recognized in federal court, the Court must bear in mind that "privileges `contravene the fundamental principle that the public ... has a right to every man's evidence.' ... Accordingly, there is a presumption against privileges which may only be overcome when it would achieve a 'public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth ... This is a high standard, and 'only the most compelling candidates will overcome the law's weighty dependence on the availability of relevant evidence'", *Adkins*, 2007 1673510 at *3 (internal citations and citations to quoted cases omitted).   The Supreme Court has recognized the  following factors apply in determining whether to apply a previously unrecognized privilege: "1) the needs of the public good; 2) whether the privilege is rooted in the imperative need for confidence and trust; 3) the evidentiary benefit of the denial of the privilege; and 4) consensus among the states". *Id.* (citing *Jaffe v. Redmond*, 518 U.S. 1, 116 S.Ct. 1923 (1996)).  Additionally, the First Circuit has indicated that in determining whether to recognize a privilege, the Court must consider whether the law of the forum State would recognize the

---

[4]In *Nilivar v. Mercy System-Western Ohio,* 210 F.R.D. 597 (S.D. Ohio), the Court did a survey of Courts which have addressed whether there is a federal medical peer review privilege.  The Court noted that those federal courts which have recognized such a privilege rely on a line of cases from the District of Columbia which were decided prior to the enactment of Fed.R.Evid. 501 and which did not analyze the federal common law or national trends.  *Id.*, at 603-04.  Both *Weekoty* and *Whitman* cited the District of Columbia cases.

privilege (Massachusetts does); and "whether the privilege is 'intrinsically meritorious'". *In re; Administrative Subpeona Blue Cross Blue Shield of Massachusetts, Inc.*, 400 F.Supp.2d 386, 391 (D.Mass. 2005)(citing *In re Hampers*, 651 F.2d 19 (1981)).  In making the latter determination, the Court must consider the following four factors:  "(1) whether the communications originate in confidence that they will not be disclosed, (2) whether this element of confidentiality is essential to the full and satisfactory maintenance of the relations between the parties, (3) whether this relationship is one which ought to be sedulously fostered, and (4) whether the injury that would inure to the relation by the disclosure of the communications would be greater than the benefit thereby gained for the correct disposal of the litigation". *Id.*

Without question the Massachusetts peer review privilege satisfies the first three factors, *see Id.*  However, given the great weight of authority against recognizing a federal medical peer review privilege, I find that the federal interest in disclosure of relevant evidence outweighs the benefits or recognizing the privilege in this context.  In so ruling, I agree with those Courts that point to Congress's repeated refusal to recognize such a privilege in the Health Care Quality Improvement Act of 1986, 42 U.S.C. §§11101-11152,  as militating against judicial creation of such a privilege.[5]

---

[5]While Congress gave limited protection to certain information voluntarily reported to a patient safety organization when it enacted the Patient Safety and Quality Improvement Act of 2005, 42 U.S.C §§299b-21-299b-26, the protection does not create a broad peer review privilege, rather it applies only to any reports, memoranda and the like which are assembled by a provider for reporting to a patient safety organization and are so reported, or are developed by a patient safety organization for the conduct of patient safety activities and which could result in improved safety, health care quality or health care outcomes, or which identify or constitute the deliberations or analysis of, or identify the fact of reporting pursuant to a patient safety evaluation system.

<u>Patient Confidentiality</u>

Both UMass and Tebo Chiropractic seek protective orders prohibiting the Plaintiff from seeking confidential patient information from any of their representatives or employees.  First, it should be noted that federal common law also does not traditionally recognize a doctor/patient privilege and to date, there is no circuit authority recognizing such a privilege.  *United States v. Bek,* 2007 WL 1950380 (7th Cir. July 6, 2007), *but see Jaffee*, 518 U.S. at 8, 10, 116 S.Ct. 1923 (recognizing patient/psychotherapist privilege).  Second, while HIPAA does not give rise to physician/patient privilege, it does "'create a procedure for obtaining authority to use medical records in litigation'".  *Bek*, 2007 WL 1950380 at *8 (quoting *Northwestern Mem'l Hosp. v. Ashcroft,* 362 F.3d 923, 926 (7th Cir. 2004)).  Such records may be disclosed without patient authorization by court order or may be obtained by subpoena, absent a court order, where the party seeking the information either obtains the consent of the patient (which in the case of the UMass patient records sought by Plaintiff, are unknown) or makes a reasonable effort to obtain a protective order "that (1) prohibit[s] the parties from disclosing the records outside the confines of the litigation, and (2) require[s] that the records be returned to the covered entity [(*i.e.,* defined health care facilities)] or destroyed at the end of the litigation." *Id.*, at *9 (citing 45 C.F.R. §§164.512(f)(1)(ii)(A) and 164.512(e)(1)(ii), (iv), (v); *see also Northwestern Mem'l*, 362 F.3d at 925; *Caines v. Addiction Research and Treatment Corp.,* 2007 WL 895140 (S.D.N.Y. Mar. 20, 2007).  Therefore, I find that Plaintiff is not *per se* prohibited from obtaining the medical records of non-party patients.  However, that non-party patients' medical records may be discoverable, subject to a protective order, does not end the inquiry.  As further discussed below, Plaintiff must still establish that, on balance, she is entitled to the confidential patient information which she

seeks from UMass and its employees and Tebo Chiropractic and its employees, a question which I will address in the context of the individual motions.

<u>Defendant's Motion To Quash Dr. Setnik's Deposition (Docket No. 23)</u>.

Defendant seeks to quash the deposition of Dr. Gary Setnik who testified as an expert on behalf of Dr. Cui in the Division of Administrative Law Appeals ("DALA") proceeding.  Dr. Setnik has no personal knowledge of the case and at this time, Defendant does not anticipate designating him as an expert in this Case (the deadline for the Defendant to designate experts is October 10, 2007).  Plaintiff argues that Dr. Setnik has knowledge of facts relevant to this case, specifically, standards of medical care, practices of emergency attending physicians and protocols of evaluation of trauma patients.  *Pl's Opp. To Def. Hongyi Cui's Mot. To Quash Pl's Notice of Dep. of Dr. Gary Setnick* (Docket No. 37)*, at p. 3.  Plaintiff further asserts that Dr. Setnik obtained his knowledge of medical standards and practices by virtue of his training, qualifications and experience, and not in connection with any work done for the Defendant in connection with the DALA proceedings.

By Plaintiff's own statements, and regardless of how she characterizes her request, she is seeking to depose Dr. Setnik not on factual matters, but on matters which would require an expert opinion.  Pursuant to this Court's rules of civil procedure, "[a] party may ... discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions in the same subject by other means".  Fed.R.Civ.P. 26(b)(4)(B).  It cannot be seriously questioned that

Dr. Setnick was retained in anticipation of litigation; he was specifically retained to testify on

Dr. Cui's behalf at the DALA proceedings.  Once the administrative proceedings were begun

against Dr. Cui, subsequent litigation was an almost certainty.  If the Defendant decides to

designate Dr. Setnik as an expert in this case, Plaintiff will have an opportunity to depose him.

Assuming that the Defendant does not intend to designate Dr. Setnik as an expert in this case,

Plaintiff has failed to establish exceptional circumstances which render it impracticable for her to

obtain discovery/opinions on the specified subject matter. Defendant's motion to quash Dr.

Setnik's deposition is <u>allowed</u>.

<u>Motion For A Protective Order: Re University Of Massachusetts Medical School Keeper Of
Records Of The General Surgery Residency Program And The Emergency Medicine Residency
Program (Docket No. 24)</u>.

UMass seeks a protective order prohibiting the Plaintiff from enforcing a subpeona of the

Keeper of Records for its General Residency Program and its Emergency Medicine Residency

Program.  In support of its motion, UMass argues that the Plaintiff seeks confidential

information of patients other than herself; peer review information; and information and

materials for which Dr. Cui has a reasonable expectation of privacy.

Specifically, Plaintiff seeks:

1.     medical and administrative records related to any patients with whom Dr.
       Cui came into contact or to whom he provided any kind of medical service
       from the beginning of his general surgery internship and/or rotations on
       July 1, 2002 to July 1, 2005, for which it indicates that a pelvic (vaginal)
       or rectal exam was completed or who were Emergency Room or Trauma
       patients;

2.     all medical, administrative and/or peer review records and documents, including
       but not limited to witness or case lists, interview transcripts and summaries, notes,
       summaries, and conclusions regarding the investigation, evaluation and discipline
       of Dr. Cui resulting from the complaint of Eridania Martinez. in 2003 and of any

patient's with whom Dr. Cui came into contact or to whom he provided any kind of medical services from July 1, 2002 to July 1, 2005; and

3.   Dr. Cui's complete unredacted personnel file, including but not limited to, contracts, agreements, personal action contracts, privileges, restrictions and suspensions of privileges, evaluations, CV's, academic and professional training records.

*See Exhibit A* to *Subpoena addressed to the Keeper of Records General Surgery Program/U-Mass* (Docket No. 24-5) and *Exhibit A* to *Subpoena addressed to the Keeper of Records Emergency Medicine Residency Program* (Docket No. 24-6).

"[T]he court by which a subpeona was issued shall quash or modify the subpoena if it ... (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or (iv) subjects a person to undue burden".  Fed.R.Civ.P. 45 (c).  UMass asserts that the information sought is privileged, or otherwise protected matter and/or that requiring it to produce the information would be unduly burdensome.  In particular, UMass asserts that in order to comply with Plaintiff's request for the medical records of patients who were emergency room or trauma patients, the hospital would have to review the records of every patient during the three year time frame to determine whether such patients were seen by Dr. Cui.

Initially, I will address Plaintiff's request for the medical records of non-party patients treated or examined by Dr. Cui.  While there may not be a physician/patient privilege which would bar disclosure of such records, patients have a privacy interest in their medical records and they expect that the details of their care and treatment are to remain confidential.  The patients' privacy interest must be balanced against the Plaintiff's need for the information *vis a vis* her claims that the Defendant violated her constitutional rights.  The Court must also consider

UMass's assertion that requiring it to comply with the Plaintiff's request would be unduly burdensome.

I am troubled by the breadth and invasiveness of Plaintiff's request, particularly in light of the fact that despite the liberal definition of relevance for federal discovery purposes, Plaintiff has failed to articulate how the information which she seeks will assist her in prosecuting her claims against Dr. Cui.  I also find that the request, at least with respect to the records of emergency/trauma patients, is unduly burdensome.  Therefore, to the extent that Plaintiff is seeking other patients' medical and/or administrative records, UMass's motion for a protective order is allowed.

Plaintiff has requested all medical, administrative and/or peer review records and documents, including but not limited to witness or case lists, interview transcripts and summaries, notes, summaries, and conclusions regarding the investigation, evaluation and discipline of Dr. Cui resulting from the complaint of E. M. in 2003 and of any patient's with whom Dr. Cui came into contact or to whom he provided any kind of medical services from July 1, 2002 to July 1, 2005.  As discussed above, there is no federal peer review privilege and therefore, UMass shall produce requested documents/materials.  At the same time, I am concerned that the information contained in the requested documents/materials is of a highly sensitive and confidential nature.  Furthermore, those patients who have made complaints or filed reports against Dr. Cui have an expectation of privacy in the information contained in the documents/materials.  Therefore, UMass shall redact any identifying information concerning non-party patients contained in such documents/materials.  Furthermore, before UMass turns

over the responsive documents/materials, the Plaintiff and UMass shall enter a mutually acceptable confidentiality agreement.[6]

Plaintiff also seeks an unredacted copy of Dr. Cui's personnel file, including but not limited to, contracts, agreements, personal action contracts, privileges, restrictions and suspensions of privileges, evaluations, CV's, academic and professional training records. While there may some relevant information contained in Dr. Cui's personnel file, it also likely that there is sensitive, personal information which has no bearing on this law suit. In order to permit the Court to make an informed balance of the parties' interests, UMass shall submit an unredacted copy of Dr. Cui's personnel file for *in camera* review. Once the Court has determined whether any information should be redacted, the personnel file will be disclosed to Plaintiff, subject to a mutually acceptable confidentiality agreement. *See* note 6, *supra*.

> Motion For A Protective Order Of The Non-Party Mary Schwartz From The Plaintiff's Subpoena (Docket No. 26);Motion For A Protective Order Of The Non-Party Susan Tarrant From the Plaintiff's Subpoena (Docket No. 27).

Ms. Tarrant and Schwartz are both employed at UMass. Ms. Tarrant is the director of patient services and Ms. Schwartz works in the quality assurance/risk management department. Plaintiff has served a subpoena on both of these employees seeking:

1.   Complete and unredacted files including medical and administrative and/or peer review records and documents, including but not limited to witness or case lists, interview transcripts and summaries, notes, summaries, and conclusions regarding the investigation, evaluation and discipline of Dr. Hongyi Cui, M.D. Ph.D. resulting from the complaints raised by Ms. Eridania Martinez in 2003.

---

[6]If the Plaintiff and UMass cannot agree on the terms of the confidentiality agreement, they shall both submit a proposed draft agreement to the Court; the Court will then enter an appropriate order. Plaintiff and her counsel are on notice that such agreement should include a provision limiting the review of such documents/materials to persons involved in this Federal Court case and limiting use of such documents/materials and the information contained therein to this Case. I am mindful that in another case filed in this Court, *Betancourt v. Grady, et al.*, Civ. A. No. 056-40154-FDS, Plaintiff's counsel's firm has failed to protect the confidentiality of a party's medical records. Any violation of the confidentiality agreement in this case will lead to severe sanctions.

2.   Complete and unredacted files including medical, administrative and/or peer review records and documents, including but not limited to witness lists, interview transcripts and summaries, notes, summaries, and conclusions regarding the investigation, evaluation and discipline of Dr. Hongyi Cui, M.D. Ph.D. resulting from the complaints of any patient's with whom Dr. Hongyi Cui, M.D., Ph.D. came into contact or to whom Dr. Hongyi Cui, M.D., Ph.D. provided any kind of medical service, from the beginning of his general surgery internship on July 1, 2002 to July 1, 2005.

Mses. Tarrant and Schwartz seek a protective order on the grounds that the information requested is protected by the peer review privilege, and the requests are overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. I have already determined that the peer review privilege cannot be invoked in this proceeding. Furthermore, while they have both made conclusory statements in their memorandum in support of a protective order that the requests are overly broad, unduly burdensome and nor reasonably calculated to lead to admissible evidence, they have provided little in the way of argument to support such claims either in their memoranda or at the hearing. As to the first category of documents, that is, the requested materials related to the Plaintiff, the request for a protective order is denied. As to the second request, that is, materials relating to other patients with whom Dr. Cui has come into contact or to whom he has provided medical services, the request is allowed, to the extent that the names and any other identifying information concerning non-party patients shall be redacted and the materials shall be turned over subject to a mutually acceptable confidentiality agreement. *See* note 6, *supra*. In all other respects, these motions for a protective order are denied.

<u>Motion For A Protective Order Of The Non-Party Tebo Chiropractic (Docket No. 32);</u>
<u>Motion For A Protective Order Of The Non-Party Ronald F. Tebo, D.C. (Docket No. 33);</u>
<u>Motion For A Protective Order Of The Non-Party Jennifer Burgos (Docket No. 34);</u>
<u>Motion For A Protective Order Of The Non-Party Irene Korzep (Docket No. 36)</u>.

Plaintiff has served a subpoena on Tebo Chiropractic seeking medical records and documents relating to non-party patients.  Additionally, Plaintiff seeks to depose Irene Korzep, Ronald Tebo and Jennifer Burgos, the owner and present/former employees of Tebo Chiropractic, concerning non-party patients.

 Plaintiff has served a subpoena on Tebo Chiropractic seeking the names of all patients seen by Tebo Chiropractic from February 1, 2003 to February 1, 2004, their dates of birth, social security numbers, telephone numbers and most recent addresses.  The Plaintiff also seeks the records of six individuals named by the Plaintiff whom Plaintiff believes have been patients of Tebo Chiropractic.  Plaintiff purports to need the information concerning non-party patients to impeach Dr. Tebo's testimony concerning whether he touched the Plaintiff during her examinations.

It is an open question as to whether federal common law would recognize a privilege against disclosure of Tebo Chiropractic's patients' records, however, I suspect it would not. Nonetheless, the information requested by the Plaintiff is of highly sensitive nature and the patients' right of privacy in those records must be balanced against the Plaintiff's need for the information contained therein.  The information sought by the Plaintiff would be of little probative value: she is seeking he records of non-party patients to impeach the testimony of a potential non-party witness in this case.   Plaintiff represents that she hopes to establish that Dr. Tebo allowed other personnel in the office to treat patients.  Plaintiff has served deposition notices on Dr. Tebo and two of his staff members.  Plaintiff can ask questions concerning

14

treatment of patients without obtaining non-party patient files and without asking Dr. Tebo and his staff members to identify such patients.  Furthermore, Plaintiff purports to have the names of six patients of Tebo Chiropractics; she can contact these individuals and interview them concerning their treatment with Doctor Tebo[7], which would be far less intrusive than reviewing the personal treatment files of the six individuals, never mind the personal treatment files of *all* of Tebo Chiropractic's patients.    Under these circumstances, I agree with Tebo Chiropractics that request is overly broad and unduly burdensome.   Tebo Chiropractic's request for a protective order is <u>allowed</u>, provided however, that Tebo Chiropractic shall provide the Plaintiff with copies of patient files for any patients who have signed releases allowing disclosure of their files to the Plaintiff and her counsel.

As to the motions for a protective order filed by non-party witnesses Ronald Tebo, Jennifer Burgos and Irene Korzep, those motions are <u>allowed</u> to the extent that Plaintiff is seeking to obtain confidential patient information for patients other than herself.  This is not to say that these individuals cannot be asked questions concerning treatment of unidentified patients and/or what they observed about treatment of such patients, but rather the Plaintiff cannot ask the identity of any non-party patients, nor can she inquire about information which would tend to identify such patients.

---

[7]Plaintiff indicates that she has attempted to obtain the consent of these six individuals, but has been unsuccessful.

<u>Plaintiff's Motion To Compel Defendant's Initial Disclosures Per Fed.R.Civ.P. 26(a)(1)(A) &
(D) And 37(a)(2)(A) And For Appropriate Sanctions (Docket No. 38)</u>.

Plaintiff has filed a motion to compel the Defendant to make the initial discovery
disclosures required by Fed.R.Civ.P. 26(a)(1)(A), (B) and (D)[8].  Plaintiff contends that
Defendant's initial disclosures, which were made some four months late, were woefully
inadequate.  Defendant served a one page disclosure which did not set forth the names of any
potential witnesses (instead referring generally to witnesses who testified and whose names are
referenced in the testimony and exhibits from the DALA trial, and also refers generally to
Plaintiff's prior and subsequent mental and medical health care providers), made a vague and
overly broad reference to relevant documents (referencing the DALA decision and the exhibits
from the DALA trial) and contained no substantive insurance information (simply making a
reference to "Advice of Insurance").

Defendant has filed a supplemental statement of automatic disclosures in which it has
specified the identities of the individuals who would have information about claims or defenses,
and has listed specific documents which would be relevant to the disputed facts alleged in the
pleadings and has indicated that a copy of the Advice of Insurance has been provided under
separate cover.  Plaintiff asserts that the Defendant's supplemental disclosure does not comply

---

[8]Rule 26(a)(1)(A) requires the disclosure of identifying information concerning individuals likely to have
discoverable information that the disclosing party may use to support its claims or defenses (unless solely for
impeachment purposes), identifying the subjects of the information; Rule 26(a)(1)(B) requires each party to provide
the other with a copy of, or a description by category and location of, all documents, electronically stored
information, and tangible things in such party's possession, custody or control, that such disclosing party may use to
support its claims or defenses (unless solely for impeachment purposes); and Rule 26(a)(1)(D) requires each party to
make available to the other, for inspection and copying as under Fed.R.Civ.P. 34, any insurance agreement under
which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be
entered in the action or to indemnify or reimburse for payments made to satisfy the judgement.  Such disclosures
must be made within fourteen days after the conference held pursuant to Fed.R.Civ.P. 26(f), unless a different time is
set by stipulation or court order.  The disclosures must include the information reasonably available to the parties at
the time.

with Rule 26(a)(1)'s disclosure because as to the list of witnesses, the disclosure does not set forth the substance of such witnesses' expected testimony.  While I agree with Defendant that Plaintiff should be able to infer the expected subject matter of each witnesses' expected testimony from the description of each witness's type/place employment and from the substance of each such witnesses' testimony at the DALA proceeding (Plaintiff has a copy of the DALA transcripts), technically, merely listing such witness's names/employment does not comply with Rule 26(a)(1)(A).   Therefore, Defendant shall briefly indicate the general topic(s) as to which each person listed has information.  In all other respects, Plaintiff's request for further disclosure of automatic discovery is <u>denied</u> as moot.

Plaintiff has made a general request that sanctions be imposed on the Defendant for failure to comply with his automatic discovery obligations.  While Defendant's initial disclosure was deficient, it is clear that his counsel believed in good faith that given the unique circumstance of this case, his supplemental response complied with Rule 26(a)(1)(A)[9].  Additionally, given the amount of discovery to be completed, Plaintiff has not established that she was in any way prejudiced by the late disclosure.  Under these circumstances, Plaintiff's request for sanctions is <u>denied</u>.

## <u>Conclusion</u>

It is ordered that:

1.      Defendant's Motion To Quash Plaintiff's Notice Of Deposition Of Gary Setnik, M.D. (Docket No. 23) is <u>allowed</u>;

---

[9]The unique circumstances being the prior DALA proceedings which addressed much of the testimony and exhibits relevant to this case.  From all reports, Plaintiff's counsel was present at those proceedings and has a transcript of the same.

2.    Motion For A Protective Order Of The Non-Party University Of
      Massachusetts Medical School From The Plaintiff's Keeper Of Records
      Subpoena Directed To The General Surgery Residency Program And The
      Emergency Medicine Residency Program (Docket No. 24) is <u>allowed</u> in
      part and <u>denied</u> in part, as provided in this Order;

3.    Motion For A Protective Order Of The Non-Party Mary Schwartz From
      The Plaintiff's Subpoena (Docket No. 26) is <u>allowed</u> in part and <u>denied</u> in
      part, as provided in this Order;

4.    Motion For A Protective Order Of The Non-Party Susan Tarrant From the
      Plaintiff's Subpoena (Docket No. 27) is <u>allowed</u> in part and <u>denied</u> in part,
      as provided in this Order;

5.    Motion To Impound Subpoena Of The Non-Party Tebo Chiropractic
      (Docket No. 31) is <u>allowed</u>;

6.    Motion For A Protective Order Of The Non-Party Tebo Chiropractic
      (Docket No. 32) is <u>allowed</u>  as provided in this Order;

7.    Motion For A Protective Order Of The Non-Party Ronald F. Tebo, D.C.
      (Docket No. 33) is <u>allowed</u>  as provided in this Order;

8.    Motion For A Protective Order Of The Non-Party Jennifer Burgos
      (Docket No. 34) is <u>allowed</u> as provided in this Order;

9.    Motion For A Protective Order Of The Non-Party Irene Korzep (Docket
      No. 36) is <u>allowed</u>, as provided in this Order; and

10.   Plaintiff's Motion To Compel Defendant's Initial Disclosures Per
      Fed.R.Civ.P. 26(a)(1)(A) & (D) And 37(a)(2)(A) And For Appropriate
      Sanctions (Docket No. 38) is <u>allowed</u> in part and <u>denied</u> in part, as
      provided in this Order.


                          /s/Timothy S. Hillman
                          TIMOTHY S. HILLMAN
                          MAGISTRATE JUDGE

18