IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DWIGHT WILLIAMS, ET AL., | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 08-1979 |
| CITY OF PHILADELPHIA, ET AL., | : | |

**SURRICK, J.**                                                                                   **OCTOBER 22 , 2014**

## MEMORANDUM

Presently before the Court is non-party Corizon Health, Inc.'s Request to not produce patient mental health records requested by Plaintiffs (ECF No. 117). For the following reasons, Corizon's Request will be denied.

**I.     BACKGROUND**

This is a putative class action brought by inmates in the Philadelphia Prison System ("PPS") seeking equitable relief and alleging unconstitutional conditions of confinement under the Eighth and Fourteenth Amendments. Plaintiffs commenced the action on April 28, 2008, on behalf of themselves and those similarly situated. (Compl., ECF No. 1.) Plaintiffs complain of overcrowding and triple-celling in the county-operated PPS. (*Id.* ¶ 3.) In particular, Plaintiffs allege that the City of Philadelphia's ("City") policies and practices led to the deprivation of necessary medical and mental health care for PPS inmates. (*Id.* ¶ 29.)

On October 8, 2010, the Court certified the case as a class action, defining the relevant class as:

> All persons who are or will in the future be confined in the Philadelphia Prison System, and who are or will in the future be subjected to the conditions of confinement, including triple celling, or placement in dormitories, without minimally adequate security, services or programs as set forth in plaintiffs' Complaint.

(Oct. 8, 2010 Order, ECF No. 80.)  Plaintiffs' current counsel was appointed to serve as class counsel.  On August 8, 2011, after the inmate population in the PPS significantly decreased, the Court approved a settlement agreement between the parties that would preserve the status quo and provide for monitoring of the situation by Plaintiffs' counsel over the coming years.  (Aug. 8, 2011 Mem. Op. 2-3, ECF No. 93.)  In the fall of 2012, Plaintiffs exercised their right under the settlement agreement to reopen the case due to a rising inmate population in the PPS.

After the case was reopened, the parties entered into extensive discovery.  In April 2013, the parties arranged a tour of the PPS facilities for Plaintiffs' expert witnesses.  (Pls.' Ltr. Br. 2, ECF No. 118.)  Following the tour, Plaintiffs' counsel served supplemental discovery requests on the City, seeking documents related to medical and mental health care in the PPS facilities.  The City sought to obtain the requested information from Corizon Health, Inc. ("Corizon"), the contracted provider of medical services in the PPS.  Corizon was concerned that the disclosure of the requested documents would implicate issues under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936 (1996), and the Mental Health Procedures Act ("MHPA"), 50 Pa. Stat. Ann. §§ 7101 *et seq*.  To relieve Corizon's concerns, all involved counsel entered into a negotiated Protective Order that was approved by the Court and entered on August 27, 2013.  (2013 Protective Order, ECF No. 108.)  The 2013 Protective Order specifically provided that the requested materials would be used only for purposes of the instant litigation and would be destroyed or returned to Corizon at the conclusion of the litigation.  (*Id.*)  In addition, Corizon was permitted to redact mental health records protected under the MHPA and was required to produce actual medical charts of plaintiff class members only if the plaintiff class member signed a HIPAA compliant release.  (*Id.*)  Corizon then produced information in accordance with the Protective Order.  (Pls.' Ltr. Br. 3.)

Plaintiffs' expert witnesses reviewed the information provided by Corizon and determined that a broader scope of materials was needed to complete their assessment of the adequacy of care provided to PPS inmates. (Pls.' Ltr. Br. 3.) On December 12, 2013, Plaintiffs' counsel served the City with twelve additional requests for production. (*Id.* at Ex. A.) The information requested includes logs of mental health requests for all PPS sites in September 2013, with inmate names, PPS numbers, and dates of requests. (*Id.* at Ex. A Request 12.) In addition, the requests could require the production of actual medical charts of various inmates, including mental health records. (*Id.* at Ex. A Request 7.) The City agreed to provide the requested materials subject to the entry of an additional protective order. The parties negotiated and drafted a new protective order ("2014 Protective Order"). (Corizon Ltr. Br. Ex. A, ECF No. 117.) Corizon was not involved in the negotiations. (*Id.* at 2.)

The current dispute arose when Counsel for Corizon declined to sign the 2014 Protective Order. According to Corizon, even a court order that limits the use of the requested materials to litigation purposes, and requires the destruction or return of materials at the conclusion of the litigation, does not satisfy the MHPA's confidentiality provisions. On March 18, 2014, the Court held a telephone conference with the parties to discuss the issue. (ECF No. 115.) After hearing the parties' positions, the Court ordered the parties to submit briefs outlining the legal authority supporting their positions. (ECF No. 116.)

On March 27, 2014, Corizon submitted a Letter Brief in support of its position that the new protective order did not provide sufficient protection to allow disclosure of certain requested information under the MHPA. (Corizon Ltr. Br.) Plaintiffs submitted a Letter Brief in Opposition on April 7, 2014. (Pls.' Ltr. Br.) On April 10, 2014, Corizon responded (ECF No. 119), and Plaintiffs replied (Pls.' Reply, ECF No. 120). Plaintiffs contend that Corizon's

3

objections will prevent it from receiving documents responsive to seven of the twelve requests for production from December 2014.  (Pls.' Reply 1-2.)[1]

## II.  LEGAL STANDARD

HIPAA contains federal regulations that limit when a patient's medical information can be produced without the patient authorization.  45 C.F.R. § 164.512.[2]  In addition, Pennsylvania law—specifically the MHPA—further limits when a patient's mental health medical records can be disclosed or produced without patient consent.  50 Pa. Con. Stat. Ann. § 7111.  "The purpose of the MHPA is to further the policy of the Commonwealth of Pennsylvania 'to seek to assure the availability of adequate treatment to persons who are mentally ill.'"  *Hahnemann Univ. Hosp. v. Edgar*, 74 F.3d 456, 463 (3d Cir. 1996) (quoting 50 Pa. Con. Stat. Ann. § 7102).

---

[1] Plaintiffs specifically state that Corizon is withholding information responsive to the following requests:
> (3) Pharmacy printouts of patients on asthma/COPD, diabetes, hypertension, HIV, anticoagulation, seizure, and cancer medications for September 1 through November 30, 2013.
> (4) Specialty Appointment Tracking log for the period of April 1, 2013 to October 31, 2013 by housing location.
> (5) Infirmary tracking logs from April 1, 2013 to October 31, 2013.
> (6) Tracking logs or list of patients sent to the emergency department/hospitalized from April 1, 2013 through December 1, 2013.
> (7) Entire patient health records for all inmates who died while in custody from January 2012 to December 1, 2013.
> (11) A current caseload list of all inmates on the male and female transitional units and acute care units.
> (12) The log for mental health requests for services for all sites for the month of September, 2013.  (Pls.' Reply 1-2.)

[2] The parties do not dispute that the information requested by Plaintiffs is protected health information subject to HIPAA protection, and that the 2014 Protective Order meets the requirements of 45 C.F.R. § 164.512(e), allowing for the disclosure of medical information without patient consent.  (Pls.' Ltr. Br. 1 n.1; Corizon Ltr. Br.)

**III.   DISCUSSION**

The circumstances under which Plaintiffs' counsel seeks confidential information of former and current PPS inmates are unique.  Plaintiffs' counsel seeks this information for the sole purpose of determining whether the PPS has been violating the constitutional rights of the inmates by not providing adequate mental health treatment.  Unlike much of the case law regarding the discoverability of a nonparty's confidential health information, the information at issue here is not sought by an adversary to be used against the individual who underwent mental health treatment.  Nor is the information sought in an attempt to hold PPS liable for assaults by the inmates.  Plaintiffs' counsel seeks this information to protect the rights of the inmates, on whose behalf counsel has brought this case.  Even in the case of former inmates who no longer fall within the class definition, there is a commonality of interests between them, present PPS inmates, and Plaintiffs' counsel.  This is a unique circumstance where it is clearly desirable that the confidential information be disclosed.

From the numerous opinions that we have already issued in this case, it is evident that the constitutional violations at issue here have been litigated for years.  This case has been ongoing since 2008, and the Complaint cites to a number of earlier cases where the PPS conditions of confinement were found to be in violation of inmates' constitutional rights.  (Compl. ¶¶ 8-13.)  The cases in this court dealing with the conditions at PPS date all the way back to the 1970s and 1980s.  (*Id*. ¶ 8.)  Plaintiffs' counsel needs the requested information to properly protect the Plaintiff class and to attempt to uncover and remedy alleged constitutional violations by the PPS that have been ongoing for years.  The information is clearly relevant and discoverable under

Federal Rule of Civil Procedure 26.  In these unique circumstances, justice requires that we order the production of this information, subject to the 2014 Protective Order.[3]

We reach this conclusion not only in the interests of justice, but also because it is federal law and procedure—specifically, HIPAA, the Federal Rules of Civil Procedure, and the Federal Rules of Evidence—that control this federal-question litigation.  Corizon contends that the MHPA and Mental Health Manual control the parties' ability to release certain medical records to Plaintiffs' counsel.  (Corizon Ltr. Br. 4-5.)  Our survey of the case law, statutory scheme, and regulations reveals that Corizon is wrong.

Federal Rule of Civil Procedure 26(b)(1) permits a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1); *see also Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000) ("As an initial matter . . . all relevant material is discoverable unless an applicable evidentiary privilege is asserted.").  Corizon does not contend that the requested records are irrelevant; accordingly, its objection must find its basis in a privilege.  Fed. R. Civ. P. 26(b)(1).

In federal court, the Federal Rules of Evidence dictate whether state or federal privilege law applies.  Rule 501 states:

> The common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise:
>
> • the United States Constitution;

---

[3] We note that, in a similar class action case, which alleged systematic violations of inmates' Constitutional rights based on confinement conditions in another Pennsylvania prison, the plaintiffs sought production of medical, dental, and mental health records of inmates from a non-party. *Inmates of Northumberland Cnty. Prison v. Reish*, No. 08-cv-345 (M.D. Pa. Apr. 24, 2009) (stipulated protective order).  In that case, the parties agreed to a stipulated protective order to regulate the production, maintenance, use, and disposal of the records. *Id.* at 1-2.  No party objected to producing the records under the MHPA.

> • a federal statute; or
>
> • rules prescribed by the Supreme Court.
>
> But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

Fed. R. Evid. 501.  Where, as here, the case involves questions of both federal and state law, "the federal rule favoring admissibility, rather than any state law privilege, is the controlling rule." *Wm. T. Thompson Co. v. Gen. Nutrition Corp.*, 671 F.2d 100, 104 (3d Cir. 1982).  Because federal law supplies the rule of decision in this case, the only bases for Corizon to withhold relevant material are the federal common law of privilege, the U.S. Constitution, federal statute (in this case, HIPAA), or rules prescribed by the Supreme Court.  Fed. R. Evid. 501.

This was the approach taken by the Third Circuit Court of Appeals in *Pearson*, a Section 1983 action in which the plaintiff sought to compel discovery of a foster child's records, including confidential information and mental-health records.  In *Pearson*, the defendants resisted discovery on the basis of three Pennsylvania statutes containing confidentiality provisions that the defendants argued protected the foster child's files:  the Child Protective Services Law, 23 Pa. Cons. Stat. §§ 6301 *et seq.*; the Juvenile Act, 42 Pa. Cons. Stat. §§ 6501 *et seq.*; and the MHPA.  *Pearson*, 211 F.3d at 62-63.  Based on the foster child's written waiver of the statutory protections found in Pennsylvania law, the district court fashioned a protective order granting the plaintiff access to the foster child's files.

On appeal by the defendants,[4] the Third Circuit took the district court to task for relying on the Pennsylvania state statutes in fashioning its protective order:

---

[4] The Court of Appeals found the district court's order to be immediately appealable under the collateral-order doctrine.  *Pearson*, 211 F.3d at 64-65.

> The District Court . . . fashioned an order that compelled discovery of all material sought except to the extent that such material contained information the release of which would violate the rights of third parties protected by the Pennsylvania statutes, as those statutes were interpreted by the District Court.
>
> Because, however, discovery disputes in federal courts are governed by federal law, especially the Federal Rules of Civil Procedure and the Federal Rules of Evidence, the state statutory confidentiality provisions that have been invoked by appellants—and on the basis of which the District Court fashioned its order—do not directly govern the present dispute. Only to the extent that federal law may recognize the force of those provisions are they relevant here. The ultimate issue is whether the discovery sought is permitted as a matter of federal law.

*Pearson*, 211 F.3d at 61. We likewise conclude that, consistent with *Pearson*, it is federal law—specifically, HIPAA and federal privilege law—that governs the instant dispute, and not the MHPA.

Corizon argues that where state law related to the privacy of individually identifiable health information is more stringent than HIPAA, it is the state law that controls. (Corizon's Ltr. Br. 4-5.) Section 264(c)(2) of HIPAA states that a regulation promulgated by HHS "shall not supersede a contrary provision of State law, if the provision of State law imposes requirements, standards, or implementation specifications that are more stringent than the requirements, standards, or implementation specifications imposed under the regulation." Pub. L. No. 104-191, § 264(c)(2). Similarly, HHS's implementing regulations state that:

> A standard, requirement, or implementation specification adopted under this subchapter that is contrary to a provision of State law preempts the provision of State law [unless] . . . [t]he provision of State law relates to the privacy of individually identifiable health information and is more stringent than a standard, requirement, or implementation specification adopted under [HIPAA].

45 C.F.R. § 160.203. Corizon understands this to mean that the MHPA, which has stricter confidentiality provisions than HIPAA, is incorporated into federal law for purposes of this discovery dispute. (Corizon's Ltr. Br. 5.) We disagree.

8

Though the Third Circuit has not directly addressed this issue, a majority of courts have concluded that HIPAA does not incorporate state statutes with stricter confidentiality provisions for the purpose of litigation in federal court when jurisdiction is based on a federal question. This was the conclusion of Judge Posner in the Seventh Circuit, who wrote that "the HIPAA regulations do not impose state evidentiary privileges on suits to enforce federal law." *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 925 (7th Cir. 2004). The court reasoned that "[t]he enforcement of federal law might be hamstrung if state-law privileges more stringent than any federal privilege regarding medical records were applicable to all federal cases. . . . [W]e think it improbable that HHS intended to open such a can of worms when it set forth a procedure for disclosure of medical records in litigation." *Id.*; *see also id.* at 933 ("I agree with the court that HIPAA does not adopt state privilege law in a federal question suit brought in federal court, but rather Rule 501 of the Federal Rules of Evidence governs the evidentiary privileges applicable in such suits.") (Manion, J., concurring in part and dissenting in part). A similar case in which the government was seeking access to patient records arose in the Southern District of New York. The district court reached the same conclusion as the Seventh Circuit, reasoning that:

> [t]here is a difference . . . between a federal law that does not preempt a state law and a federal law that *incorporates* a state rule of law. The latter gives the state law the force of federal law and makes it binding where it would not otherwise be; the former merely allows the state law to continue to operate in its sphere of influence, unaffected by the federal statute. The negative language in section 264(c)(2) does not equate to the positive power to create binding law in the federal domain—here, a case arising under federal law brought in federal court.

*Nat'l Abortion Fed'n v. Ashcroft*, No. 03-8695, 2004 WL 555701, at *4 (S.D.N.Y. Mar. 19, 2004). Other courts have also concluded that Section 264(c)(2) does not incorporate state confidentiality statutes into federal-question cases in federal court. *See, e.g.*, *In re Grand Jury Proceedings*, 450 F. Supp. 2d 115, 119 (D. Me. 2006) (finding more stringent state law did not

9

apply in motion to quash subpoena for medical records); *Kalinoski v. Evans*, 377 F. Supp. 2d 136, 140-41 (D.D.C. 2005) ("This Court agrees with the reasoning of the Seventh Circuit and the other cases that have reached the same conclusion.  The Supremacy Clause of the United States Constitution (as well as Federal Rule of Evidence 501) prevent a State from directing a federal court with regard to the evidence it may order produced in the adjudication of a federal claim."). *Cf. Pal v. N.Y. Univ.*, No. 06-5892, 2007 WL 1522618, at *3 (S.D.N.Y. May 22, 2007) (applying New York medical-records confidentiality law in action based solely on diversity jurisdiction).

We agree with the reasoning in these cases.  In addition, and to the extent that Corizon asks us to do so, we follow *Pearson*'s lead in declining to recognize the confidentiality provisions of the MHPA as part of the federal common law of privilege.[5]  *See Pearson*, 211 F.3d at 72.  Within the confines of an appropriate protective order, we will order the production of the requested material subject to the limitations found in Rule 26 and Federal Rule of Evidence 501, including the psychotherapist-patient privilege.  *See Jaffee v. Redmond*, 518 U.S. 1, 16 (1996). Furthermore, considering the nature and purpose of this inquiry, and because Plaintiffs' counsel seeks this information for the benefit of the current and former inmates whose privacy is at issue here, and because the MHPA does not control the outcome of this discovery dispute, we will not require the parties to undertake the burdensome task of providing notice to all of the individuals whose information is produced.

---

[5] We recognize that the party whose records were sought in *Pearson* had signed a waiver agreeing to the records' release, which therefore would have required the Court of Appeals to adopt a privilege that "maintain[ed] its protection despite the express waiver of the primary holder of interests in confidentiality."  211 F.3d at 72.  Nevertheless, the considerations that counseled against the creation of such a privilege in *Pearson* apply with even greater force here, as the holders of the confidentiality interests would almost certainly benefit from Plaintiffs' counsel's access to their confidential information.

IV.     CONCLUSION

For the foregoing reasons, Defendants' Request that it not be ordered to produce patient mental health records requested by Plaintiffs will be denied. Counsel shall submit an appropriate Protective Order.

BY THE COURT:

_____
**R. BARCLAY SURRICK, J.**