IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DWIGHT WILLIAMS, ET AL.,    :
            :        CIVIL ACTION
      v.           :
            :        NO. 08-1979
CITY OF PHILADELPHIA, ET AL.,    :

**SURRICK, J.**                      **NOVEMBER  4 , 2014**

## MEMORANDUM

Presently before the Court is non-party Corizon Health, Inc.'s Request to not produce mortality and sentinel event reviews requested by Plaintiffs.  (ECF No. 122.)  For the following reasons, Corizon's Request will be denied.

## I.    BACKGROUND[1]

This is a class action brought by inmates in the Philadelphia Prison System ("PPS") against the City of Philadelphia ("City") seeking equitable relief under the Eighth and Fourteenth Amendments for alleged unconstitutional conditions of confinement.  (Compl., ECF No. 1.) Plaintiffs complain of overcrowding and triple-celling in the county-operated PPS.  (*Id.* ¶ 3.) Plaintiffs allege that the overcrowding in the PPS results in danger to the health and safety of the inmate population. (*Id.* ¶ 29.)

Presently before the Court is a discovery dispute centered on a supplemental discovery request that Plaintiffs' counsel served on the City in December 2013.  Plaintiffs seek "mortality and sentinel event reviews for deaths that occurred in custody from January 2012 to December 1, 2013."  (ECF No. 118 Ex. A.)  The City sought to obtain the requested information from Corizon Health, Inc. ("Corizon"), the contracted provider of medical services in the PPS.  Corizon

---

[1] A more complete summary of this action is set out in our Memorandum dated October 8, 2010.  (ECF No. 79.)

objected, contending that the requested documents are not discoverable because they are privileged and protected from disclosure under Pennsylvania's peer-review privilege law. Plaintiffs disagree, claiming that the state peer-review privilege is not recognized in federal court, and thus does not protect the documents Plaintiffs seek.

On May 12, 2014, Corizon submitted a Letter Brief in support of its position.  (Corizon Ltr. Br., ECF No. 122.)  Plaintiffs submitted a Letter Brief in Opposition on May 22, 2014.  (Pls.' Ltr. Br., ECF No. 123.)  On July 20, 2014, Plaintiffs filed supplemental authority supporting their position.  (Pls.' Supp., ECF No. 123.)

## II.    LEGAL STANDARD

Assertions of privilege in federal court are governed by Federal Rule of Evidence 501, which states:

> The common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise:
>
>> • the United States Constitution;
>> • a federal statute; or
>> • rules prescribed by the Supreme Court.
>
> But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

Fed. R. Evid. 501.  Where, as here, there are both federal and state law claims in the case, "the federal rule favoring admissibility, rather than any state law privilege, is the controlling rule." *Pearson v. Miller*, 211 F.3d 57, 66 (3d Cir. 2000).  Therefore, "the mere fact that state law claims and federal law claims coexist in this action does not by itself justify application of Pennsylvania's peer review privilege."  *Weiss ex rel. Estate of Weiss v. Cnty. of Chester*, 231

F.R.D. 202, 205 (E.D. Pa. 2005).  The privilege still must be recognized by federal law for it to apply here.

Federal privileges can be created by statue or by common law.  *Id.*  Congress has not statutorily enacted a peer-review privilege, and federal common law has also not yet recognized such a privilege.  However, that does not end our inquiry because Rule 501 provides federal courts with the flexibility to adapt the federal common law on privilege to varying conditions. *Jaffee v. Redmond*, 518 U.S. 1, 8 (1996).  This flexibility does not mean courts recognize new privileges easily.  To the contrary, "privileges are disfavored," and "federal courts have generally declined to grant requests for new privileges."  *Pearson*, 211 F.3d at 67 (collecting cases). Indeed, for centuries the general rule has been that the public has a right to every man's evidence, and exceptions to this rule are "distinctly exceptional," *Jaffee*, 518 U.S. at 9, because "only the most compelling candidates will overcome the law's weighty dependence on the availability of relevant evidence."  *Pearson*, 211 F.3d at 67.  For a privilege to be added to the federal common law, it must promote a "sufficiently important interest to outweigh the need for probative evidence."  *Jaffee*, 518 U.S. at 9; *Pearson*, 211 F.3d at 67.  Ultimately, the party asserting the privilege has the burden of proving its existence and applicability.  *In re Grand Jury Investigation*, 918 F.2d 374, 385 n.15 (3d Cir. 1990).

Convincing a court to recognize a new privilege "where it appears that Congress has considered the relevant competing concerns but has not provided the privilege itself" is difficult. *Univ. of Pa. v. EEOC*, 493 U.S. 182, 189 (1990).  Conversely, "[t]he case for recognizing a particular federal privilege is stronger . . . where the information sought is protected by a state privilege."  *Pearson*, 211 F.3d at 67.  It is the "strong policy of comity between state and federal sovereignties [that] impels federal courts to recognize state privileges where this can be

accomplished at no substantial cost to federal substantive and procedural policy." *Id.* (citations omitted).  Nevertheless, a district court's decisions should "turn[] upon the law of the United States, not that of any state." *Id.* (citing *Riley v. City of Chester*, 612 F.2d 708, 715 (3d Cir. 1979)).

## III.   DISCUSSION

Corizon argues that as a matter of federal common law we should recognize a peer-review privilege that exempts medical peer-review materials—such as those sought by Plaintiffs—from discovery.  According to Corizon, recognition of this privilege would be proper because it is recognized in all 50 states, and it has also been increasingly recognized by federal courts.[2]  In making its argument, Corizon does not discuss the public or private interests at stake or the evidentiary implications of its request.  Instead, Corizon provides pages of quotes from a handful of federal district courts where the peer-review privilege was found to be applicable. Corizon does not attempt to explain how the facts before any of those district courts are similar to the facts at issue here.  Corizon simply rests its argument on its claim that "[t]he developing new trend in the Federal District Courts is to recognize the Peer Review Privilege" (Corizon Ltr.

---

[2] The statute that creates the peer-review privilege in Pennsylvania is the Peer Review Protection Act, which provides:

> The proceedings and records of a review committee shall be held in confidence and shall not be subject to discovery or introduction into evidence in any civil action against a professional health care provider arising out of the matters which are the subject of evaluation and review by such committee and no person who was in attendance at a meeting of such committee shall be permitted or required to testify in any such civil action as to any evidence or other matters produced or presented during the proceedings of such committee or as to any findings, recommendations, evaluations, opinions or other actions of such committee or any members thereof.

63 Pa. Stat. Ann. § 425.4.

Br. 6), and we should therefore recognize the peer-review privilege without reservation.  In response to Corizon's argument, Plaintiffs claim that, despite its recognition in all the states and some federal courts, the peer-review privilege is not applicable to this case because this case involves federal civil-rights claims.

We note that the Supreme Court has explicitly declined to introduce a peer-review privilege—sometimes referred to as a "self-critical analysis" privilege—into the federal common law.  *Univ. of Pa.*, 493 U.S. at 189.  This is consistent with the reluctance of federal courts to contravene the general rule in favor of admissibility by creating new privileges.  *See, e.g.*, *In re Grand Jury*, 103 F.3d 1140, 1150 (3d Cir. 1997) (rejecting parent-child privilege and noting that "privileges are disfavored"); *see also United States v. Nixon*, 418 U.S. 683, 710 (1974) (cautioning that privileges "are not lightly created nor expansively construed").  Nevertheless, federal courts have recognized a peer-review privilege in certain circumstances.  *See, e.g.*, *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014) (affirming district court's invocation of Michigan peer-review privilege in denying plaintiff's motion to compel discovery); *Cornejo v. Mercy Hosp. & Med. Ctr.*, No. 12-1675, 2014 WL 4817806, at *6-7 (N.D. Ill. Sept. 15, 2014) (permitting defendant to withhold documents based on Illinois peer-review privilege); *Elkharwily v. Mayo Holding Co.*, No. 12-3062, 2014 WL 3573674, at *3 (D. Minn. July 21, 2014) (applying Minnesota peer-review privilege statute in action consisting of both state and federal claims); *Nelson v. Green*, No. 06-70, 2014 WL 2695535, at *3 (W.D. Va. June 12, 2014) (applying state peer-review privilege statute).

Corizon's contention that there is a "developing trend" in the federal courts toward the recognition of a federal peer-review privilege (Corizon Ltr. Br. 6) is belied by a number of recent cases that have declined to recognize the privilege.  Indeed, the Third Circuit Court of Appeals

5

has stated that "[t]he self-critical analysis privilege has never been recognized by this Court and we see no reason to recognize it now." *Alaska Elec. Pension Fund v. Pharmacia Corp.*, 554 F.3d 342, 351 n.12 (3d Cir. 2009) (criticizing district court for sealing record based on self-critical analysis privilege); s*ee also Mendez v. Shah*, No. 13-1585, 2014 WL 5391988, at *2-3 (D.N.J. Oct. 23, 2014) (declining to recognize self-critical analysis privilege in medical-malpractice action); *Martinez v. Allison*, No. 11-1749, 2014 WL 5305566, at *2 (E.D. Cal. Oct. 15, 2014) (declining to recognize self-critical analysis privilege in Eighth Amendment excessive-force claim); *Medina v. Cnty. of San Diego*, No. 08-1252, 2014 WL 4793026, at *7 (S.D. Cal. Sept. 25, 2014) (rejecting assertion of self-critical analysis privilege in § 1983 action and noting that "[t]he Ninth Circuit does not recognize the self-critical analysis privilege"); *Branch v. Umphenour*, No. 08-1655, 2014 WL 3891813, at *7 (E.D. Cal. Aug. 7, 2014) (declining to apply self-critical analysis privilege).  In light of the refusal of the Supreme Court and the Third Circuit to recognize the privilege, as well as the general policy against recognition of privileges, Corizon must make a significant showing to shield the mortality and sentinel event reviews from discovery.  Corizon has made no such showing.

Adopting the peer-review privilege is appropriate only if it "promotes sufficiently important interests to outweigh the need for probative evidence."  *Jaffee*, 518 U.S. at 9-10; *see also id.* at 9 ("Exceptions from the general rule disfavoring testimonial privileges may be justified . . . by a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." (internal citations and quotation marks omitted)).  We are satisfied that permitting Corizon to withhold the mortality and sentinel-event reviews does not promote sufficiently important interests to outweigh the need for probative evidence.  We agree with the Ninth Circuit Court of Appeals that "in the prison context[,] the safety and efficiency of

6

the prison" render it "peculiarly important that the public have access to the assessment by peers of the care provided." *Agster v. Maricopa Cnty.*, 422 F.3d 836, 839 (9th Cir. 2005) (declining to apply peer-review privilege in context of prisoner civil-rights lawsuit). The instant class action seeks to ensure the safety of prisoners who are in PPS's custody. It is not a medical-malpractice action in which the plaintiff seeks monetary damages for the inadequate care of a prison doctor. *See, e.g.*, *Sevilla v. United States*, 852 F. Supp. 2d 1057, 1069 (N.D. Ill. 2012) ("The only consequence in not recognizing the privilege is to require the plaintiff in this case to do what plaintiffs in medical malpractice cases are routinely required to do in all other cases, namely adduce proof independent of what occurred in the peer review process."). Moreover, the requested documents would be subject to the protective order that the parties are negotiating, thereby limiting the chilling effect that some courts cite as a reason for invoking the peer-review privilege. *See, e.g.*, *Finney v. Palakovich*, No. 09-1751, 2010 WL 3703791, at *2 (M.D. Pa. Sept. 15, 2010) ("If institutions are subject to liability for after-the-fact, self-critical analysis, then this critical analysis will inevitably stop, and institutions will have little incentive to make observations that are designed to improve services."). Under these circumstances, the public interest weighs heavily in favor of producing the mortality and sentinel-event reviews—a conclusion with which the majority of federal courts agree in the civil-rights context. *See Francis v. United States*, No. 09-4004, 2011 WL 2224509, at *4 (S.D.N.Y. May 31, 2011) (noting that "there appears to be consensus among lower courts and in other circuits that no federal privilege protects medical peer review materials in civil rights [actions]," and citing cases).

**IV.     CONCLUSION**

For the foregoing reasons, Corizon's Request that it not be ordered to produce the mortality and sentinel-event reviews requested by Plaintiffs will be denied.  Counsel shall submit an appropriate Protective Order.

**BY THE COURT:**

_____

**R. BARCLAY SURRICK, J.**

8